IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

No. 3:22-CV-0191-MOC-DCK

| | | |
|---|---|---|
| KANAUTICA ZAYRE-BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AFFIDAVIT OF |
| | ) | GARY JUNKER, Ph.D. |
| THE NORTH CAROLINA DEPARTMENT | ) | |
| OF PUBLIC SAFETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I, Gary Junker, Ph.D., am an adult over the age of 18 years, have never been judged incompetent, and testify to the following based on my personal knowledge and expertise.

1.      I make this affidavit of my own free will, stating facts of which I have personal knowledge, except as to those matters stated herein upon information and belief, and as to those, I believe them to be true.

2.      I serve as the Director of Health and Wellness for the North Carolina Department of Public Safety, Division of Adult Corrections, Prisons Section.  I have held this position for two years.

3.      Prior to this I was the Behavioral Health Director for the North Carolina Department of Public Safety, Division of Adult Corrections, Prisons Section beginning in September 2015.

4.      Prior to coming to work for the Department of Public Safety, I was employed as Regional Clinical Director on contract for the Tennessee Department of Correction.

1

5.     Preceding this assignment, I worked in multiple capacities within the Federal Bureau of Prisons over the course of a 24-year career.  I retired from the FBOP as the Chief Psychologist at the Federal Correctional Complex in Butner, NC.  I have specialized in behavior health and healthcare administration and practice in corrections for 32 years.

### Transgender Offender Management at DPS-Prisons

6.     The *Evaluation and Management of Transgender Offenders* policy (E.4300) was created by a multidisciplinary committee in 2017-2018.  I was the lead policy developer along with a team of clinical and operational staff.  This policy was drafted by referencing a recently released transgender policy in the Federal Bureau of Prisons.  Policies from other state correctional systems were also reviewed in addition to guidance from the World Professional Association for Transgender Health (WPATH).  The *Evaluation and Management of Transgender Offenders* policy has been modified over the past five years to keep current within a rapidly changing field.

7.     During 2019, NCDPS leadership staff travelled to Illinois and Massachusetts to meet with state correctional officials and to review transgender management in those jurisdictions. At that time, I was Chair of the Division Transgender Accommodation Review Committee (D-TARC).  Recommendations from those visits were incorporated into the North Carolina protocol for transgender management.  In late 2019, I was assigned as interim Director of Health and Wellness and in April 2020 was permanently placed in this position. As of February 2020, an interim Behavioral Health Director was named who then assumed direct responsibility for transgender management.

8.     The *Evaluation and Management of Transgender Offenders* policy stipulates that each facility will have a transgender accommodation review committee (F-TARC).  When an offender requests a transgender accommodation, that request is brought to the attention of the F-

TARC chair, typically a facility behavioral health staff person. The F-TARC is comprised of a multidisciplinary team including behavioral health, nursing, operations, and the facility PREA compliance manager. The F-TARC has autonomy to grant accommodations that are stipulated in policy as routine. Examples of routine accommodations include gender consistent underclothes, private showering, canteen items and continuation of hormone replacement therapy with a valid prescription. After F-TARC review and approval, routine accommodations granted will typically be communicated to the offender by a behavioral health staff person and documented in the electronic health record.

9.      When an offender requests a non-routine accommodation such as medical procedures or gender-consistent housing, these requests are reviewed by the F-TARC and then forwarded with recommendations to the Division Transgender Accommodation Review Committee (D-TARC). The D-TARC is comprised of the Director of Behavioral Health, Chief Medical Officer, Chief Nursing Officer, Chief Psychiatrist, PREA Director, Director of Rehabilitation, Director of Operations and Director of Healthcare Administration. The D-TARC meets on a quarterly basis to review all referrals for non-routine accommodation. All decisions reached by the D-TARC concerning non-routine accommodations are reviewed by the Director of Health and Wellness and the Deputy Commissioner of Prisons. All D-TARC decisions are documented in the electronic health record and communicated to the offender.

10.     North Carolina prisons' policy and practice for managing transgender offenders has evolved deliberately and thoughtfully over the past five years. To remain current, prisons' healthcare staff have frequently engaged with transgender specialists at the University of North Carolina for consultation and educational purposes. As a result, the North Carolina transgender care model exceeds procedures provided in many other correctional systems in the United States.

3

11. Presently, the members of the DTARC committee are listed below. Most, if not all, of these professionals participated in a UNC Transhealth Training Webinar in October 2021.

- <u>Lewis "Jon" Peiper, PhD, Chair</u>. Dr. Peiper is NCPDS-Prisons Behavioral Health Director and a licensed psychologist who has 13 years' experience in correctional healthcare.

- <u>Arthur L Campbell III, MD</u>. Dr. Campbell is NCDPS-Prisons Chief Medical Officer. He is board-certified in Family Medicine and is a former U.S. Army flight surgeon. Dr. Campbell has 25 years in the practice of medicine and two years of prison healthcare experience.

- <u>Terri Catlett</u>. Ms. Catlett is NCDPS-Prisons Director of Healthcare Administration. Ms. Catlett has been a Physician Assistant since 1986 and has over 32 years' experience working in correctional healthcare and correctional healthcare administration. Ms. Catlett attended the NCDPS training for the DTARC conducted by Katherine Croft, UNC Transgender Health Program Manager. She has also attended several ACA trainings and CCHA trainings specifically targeting the management of transgender offenders.

- <u>Valerie Langley, RN</u>. Ms. Langley is a Registered Nurse and the NCDPS-Prisons Director of Nursing. She has been licensed to practice nursing for 27 years and has 26 years' experience working in correctional nursing and correctional nursing administration.

- <u>Abhay Agarwal, MD</u>. Dr. Agarwal is NCDPS-Prisons Deputy Medical Director. He is board-certified in Internal Medicine. Dr. Agarwal has 24 years in the practice of medicine and 24 years of prison healthcare experience.

- <u>Brian Sheitman, MD</u>. Dr. Sheitman is NCDPS-Prisons Chief Psychiatrist. He is board-certified in psychiatry and has over 30 years' experience as a psychiatrist. He has worked

in the field of corrections since 2015 and has been an Adjunct Professor of Psychiatry at UNC Chapel Hill since 2018.

- <u>Charlotte Jordan Williams</u>. Ms. Williams is NCDPS PREA Director. She has worked 23 years in the field of corrections, 15 years specializing in PREA issues. Ms. Williams has been a member of the national PREA Coordinator's Working Group Board since 2020.

- <u>Joshua Panter</u>. Mr. Panter is the Director of Operations for NCDPS-Prisons. Mr. Panter has 22 years of experience in the field of corrections. He has attended annual PREA trainings on "Understanding the LGBTI Offender" and "Sexual Abuse and Sexual Harassment 101" since the trainings were introduced.

- <u>Sarah Cobb</u>. Ms. Cobb is the Director of Rehabilitative Services for NCDPS-Prisons. She has over 29 years' experience in the field of corrections, with a focus on programs and rehabilitation.

12. There are currently 128 individuals who have self-identified as either transgender (120) or intersex (8) in the North Carolina state prison system. These 128 individuals are housed across 34 different facilities.

**<u>Management of Ms. Zayre-Brown</u>**

13. When Plaintiff entered custody, she was not presently on hormone replacement therapy ("HRT"). (MR 2002.) Under the then applicable policy, Plaintiff initiated her request to begin HRT on December 21, 2017. (MR 2572.) Plaintiff's request for HRT was ultimately approved and she began HRT on June 29, 2018. (MR 2322.) Plaintiff continues to receive HRT and regularly meets with an endocrinologist who monitors her hormone levels and manages the HRT.

14.     Upon information and belief, Plaintiff first requested transfer to a female facility on January 11, 2019. The facility F-TARC denied this request and, per policy, it was forwarded to the D-TARC for further consideration.  Because such a housing assignment had never been made, the Department had to study the issue, take various factors into consideration, and determine how best to proceed in light of operational concerns. Ultimately, it was decided to transfer Plaintiff to a female facility and she was transferred to an all-female unit at Anson on August 15, 2019.

15.     Plaintiff has been on Prisons' mental health caseload since November 11, 2017. She has had access to mental and behavioral health services at every facility in which she has been housed. As a patient on the mental health caseload, Plaintiff sees a licensed mental health provider at least once every 45 days, and more frequently if needed. Plaintiff has also had access to, and on occasion has utilized, emergency mental health services.

16.     Making an informed and well-considered determination on the type of request at issue int this litigation takes time and consideration from many Department stakeholders. The DTARC includes individuals holding high-level medical, behavioral health, operational, and administrative positions throughout the Department.  All committee members have fulltime responsibilities and duties in addition to the work the DTARC presents. When the DTARC meets, it reviews and considers accommodation requests from multiple incarcerated individuals. Decision-making in every case requires due a significant investment of time and resources from every member, who is required to make the best decision possible in every case, taking into account the best interests of the incarcerated person in light of the operational need to ensure safety and good order within all adult correctional facilities.

17.     On March 28, 2022, I met with Assistant Commissioner Harris to discuss three cases forwarded to us from a recent DTARC meeting. This is consistent with Policy & Procedure

F.4300, which states that "All accommodation requests for surgical intervention or gender-identity consistent facility transfer shall be reviewed by the Division TARC with recommendations referred to the Assistant Commissioner of Prisons and Director of Health & Wellness Services for review and determination."

18.     One of the cases reviewed on March 28th involved an accommodation request from Plaintiff. Plaintiff requested gender affirmation surgery and specifically a vulvoplasty procedure. In preparation for my meeting with Commissioner Harris, I reviewed documentation related to the case, including but not limited to the DTARC's written recommendation, which is attached hereto as Exhibit A.

19.     Assistant Commissioner Harris and I met and reviewed the case documentation in order to reacquaint ourselves with specifics of this case.  We reviewed and discussed the DTARC recommendation in detail.   After review and discussion, Assistant Commissioner Harris and I agreed that the requested accommodation should not be supported.

**THE REST OF THIS PAGE INTENTONALLY LEFT BLANK,**

**VERIFICATION PAGE FOLLOWS**

Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

This the _15_ day of _July_, 2022.

_____

GARY JUNKER, Ph.D.

8