IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.,<br><br>Defendant. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN ORDER COMPELLING PLAINTIFF TO SUBMIT TO RULE 35 EXAMINATIONS** |

Defendants submit this Memorandum of Law in support of their motion, pursuant to Rule 35(a) of the Federal Rules of Civil Procedure, for an order compelling Plaintiff, Kanautica Zayre-Brown, to submit to a mental examination before Joseph V. Penn, MD, CCHP, FAPA, and separately to submit to a mental examination before Sara E. Boyd, Ph.D., ABPP.

**A. Nature of the Examination Sought.**

Defendants have engaged Dr. Penn, a duly licensed physician in Texas, to conduct the examination. Dr. Penn holds three board certifications including forensic psychiatry and general psychiatry. Additionally, Dr. Penn has a specialized certification as a Certified Correctional Health Professional-Mental Health, which is provided by the National Commission on Correctional Health Care. In conducting this examination, Dr. Penn is consulting with Arthur Campbell II, MD, who is a duly licensed physician in North Carolina.

With leave of court, Dr. Penn intends to conduct the examination over two days, lasting no longer than 3 hours each day. The examination will occur at Anson Correctional Institution, which is located at 552 Prison Camp Road, Polkton, North Carolina. Dr. Penn intends on videotaping the entirety of Plaintiff's examination and will provide a complete copy of the videotape to Plaintiff's

counsel.

During this examination, Dr. Penn will conduct a Forensic Psychiatric Evaluation. This evaluation is a standard psychiatric interview, which will consist of general open-ended questions, diagnostic evaluation, and mental status examination. The Forensic Psychiatric Evaluation will involve multiple components, including, psychosocial history, past medical history, past psychiatric history, past trauma history, educational, employment, family, and substance histories, developmental information, and legal information. Additionally, the Forensic Psychiatric Evaluation includes inquiry into Plaintiff's accounting of current symptoms and a mental status examination.

Dr. Penn will also conduct a focused gender dysphoria evaluation. In this evaluation, Dr. Penn will assess Plaintiff's past and current symptoms, level of distress, and current impairments related to her gender dysphoria. This evaluation will include assessment of the patient's history of gender dysphoria, as well as her past psychiatric and medical history related to gender dysphoria, and prior treatments of gender dysphoria. This evaluation will also involve developmental history and review of systems focused on gender dysphoria and analysis of the capacity to give informed consent. As a medical doctor, Dr. Penn's examination will focus on Plaintiff's medical history, her current medical functioning, and detailed medical aspects of past and prospective medical interventions.

Defendants have also engaged Sara E. Boyd, Ph.D., ABPP to conduct an in-person mental examination of Plaintiff. Dr. Boyd is a licensed clinical psychologist with experience conducting forensic mental health assessments of transgender and gender diverse people in correctional settings. As a psychologist specializing in forensic mental health assessments, Dr. Boyd has conducted dozens of evaluations of incarcerated people housed in state and federal prisons and

jails. Dr. Boyd is familiar with procedures that departments of corrections use to assess and make determinations regarding gender-affirming treatment needs of transgender and gender diverse incarcerated people. Dr. Boyd has conducted independent psychological evaluations related to gender-affirming care for incarcerated individuals at the request of correctional officials. Dr. Boyd is also the co-author of a book chapter (in press) concerning psychological evaluation, management, and treatment of transgender and gender diverse people housed in correctional settings. Additionally, Dr. Boyd is a diplomate of the American Board of Professional Psychology, for the Forensic Specialty. This board-certification requires credential review, a written exam, work sample review, and a three hour-duration oral defense of work samples, among other requirements.

With leave of court, Dr. Boyd intends to conduct the examination in one day and expects it will last no longer than 4.5 hours. The examination will occur at Anson Correctional Institution, which is located at 552 Prison Camp Road, Polkton, North Carolina. Dr. Boyd will seek Plaintiff's permission to videotape the examination, and if provided, the entirety of the examination will be videotaped, and a complete copy of the examination will be provided to Plaintiff's counsel.

During this examination, Dr. Boyd will conduct a forensic psychological assessment related to Plaintiff's psychological characteristics and symptoms as they pertain to her participation in gender-affirming interventions, and to gather information about likely psychological outcomes associated with her treatment options. Dr. Boyd will administer standardized psychological tests to assess for broad spectrum psychopathology, interpersonal functioning, and treatment considerations. Dr. Boyd will also conduct a clinical interview focused primarily on psychosocial history, gender-related developmental history, adjustment to incarceration, and informed consent for gender-affirming interventions. As a clinical and forensic

3

psychologist, Dr. Boyd's examination will focus on differential diagnosis/ascertaining co-occurring conditions, assessing her historical psychological responses to prior interventions, evaluating Plaintiff's expectancies regarding prospective interventions, and other psychosocial factors associated with Plaintiff's transition and her experiences of transphobia.

### A. Summary of Argument.

A successful motion pursuant to Rule 35, requires two showings. First, the movant must establish that the nonmoving party's mental or physical condition is in controversy. Second, the movant must demonstrate that good cause exists to support the examination. In this case, Defendants can readily clear both hurdles.

There can be no serious debate about whether Plaintiff's mental condition is in controversy. The basis of all four of Plaintiff's causes of action is her contention that she has and will continue to suffer emotional, psychological, and physical distress as a result of Defendants alleged inadequate treatment of her gender dysphoria. To support these contentions, Plaintiff relies on her own expert's opinions and conclusions about Plaintiff's distress, her gender dysphoria, and Defendants' treatment of the same. Incidentally, Plaintiff's expert offers these opinions and conclusions only after, and based at least in part, on an in-person evaluation. Accordingly, it is apparent that Plaintiff's mental condition, specifically, the source, scale, and scope of her gender dysphoria, is squarely in controversy.

Similarly, it is clear that the relief requested in this motion is supported by good cause. Plaintiff's claims turn, at least in part, on her and her expert's contentions that Plaintiff's gender dysphoria has manifested in clinically significantly distress which has been exacerbated by Defendants' acts and omissions. To fairly respond to Plaintiff's (and her expert's) contentions, Defendants need to evaluate the claims related to Plaintiff's gender dysphoria. Absent the

opportunity to conduct an in-person examination, just as Plaintiff's expert has, Defendants will be limited to countering and testing Plaintiff's claims through cross-examination. Thus, the information sought through examination is not only relevant, but is also a necessary aspect of Defendants' ability to defend the claims asserted against them in this action.

**B. Applicable Law.**

Rule 35(a) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> (1) In General. The court where the action is pending may order a party whose mental or physical condition – including blood group is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.
>
> \* \* \* \* \*
>
> (2) Motion and Notice; Contents of the Order. The order:
>
> (A) may be made only on motion for good cause and on notice to all parties and the person to be examined ….

Thus, a movant under Rule 35 must make a two-part showing. First, the moving party must demonstrate that a mental or physical condition is in controversy. Second, the moving party must show that good cause supports the requested examination.

Rule 35(a) cannot be met by "mere conclusory allegations of the pleadings," or by a simple showing of relevance to the case. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Rather, the moving party must make "an affirmative showing ... that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id*. However, the Court recognized, that there are certain types of cases in which both the "in controversy" and "good cause" requirements are satisfied on the basis of the pleadings alone. *Id.*

With regard to the "in controversy" requirement, this court has noted that "[c]ourts have found mental or physical conditions to be in controversy where[:]

> (1) the plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) the plaintiff has claimed unusually severe emotional distress; (3) the plaintiff has alleged a specific type of disorder or other psychiatric injury; (4) the plaintiff has offered her own expert testimony to supplement her claim of emotional distress; **or** (5) the plaintiff concedes that her medical condition is "in controversy" pursuant to Rule 35.

*Simon v. Bellsouth Advert. & Publ'g Corp.*, 2010 U.S. Dist. LEXIS 46388, at *5 (W.D.N.C. Mar. 31, 2010) (emphasis in original) (citing *E.E.O.C. v. Maha Prabu, Inc.*, 2008 U.S. Dist. LEXIS 74393 at *3 (W.D.N.C. June 23, 2008) citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D.Cal. 1995)). This court has referred to these factors above as the "*Turner* factors." *See Simon* at *6.

While each of the *Turner* factors need not be present in order to succeed on a Rule 35(a) motion, courts generally require that more than one factor is satisfied before determining that mental condition is in controversy. *See Simon v. Bellsouth Advert. & Pub. Corp.*, No. CIV.A. 3:09-CV177RJC, 2010 WL 1418322, at *3 (W.D.N.C. Apr. 1, 2010) (motion granted despite plaintiff not conceding that mental condition is in controversy); *E.E.O.C. v. Maha Prabhu, Inc.*, No. 3:07-CV-111-RJC, 2008 WL 2559417, at *3 (W.D.N.C. June 23, 2008) ("[A] claim of unusually severe emotional distress usually must be accompanied by another of the *Turner* factors in order to merit an independent examination"). Furthermore, courts have found the "in controversy" requirement satisfied where the mental injury at issue is alleged to be ongoing. *Duncan v. Upjohn Co.,* 155 F.R.D. 23, 25 (D. Conn. 1994) ("Since plaintiff claims that he suffers ongoing psychiatric harm, the plaintiff has placed his psychiatric state in controversy"); *Hodges v. Keane,* 145 F.R.D. 332, 334 (S.D.N.Y. 1993) (had plaintiff asserted an ongoing mental injury, defendant would be entitled to an examination under rule 35(a)).

As to the second part of the Rule 35 test, the rule "stipulates that good cause exists for an independent medical evaluation where the claimant's condition is not only relevant, but necessary." *EEOC* at *5-6. Whether "good cause" is established depends on both relevance and the requesting party's need for the mental examination. *Id.* at *2 (citing *Guilford Nat. Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962). A court considering the "relevance" and "needs" prongs of the test under Rule 35(a) may order a mental examination if the proposed examiners will perform tests that were not undertaken in the prior examinations. *Eckman v. Univ. of Rhode Island*, 160 F.R.D. 431, 434 (D.R.I. 1995) (Good cause exists because defendant's proposed examinations were not undertaken by plaintiff's doctors).

However, the defendant need not necessarily subject the plaintiff to new tests in order to demonstrate "good cause." This is because courts generally allow counter-expert opinions via independent examination in cases where the plaintiff plans to prove its case through the examination of its own expert witness. *See e.g. Jones v. Campbell Univ., Inc.*, No. 5:20-CV-29-BO, 2020 U.S. Dist. LEXIS 137433, at *4 (E.D.N.C. Aug. 3, 2020)(recognizing that the defendant has the right to a counter-expert opinion); *Walton v. N. Carolina Dep't of Agric. & Consumer Servs.*, No. 5:09-CV-302-FL, 2011 U.S. Dist. LEXIS, at *3 (E.D.N.C. Mar. 11, 2011)(Defendant should have the "opportunity to explore the nature, cause, and extent of the alleged emotional injuries in order to defend against such a claim…."); *Tomlin v. Holecek*, 150 F.R.D. 628, 632 (D. Minn. 1993) (In challenging Plaintiff's physical or mental condition, "the crucible of cross-examination was an insufficient test of the truth" and "Rule 35 is a considered attempt to fairly place the parties on a somewhat equal footing.")

Additionally, courts are more likely to find good cause for an independent examination where the allegations of emotional harm "are sufficiently serious and sweeping such that the

7

average lay person might not be able to evaluate properly the nature, extent and cause of the injuries plaintiff claims to have sustained." *Greenhorn v. Marriott Int'l, Inc.,* 216 F.R.D. 649, 652 (D. Kan. 2003) (claims of, among other things, persistent insomnia, severe depression, and suicidal ideation render an independent examination appropriate).

"At bottom, analysis of [the controversy and good cause requirements] aims to balance the need for an examination against the burdens it imposes. *Nicholson v. Balt. Police Dep't*, Civil Action No. DKC 20-3146, 2022 U.S. Dist. LEXIS 68321, at *4 (D. Md. Apr. 13, 2022) (citing *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962). Rule 35(a) is to be liberally construed in favor of granting the examination requested. *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964). Ultimately, the decision whether to order a mental examination under Rule 35(a) is within the sound discretion of the court. *See Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009).

### C. Plaintiff's Mental Condition is In Controversy.

Plaintiff's condition of gender dysphoria and any associated mental and physical effects of her gender dysphoria are undoubtedly in controversy. Indeed, the opening paragraphs of Plaintiff's complaint center on Plaintiff's gender dysphoria. *See* DE-1 ¶¶ 1-7. Plaintiff alleges that her "previous treatments [provided by Defendants] have not adequately alleviated her gender dysphoria[,] [and that] she has suffered and continues to suffer severe physical, emotional, and psychological distress as a result." *Id.* ¶ 4. Plaintiff further alleges that she "needs gender-affirming surgery for the treatment of gender dysphoria." *Id.* ¶ 5. Thus, it is clear that Plaintiff's gender dysphoria, any associated mental and physical effects thereof, and Defendants' treatment of the same, are central to each of Plaintiff's claims.

More specifically, Plaintiff contends that Defendants' treatment and management of her

gender dysphoria has and continues to violate her rights under the Eighth Amendment of the United States Constitution, Article I, Section 27 of the North Carolina Constitution, the Americans with Disabilities Act, and the Rehabilitation Act. *See* DE-1 ¶¶ 144-178. With respect to the two constitutional claims, Plaintiff contends that the surgery she has requested is necessary to "alleviate her gender dysphoria" and that Defendants' "failure to adequately treat Mrs. Zayre-Brown's gender dysphoria has caused her serious harm and that there continues to be a substantial risk of further serious harm for as long as her receipt of additional gender-affirming surgery is delayed or denied." *Id*. ¶¶ 151-152.

With respect to her ADA and RA claims, Plaintiff contends that "gender dysphoria […] result[s] in severe distress and substantial limitations on her major life activities of interacting with others, social functioning, thinking, caring for herself, and ensuring her safety." DE-1 ¶¶ 162, 172. Moreover, Plaintiff claims that "[a]s a direct and legal result of [Defendants'] [acts and omissions], [she] has suffered and continues to suffer damages including, without limitation, pain and suffering and emotional, psychological, and physical distress." *Id*. ¶¶ 168, 178.

Thus, the very nature of Plaintiff's claims places the scope of her gender dysphoria, its manifestations, causes, and impact on her daily life, in controversy. Indeed, three of the five *Turner* factors are present in this case: (2) the plaintiff has claimed unusually severe emotional distress (*see* DE-1 ¶¶ 2, 4, 74, 87, 143, 162, 172); (3) the plaintiff has alleged a specific type of disorder or other psychiatric injury (*see Id*. ¶ 1); (4) the plaintiff has offered her own expert testimony to supplement her claim of emotional distress (*see* DE 13-1; 22-1, and Expert Report of Randi C. Ettner, Ph.D., dated February 3, 2023). And while Plaintiff has not alleged a specific cause of action for intentional or negligent infliction of emotional distress, her deliberate indifference claims nonetheless alleges that Defendants' acts and omissions have resulted in emotional distress.

9

*See* DE-1 ¶¶ 151-154. Accordingly, there can be no reasonable dispute whether Plaintiff's mental condition—it is.

### D. Good Cause Exists for the Request Examination.

The relevancy of the proposed examination is demonstrated by considering the nature of Plaintiff's claims. As discussed above, each of Plaintiff's four claims center on her gender dysphoria. More specifically, for each claim, Plaintiff will need to present some evidence about her gender dysphoria, its manifestations, causes, and impact on her daily life. Thus, the proposed examinations, which seek to assess Plaintiff's psychiatric, medical, and psychological conditions, relative to the scale and scope of her gender dysphoria, its manifestations, causes, and impact on her daily life, are most certainly relevant inquiries.

The need for the requested examinations is demonstrated by considering Plaintiff's proffer of evidence to date. Plaintiff intends to rely on her expert Randi C. Ettner, Ph.D., who has submitted a comprehensive report, which is based, at least in part, on her own in-person examination of Plaintiff. This fact alone counsels in favor of permitting the examination requested herein. *See e.g. Jones* 2020 U.S. Dist. LEXIS 137433 at *4; *Walton 2011 U.S. Dist. LEXIS* at *3. Moreover, Dr. Ettner appears to be critical of the fact that early in this litigation, in response to Plaintiff's motion for a preliminary injunction, Defendants submitted expert affidavits from Drs. Penn and Boyd, without either of them interviewing or evaluating Plaintiff. *See* Ettner Report ¶ 131, which incorporates by reference DE 22-1.

In DE-22-1, which is Dr. Ettner's Second Declaration, before offering criticisms of the affidavits of Drs. Penn and Boyd, Dr. Ettner notes that neither interviewed nor evaluated Plaintiff before submitting their respective affidavits. DE-22-1 ¶¶ 21-30, 50-61. In fact, Dr. Ettner pointedly writes "Dr. Penn did not evaluate Mrs. Zayre-Brown and offers no justification as to why an

evaluation was unnecessary to reach his conclusions." *Id.* ¶ 21. Now that the case has progressed beyond the pleadings stage and into discovery, Defendants seek to do just that—evaluate Plaintiff in an effort to further support their conclusions and opinions.

In the report, Dr. Ettner writes extensively about gender dysphoria generally, and begins by noting that "'[t]he critical element of Gender Dysphoria is the presence of clinically significant distress associated with the condition.'" Ettner Report ¶ 21 (quoting the DSM-5). The examinations sought herein will allow Defendants to explore the scale and scope of any clinically significant distress that Plaintiff and her expert contend are related to her gender dysphoria.

Dr. Ettner also states that:

> With the passage of time, prisoners who require surgical treatment will experience greater distress […] gender dysphoria entails clinically significant and persistent feelings of distress and discomfort with one's assigned gender, if it is not treated, those feelings intensify with time and can become critical. The results are serious and debilitating symptoms of anxiety, depression, and hopelessness. Without adequate, appropriate treatment, these individuals may not be capable of accomplishing simple everyday tasks, and may become increasingly socially withdrawn and isolated, which only serves to further exacerbate their symptoms.

*Id.* ¶ 76. Dr. Ettner further states that "[g]ender dysphoria left untreated or inadequately treated, will result in serious psychological and physical harm. The depression and hopelessness associated with the condition causes suicidal ideation, which will result in actual suicide for many individuals." *Id.* ¶ 77. Dr. Ettner concludes that "the results of providing inadequate treatment are predictable and dire, and take one of three paths: profound psychological decompensation, attempts at surgical self-treatment, or suicidality and suicide." *Id.* ¶ 79.

The examinations requested herein are necessary to afford Defendants a fair opportunity to counter Dr. Ettner's conclusions regarding the risks of inadequate treatment, as they relate specifically to Plaintiff. Indeed, the examinations that Defendants seek are not dissimilar to the one that Dr. Ettner performed. Dr. Ettner conducted "an in-person psychological assessment […]to

evaluate her current psychological and emotional status and the adequacy of the treatment she is receiving for her gender dysphoria." Ettner Report ¶ 80. Dr. Penn's examination will focus on Plaintiff's medical history, her current medical functioning, and detailed medical aspects of past and prospective medical interventions as it relates to her gender dysphoria and treatment thereof. And Dr. Boyd's examination, as a clinical and forensic psychologist, will focus on differential diagnosis/ascertaining co-occurring conditions, historical psychological responses to prior interventions, evaluation of Plaintiff's expectancies regarding prospective interventions, and other psychosocial factors associated with Plaintiff's transition and her experiences of transphobia, as it relates to her gender dysphoria and treatment thereof.

Dr. Ettner also makes several statements in her report that Defendants should be permitted to evaluate through an examination by their own experts. For example, as part of a description of Plaintiff's relevant medical history, Dr. Ettner states that Plaintiff engaged in potentially self-injurious behavior "due to increased dysphoria from the lack of gender-affirming surgical care" and that Plaintiff "attempted suicide" during an "eight-to-nine month period" when she was not receiving appropriate hormone therapy." *Id*. ¶¶ 83-84. Dr. Ettner also states that people "with early onset gender dysphoria that persists into adolescence, like Mrs. Zayre-Brown, typically suffer the most severe symptoms associated with gender dysphoria." *Id*. ¶ 89.

Additionally, Dr. Ettner also notes that Plaintiff "related persistent distress over DPS's continued denial of hair removal, failure to provide counseling competent to address her gender dysphoria, and denial of her needed surgery. […] And appears increasingly despondent over DPS's lack of attention to her medical needs." *Id*. ¶ 91. With regard to Plaintiff, Dr. Ettner concludes that Plaintiff "has severe and persistent gender dysphoria[,] [and] continues to struggle with thoughts of auto-penectomy, the 'last resort' to eliminate gender dysphoria." Ettner Report ¶¶ 133 Dr. Ettner

further concludes that Plaintiff's "previous treatments for gender dysphoria, […], have been ineffective in significantly alleviating or resolving that condition. *Id*. Dr. Ettner concludes that Plaintiff's "gender dysphoria will continue to intensify, with no means of relief[,] [and that [h]er immediate need for surgery is great and will only accelerate." *Id*. 134.

Cross-examination alone is insufficient to allow Defendants to test Dr. Ettner's observations, assessments, and conclusions, and develop counter evidence. In this instance, cross-examination alone is "insufficient test of the truth" of Plaintiff and Dr. Ettner's claims. *See Tomlin* 150 F.R.D. at 632 (D. Minn. 1993). Defendants need, and therefore seek, an opportunity to test the evidence proffered by Plaintiff and her expert—who after all, submitted a comprehensive expert report (and her two prior declarations) only after an in-person examination.

Defendants respectfully seek the opportunity that Rule 35 provides—to test a plaintiff's-expert-backed claims about a mental condition and develop counter evidence. Plaintiff relies on an expert report that was written with the benefit of an in-person examination. Defendants are now seeking to conduct in-person examinations to inform their forthcoming expert reports. Without being able to conduct a Rule 35 examination, Defendants' ability to present counter evidence, will be significantly and negatively impacted. Thus, the Rule 35 examination is not only relevant but necessary to Defendants' defense of this action. Therefore, good cause exists for this court to order Plaintiff to submit to an examination by Joseph V. Penn, MD, CCHP, FAPA, and separately to submit to a mental examination before Sara E. Boyd, Ph.D., ABPP.

## CONCLUSION

For the reasons articulated herein, and in Defendants' Motion for an Order Compelling Plaintiff to Submit to Rule 35 Examinations, Plaintiff's mental condition is in controversy. Moreover, the information sought through these examinations is directly responsive to Plaintiff's

claims and her expert's assertions. Thus, the examinations sought by Defendants are necessary to their defense of this action. Therefore, the Motion is supported by good cause. Accordingly, Defendants' respectfully request, pursuant to Rule 35, that the court enter an order compelling Plaintiff to submit to a mental examination before Joseph V. Penn, MD, CCHP, FAPA, and separately to submit to a mental examination before Sara E. Boyd, Ph.D., ABPP.

This the 17th day of February 2023.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
sbrennan@ncdoj.gov

*Attorneys for Defendants*