IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendants. | **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Hearing Requested)** |

After extensive briefing from both sides, the crux of this case is clear: The parties disagree about the proper course of Plaintiff's medical care. For her part, and as reflected in her Response Brief, Plaintiff and her expert believe that she should not have been denied her requested surgery. But in this Circuit, "[d]isagreements between an inmate and a physician over the inmate's proper medical care," as a matter of law, cannot support a deliberate indifference claim under Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). At the end of the day, Defendants did a thorough review, considered all of the available information, and made a good faith and informed determination, based on their assessment, that surgery was not medically necessary under the circumstances. The basis for their conclusion was: (1) their review showed that Plaintiff's symptoms were well controlled, and she was doing relatively well with other interventions; and (2) their review demonstrated that the medical literature was mixed on the efficacy of surgery in treating gender dysphoria ("GD"). The record provides ample support for these determinations. Plaintiff and her supporters' strong desire for surgery during her incarceration cannot preclude summary judgment in Defendants' favor. Thus, this Court should grant summary judgment for Defendants on both the deliberate indifference and ADA claims.

## I. The Court Should Grant Summary Judgment for Defendants on the Deliberate Indifference Claim Because There Is No Genuine Issue of Material Fact.

The relevant legal principles demonstrate why Defendants should prevail. First, it is well settled that disagreements over the course of medical care do not establish deliberate indifference. *See e.g.*, *Wright*, 766 F.2d at 849; *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021).

### A. Reasonable Disagreements Over Medical Care Cannot Support a Deliberate Indifference Claim.

It has long been established that "[t]he right to treatment is, of course, limited . . . and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). Accordingly, as "with all other aspects of health care, [the propriety or adequacy of a particular course of treatment] remains a question of sound professional judgment[,] [and] . . . courts will not intervene upon allegations of mere negligence, mistake *or difference of opinion*." *Id*. (emphasis added). Thus, "[d]isagreements between an inmate and a physician over [an incarcerated person's] proper medical care are not actionable absent exceptional circumstances." *Wright*, 766 F.2d at 849. *See also, United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (same); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (same); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (same); *Hixson*, 1 F.4th at 302-03 (same).

As more fully discussed below, and in Defendants' prior briefing, in this case the parties disagree over whether, based on Plaintiff's clinical presentation, the requested surgery was medically necessary. *Compare* DE-66 at 3-4, 6-7, 9-10, 15 (Plaintiff's arguments regarding severity of symptoms and necessity of surgery) *with* DE-60 at 8-13; DE-64 at 2-8, 10-15, 18-27; DE-65-15 (Defendants' arguments on the same). The record also shows that the parties disagree on the interpretation of the phrase medical necessity, whether WPATH's guidance sets forth an

unyielding standard, and whether the medical literature conclusively demonstrates the efficacy of GAS. *Compare* DE-63 at 3, 16, 22, 27-28; DE-66 at 1, 12-13; DE-61-2 ¶¶ 14, 50, 53-61, 116-17 (Plaintiff and her expert's arguments on these matters) *with* DE-60 at 3, 13; DE-64 at 22-23, 31; DE-65-15 (Defendants' arguments on the same). Thus, on this record it is clear that "the medical [and mental health professionals] . . . disagree about what the proper course of treatment should have been for [the plaintiff][.]" *Hixson*, 1 F.4th 297 at 303. It is also equally clear that "[s]uch a disagreement . . . is not sufficient to sustain a deliberate indifference claim." *Id*. And as *Hixson* illustrates, presenting an expert opinion that the "actions of [prison-medical officials] violated [a] standard of care . . . does not create an issue of *material* fact." *Id*. (emphasis in original).

### B. Plaintiff's Arguments All Amount to Disagreements Over Medical Care.

In her response, Plaintiff contends that surgery is medically necessary because: (1) her symptoms are severe; (2) she meets WPATH criteria; and (3) the medical literature is conclusive as to the efficacy of Gender Affirming Surgery ("GAS") in treating GD. (DE-66 at 4, 13, 18, 24-25) To support these arguments, Plaintiff relies on her expert, Dr. Ettner, and the recommendations of other clinicians. (DE-66 at 3-4, 6-7, 9-10, 15) Additionally, Plaintiff argues that even under Defendants' own framework, she qualifies for surgery. (DE-66 at 10-11)

All of these arguments amount to disagreements regarding whether Defendants approved the proper course of medical care to treat Plaintiff's GD. Such disagreements, as a matter of law, are insufficient to support a deliberate indifference claim. Therefore, Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim under both the Eighth Amendment and Article I, Section 27 of the North Carolina Constitution.

### 1. The Parties Disagree About Whether Defendants Conducted the Correct Risk-Benefit Analysis.

In her response, Plaintiff essentially argues that Defendants' risk-benefit analysis was flawed because the severity of her symptoms could lead only to the conclusion that surgery was medically necessary. (DE-66 at 10-11) To support her position, Plaintiff contends that the record shows that her distress has been consistent and severe and that her expert, Dr. Ettner, along with other clinicians, agreed that surgery was necessary. (DE-66 at 3-4, 6-7, 9-10, 15) Those contentions, however, only highlight that Plaintiff's deliberate indifference claim boils down to a disagreement between Plaintiff, her expert, and other clinicians, on the one hand, and the Department's health professionals and their experts, on the other.

Defendants—in particular, Drs. Campbell, Sheitman, and Peiper—disagree with Plaintiff, Dr. Ettner, and the other clinicians regarding the severity of Plaintiff's symptoms and whether additional interventions are needed. The record demonstrates that Drs. Peiper, Sheitman, and Campbell reviewed all of Plaintiff's records, including her medical and mental health records, to assess her overall presentation and determine if there were objective indications that surgery was indeed necessary to protect life, to prevent significant disability or illness, or to prevent significant pain and suffering. (*See* DE-61-5 at 50, 149-50, 153-55, 170-72, 187-89; DE-61-8 at 58-60; DE-61-9 at 88-89, 142-143, 190-95; DE-61-12 at 27-29, 49, 109-117) Based on this review, the DTARC determined that there were no such objective indications and concluded that Plaintiff's mood and anxiety symptoms were well controlled, that she was emotionally stable, and that there was no trajectory indicating a worsening or deteriorating of her mental health. (*See* DE-61-5 at 153-58, 182,182-84; DE-61-8 at 58-60; DE-61-9 at 147, 193-95, 208-09; DE-61-12 at 27-29, 49, 113-16, 131-32; DE-61-13 at 1-2; DE-61-27) The determination that surgery was not medically necessary was further supported by information in Plaintiff's health records, including the

contemporaneous notes of her providers. (DE-61-33; DE-61-34; DE-61-35; DE-61-36; DE-61-37; DE-61-39 at 53-57, 68-74, 78-82, 90-97; DE-61-38 at 90-97, 166-68, 180-86, 210-21; DE-61-9 at 193; DE-61-8 at 129-30) A more detailed discussion of the basis for the Department's clinical conclusion that Plaintiff's presentation did not require GAS is contained in Defendants' summary judgment brief and their response to Plaintiff's motion for partial summary judgment. (*See* DE-60 at 8-13; DE-64 at 2-8, 10-14).

Drs. Penn and Boyd support the Department's conclusion on this point. More specifically, Dr. Penn opined that the DTARC's decision was appropriate and reasonable, because there was no clinical indication that surgery was necessary to protect life, prevent clinically significant illness or significant disability, or alleviate severe pain. (DE-65-13 at 29-32, 35) And Dr. Boyd concluded that her evaluation of Plaintiff did not reveal anything that would counsel in favor of the surgery as an immediate intervention from a psychological standpoint. (DE-65-1 at 34) A more detailed discussion of the opinions and conclusions of Drs. Penn and Boyd is contained in Defendants' response to Plaintiff's motion for partial summary judgment. (*See* DE-64 at 18-22, 27; *see also* DE-65-1 at 34; DE-65-12 at 82-83, 112-120, 156-168; DE-65-10 at 210-11; DE-65-13 at 29-35).

On these facts, Plaintiff cannot fairly contend that the record is so one sided that Defendants' determination that GAS was not medically necessary to treat Plaintiff's GD was unreasonable. Notably, Defendants' assessment that Plaintiff's symptoms were well controlled and that she was doing well is supported by numerous health records, Plaintiff's own testimony, and testing conducted by Plaintiff's own expert. (*See* DE-61-33; DE-61-34; DE-61-35; DE-61-36; DE-61-37; DE-61-39 at 53-57, 68-74, 78-82, 90-97; DE-61-38 at 90-97, 166-68, 180-86, 210-21; DE-61-9 at 193; DE-61-8 at 129-30; DE-61-3 at 15, 44, 27-28, 129-33, 136-137, 140- 43, 146, 149, 174-75, 178; DE-65-1 at 19-20)

Additionally, Plaintiff's "catch-22" argument (*see* DE-66 at 9-10) is a red herring and does not change the fact that the health professionals in this case disagree about the severity and extent of Plaintiff's symptoms, and whether further interventions are necessary. The "stability" referenced in the WPATH guidance (as a criterion for eligibility for surgery), and the type of stability referenced by the DTARC (as a basis for determining that the surgery is not medically necessary) are distinct concepts. (*See* DE-61-13 at 1-2; DE-61-27; DE-62-4 at 31, 67-68, 110-12) As articulated in Defendants' response to Plaintiff's motion for partial summary judgment, the record shows that if the Department determined that Plaintiff's GD symptoms were severe and concluded that surgery was necessary, then she could still meet WPATH's stability criteria if she was free from other psychological co-morbidities that needed management prior to surgery. (DE-61-10 at 12; DE-65-9 at 226-27; DE-65-10 at 200-01) Thus, there is no catch-22. (*See also* DE-64 at 14-15)

Accordingly, the record evidence, and the respective arguments of the parties are clear—there is a disagreement regarding the severity and extent of Plaintiff's symptoms, and whether further interventions are necessary. Plaintiff argues that this record "would require a reasonable trier of fact to reject [Defendants' basis for denying the surgery] as a matter of law." (DE-66 at 8) However, this argument overlooks the clear case law that provides that where health care professionals disagree about the proper course of treatment, such a disagreement cannot support a deliberate indifference claim. *Hixson*, 1 F.4th at 303. *See* DE-60 at 24 for a detailed discussion of *Hixson*.

### 2. The Parties Disagree About Whether the WPATH Guidance Sets Forth Controlling Standards for Determining Medical Necessity.

Despite professing that she is not relying solely on WPATH (*see* DE-66 at 7), Plaintiff's response is built with WPATH as the foundation, just like her summary judgment brief. For

example, Plaintiff repeatedly argues that surgery is medically necessary because she meets the WPATH criteria. (DE-63 at 3, 16, 22, 27-28; DE-66 at 1, 12-13) Moreover, the report of Plaintiff's expert, Dr. Ettner, relies on WPATH as the cornerstone for her opinions. (*See* DE-61-2 ¶¶ 30-41; 48-51, 62, 96) Similarly, the other clinicians that Plaintiff relies on, Dr. Figler, Dr. Caraccio, and Jennifer Dula, all also cite to and rely upon WPATH as a basis for their position that surgery is medically necessary. (DE-63 at 27-28, DE-62-17 ¶¶ 9-10; DE-61-23 at 1; DE-62-18 ¶¶ 4, 8, 22; DE-62-19 ¶¶ 4, 7; DE-61-25 at 1) Further still, Plaintiff's arguments include criticisms that the Department rejects or ignores WPATH. (DE-66 at 13; DE-63 at 27-28, 30, 34)

This line of argument—that WPATH sets forth standards to which correctional agencies should be bound in determining medical necessity—amounts to another disagreement among health professionals. As articulated in Defendants' summary judgment brief and their response to Plaintiff's motion for partial summary judgment, the Department is aware of the WPATH's guidance and considers it a useful resource. (DE-60 at 3; DE-64 at 31; *see also*, DE-61-7 at 28, 152; DE-61-8 at 124; DE-61-5 at 90-91) Moreover, the Department uses the guidance as an information source, which is precisely how it is intended to be used—WPATH itself acknowledges that its recommendations are intended to be flexible and not a one-size fits all mandate. (DE-64 at 31; DE-61-7 at 28, 152; DE-61-8 at 124; DE-61-at 90-91; DE-62-4 at 8) Thus, WPATH does not set an unequivocal standard for determining when a given procedure is medically necessary.

In short, none of the statements contained in the WPATH guidance can serve as a substitute for an individualized medical-necessity review, which is routinely performed by managed care organizations (like correctional healthcare systems) and private insurers alike. (*See* DE-65-13 at 16, 43) Defendants' position is supported by Dr. Penn, the lead psychiatrist for the Texas prison system, who has decades of correctional healthcare experience. (DE-65-13 at 20-23) A more

detailed discussion of the use of WPATH's guidance as a tool and its limitations as a concrete set of standards appears in Defendants' prior briefing. (*See* DE-60 at 3; DE-64 at 22-23, 31)

Here, the record evidence, and the respective arguments of the parties are clear—there is a reasonable disagreement between Plaintiff and her expert and Defendants and one of their experts regarding the extent to which the WPATH guidance should control in determining whether GAS is medically necessary under the circumstances. The case law is also clear—such a disagreement cannot support a deliberate indifference claim. *See Hixson*, 1 F.4th at 303.

### 3. The Parties Disagree About the Implications of the Medical Literature.

Plaintiff and her expert, Dr. Ettner, contend that the medical literature is conclusive regarding the efficacy of GAS in treating GD. (DE-66 at 13; DE-61-2 ¶¶ 14, 50, 53-54, 57-58, 61, 116-17) Indeed, Plaintiff's expert contends that GAS would be curative of Plaintiff's GD. (DE-61-2 ¶¶ 31, 119; DE-65-1 at 11-12, 21-22, 34) However, the record shows that Defendants and their experts disagree with that conclusion. Dr. Campbell and Dr. Sheitman both reviewed the literature and concluded that it is mixed, and this formed part of the basis for the DTARC's determination that surgery was not medically necessary. (DE-61-9 at 203-05; DE-61-12 at 50-51, 57-58, 119-21 DE-61-13 at 2-5) And Dr. Li, a nationally leading expert on causal inference and comparative effectiveness research, did a detailed literature review that supports this conclusion. (DE-65-15 at 1-2, 4-5) Dr. Li specifically assessed more than 80 studies that were cited by Dr. Ettner and WPATH to support various assertions about the efficacy of GAS. (DE-65-15 at 1, 3) Dr. Li concluded that these studies "fail to provide rigorous and consistent statistical evidence on the benefits in quality of life and well-being of" GAS. (DE-65-15 at 4-5, 25) Moreover, Dr. Penn agrees with the conclusions reached by Dr. Li regarding the state of the medical literature. (DE-65-13 at 33-35) A more detailed discussion of the Department's conclusions regarding the medical literature and Dr.

Li's opinions and conclusions on the topic is contained in Defendants' summary judgment brief, and their response to Plaintiff's motion for partial summary judgment. (*See* DE-60 at 13; DE-64 at 22, 28-30)

In response to this, Plaintiff presented rebuttal reports from two experts, Dr. Ettner and Dr. Armand Antommaria. Aside from acknowledging that she reviewed Dr. Li's report, Dr. Ettner's rebuttal report does not reference the substance of Dr. Li's report at all. (Reply Ex. 1) As for Dr. Antommaria, he does purport to offer a rebuttal to Dr. Li's report. (Reply Ex. 2 ¶ 4) However, in his deposition, Dr. Antommaria testified that he did not review the vast majority of the studies that Dr. Li analyzed in her report. (Reply Ex. 3 at 57-66) Nor did Dr. Antommaria's report specifically assess whether the studies cited by WPATH and/or Dr. Ettner support the assertions to which they were attached. (Reply Ex. 1) Rather, Dr. Antommaria's report focuses on the general notion that clinical practice guidelines can be and often are based on research that can be considered "low quality" for various reasons. (Reply Ex. 2 ¶¶ 6) This notion is not at issue in this litigation.

What is clear from all of this is that there is a divergence among the parties and their experts regarding the relevant medical literature and whether it conclusively demonstrates the efficacy of GAS as a treatment for GD. And that divergence constitutes a reasonable disagreement among health professionals. As noted, such a disagreement cannot support a deliberate indifference claim. Thus, Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim.

### C. The Objective Prong Requires More than a Serious Medical Condition.

Plaintiff's response (*see* DE-66 at 2-5), much like her summary judgment brief (*see* DE-63 at 25), incorrectly assumes that a showing of a serious medical condition is sufficient to satisfy the objective prong of a deliberate indifference claim. This argument overlooks the case law that plainly provides that the critical inquiry on the objective prong is "[w]hether the conditions of

confinement **inflict** harm that is, objectively, sufficiently serious . . . ." *Thorpe v. Clarke*, 37 F.4th 926, 940 (4th Cir. 2022) (emphasis added) (cleaned up). *See also Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990); *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Under this authority, Plaintiff must present evidence that the denial of her requested surgery **has caused** "objectively, sufficiently serious" harm or risks of the same. (*See also* DE-60 at 19-20) As explained in Defendants' summary judgment brief (*see* DE-60 at 19-20) and in their response to Plaintiff's motion for partial summary judgment (*see* DE-64 at 24-26), the objective contemporaneous health records indicate a lack of issues with sleep, appetite, energy level, or thoughts of self-harm or suicidal ideation, after learning of the surgery denial, which is consistent with Plaintiff's historical presentation. In short, this record cannot support an inference that Plaintiff has sustained an "objectively, sufficiently serious" risk of harm as a result of the denial of her requested surgery.

### D. Plaintiff's Other Arguments to Avoid Summary Judgment All Fail.

#### 1. Plaintiff Cannot Rely on Evidence Created and Presented at Summary Judgment to Establish Deliberate Indifference.

Plaintiff contends that "the proper inquiry is what Defendants know *now*—not what they perceived at some point in the past." (DE-66 at 5) (emphasis in original) This misstates the law on deliberate indifference. Because the relevant standard focuses on Defendants' subjective knowledge at the time they decided to deny Plaintiff's requested surgery, Plaintiff cannot rely on evidence created for litigation (including declarations submitted for the first time at summary judgment) to avoid summary judgment.

The only authority[1] that Plaintiff relies on to support her argument that the key to the deliberate indifference inquiry is Defendants' *current* knowledge is *Farmer*. (DE-66 at 5) In the portion of *Farmer* she cites, the U.S. Supreme Court specifically addressed the "petitioner's argument that a subjective deliberate indifference test will unjustly require prisoners to suffer physical injury before obtaining court-ordered correction of objectively inhumane prison conditions." *Farmer*, 511 U.S. at 845. The Court noted that existing precedent established that one did not have to await harm to seek relief and that the "subjective approach to deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief." *Id*. (cleaned up). In this section of *Farmer* (and the cases cited therein), the Court made clear that even under the subjective approach a *risk* of such harm is sufficient for a deliberate indifference claim. *Id*.

Here, Defendants have not contended that Plaintiff must actually experience "objectively, sufficiently serious" harm to succeed on her deliberate indifference claim—rather, they have consistently argued that the record does not show that she faced a *risk* of such harm. (DE-60 at 19-22) Thus, this portion of *Farmer* is not relevant and adds nothing to the analysis in this case. It certainly does not suggest that Defendants must account for evidence—like the summary judgment declarations that Plaintiff now cites—that Defendants never even saw until the summary judgment phase of this litigation. Nor would such a standard make any sense.

Additionally, Plaintiff cites a footnote from *Farmer* (*see* DE-66 at 5) that is likewise not relevant to the analysis in this case. In footnote 9, the Court wrote "[i]f, for example, the evidence

---

[1] Plaintiff also cites *Makdessi v. Fields*, 789 F.3d 126, 129 (4th Cir. 2015), with a parenthetical about prison officials not avoiding liability by ignoring events and circumstances. That portion of *Makdessi* concerns the recognition the subjective prong of deliberate indifference can be demonstrated through circumstantial evidence. The cited portion of *Makdessi* does not speak to prospective injunctive relief or the appropriate temporal frame of refence of the defendants' knowledge.

before a district court establishes that an inmate faces an objectively intolerable risk of serious injury, the defendants could not plausibly persist in claiming lack of awareness[.]" *Id.* 511 U.S. at 846 n.9. In other words, the Court notes that *if* a district court determined that the challenged condition violated the Eighth Amendment, then prison officials could not thereafter claim a lack of subjective awareness. Obviously, in this case there has been no determination of an Eighth Amendment violation and thus, this portion of *Farmer* referenced by Plaintiff is not relevant.

Accordingly, Plaintiff should not be permitted to rely on evidence newly created for summary judgment (namely, her own declaration and the declarations of Dr. Figler, Dr. Caraccio, and Ms. Dula) to establish what Defendants knew in February 2022 when they denied her request for surgery. In any event, the evidence that Plaintiff created and presented at summary judgment is insufficient for her to avoid summary judgment. That evidence simply reiterates the dispute between the parties concerning whether the extent and severity of her symptoms indicate that surgery was and is medically necessary. Such a dispute among health professionals cannot support a deliberate indifference claim.

### 2. *De'Lonta* is Not Dispositive.

Plaintiff's reliance on *De'Lonta* is misplaced. In *De'Lonta*, the plaintiff filed a deliberate indifference claim premised on the denial of her request for an **evaluation** for surgery. *De'Lonta v. Johnson*, 708 F.3d 520, 523 (4th Cir. 2013). The district court dismissed the action on frivolity review and the Fourth Circuit reversed. *Id*. at 526. In doing so, the Court was intentionally "clear about [its] holding . . . that [the plaintiff's] Eighth Amendment claim [based on the denial of a request for evaluation for surgery] is sufficiently plausible to survive screening pursuant to 28 U.S.C. § 1915A." *Id*. The Court continued that it was "not decid[ing] . . . the merits of [the] claim[,] [n]or, for that matter, [was] it suggest[ing] what remedy [the plaintiff] would be entitled to should

she prevail." *Id*. In light of this holding, Plaintiff's contention that *De'Lonta* should be controlling in this case is puzzling.

To be sure, *De'Lonta* notes that the provision of some care does not automatically undermine a claim for deliberate indifference claim. *See id*. However, this is not an argument presented by Defendants. Rather, as reflected in Defendants' prior briefing, the record demonstrates that there is a dispute among health professionals regarding the denial of the requested surgery. (*See* DE-60 at 3, 8-13; DE-64 at 2-8, 10-15, 18-23, 27, 31) In contrast to *De'Lonta,* which addressed the denial of a surgical evaluation at the frivolity review stage, here, Defendants seek summary judgment on a decision to deny surgery based on individual circumstances and a developed record. Thus, *De'Lonta* does not address the issue before this Court and its holding in is inapplicable.

### 3. Cases from Other Circuits Demonstrate the High Bar for Deliberate Indifference Claims.

Plaintiff's argument regarding the out-of-circuit cases similarly fails to persuade. The cases addressing gender affirming surgery either support or do not preclude summary judgment for Defendants. First, Plaintiff attempts to analogize this case to *Edmo*, but only when such analogizing is helpful. (*See* DE-66 at 15-18) Plaintiff cannot have it both ways. The Ninth Circuit's ruling in *Edmo* was premised on the "unique facts and circumstances presented" by the plaintiff, which included evidence of multiple instances of self-harm. *Edmo v. Corizon, Inc.*, 935 F.3d 757, 782, 772-74 (9th Cir. 2019).

*Edmo* stands on its own unique factual record. Both that record and the opinion in *Edmo* are outliers. As discussed in detail in prior briefing, the balance of circuits (and multiple district courts) that have addressed the issue have found that the denial of a particular request for GAS did not constitute deliberate indifference. (*See* DE-10 at 19-22; DE-60 at 25-28).

Plaintiff's reference to the subsequent *Campbell v. Kallas* case lacks critical context. (DE-66 at 20-21) Plaintiff is correct that a district court in Wisconsin subsequently allowed the plaintiff to proceed with a deliberate indifference claim and that, following a trial, the department of corrections was found to be deliberately indifferent. (DE-66 at 21, *Campbell v. Kallas*, No. 16-cv-261-jdp, 2020 U.S. Dist. LEXIS 230117 (W.D. Wis. Dec. 8, 2020) ("*Campbell II*") But Plaintiff ignores the bases for the court's finding in *Campbell II*, which are not present in this case. Significantly, the department in *Campbell II* had a blanket policy, which effectively prevented Plaintiff from qualifying for surgery. *Id*. at *13-14. And that was the basis for the department's denial in *Campbell II*, not the plaintiff's particular circumstances. *Id*. at *19-20. Here, however, Plaintiff acknowledges that she does not contend that her request was denied because of any blanket ban. (*See* DE-66 at 21) Thus, *Campbell II* is not persuasive.

### 4. Cases About Following Low-Quality Studies are Not Relevant.

Similarly, because Plaintiff acknowledges that she does not contend that her request was denied because of any blanket ban (*see* DE-66 at 21), the cases that Plaintiff references for the notion that "low-quality" research can still support treatments are also irrelevant. Those cases[2] all involve challenges to blanket prohibitions on certain types of care, which, as Plaintiff concedes, is not a contention in this case. Those cases do not stand for the proposition that specific decisionmakers (*i.e.*, the health professionals in a correctional agency) *must approve* interventions that they determine are not well supported by the evidence in individual cases. Therefore, those cases do not support a claim for deliberate indifference under the circumstances of the instant case.

---

[2] *Flack v. Wis. Dep't of Health Servs.*, 395 F. Supp. 3d 1001 (W.D. Wis. 2019) (challenging a Medicaid exclusion for GAS and hormone treatment); *Dekker v. Weida*, No. 4:22cv325-RH-MAF, 2023 U.S. Dist. LEXIS 107421 (N.D. Fla. June 21, 2023) (challenging a Medicaid rule regarding payment for specific types of treatments for GD); *Brandt v. Rutledge*, No. 4:21CV00450 JM, 2023 U.S. Dist. LEXIS 106517 (E.D. Ark. June 20, 2023) (challenging legislation prohibiting the provision of gender transition procedures to minors).

## II. The Court Should Grant Summary Judgment for Defendants on the ADA Claim.

Plaintiff's ADA claim for discriminatory treatment is novel and unsupported by law. And Plaintiff's brief response on the disability claim misses the mark. First, while Plaintiff's complaint is not clear on the precise theory of her disability claim, in Plaintiff's own summary judgment brief, she unequivocally chose to pursue only a discrimination-based disability theory. (DE-63 at 34-35) Thus, Plaintiff's arguments in her response that allude to either an accommodation or disparate impact-based claim (*i.e.*, the other two available disability claims—*see* DE-60 at 31; *Richardson v. Clarke*, 52 F.4th 614, 619 (4th Cir. 2022)) should be rejected. (DE-66 at 23-25)

In any event, Plaintiff's argument that she has indeed submitted an accommodation request does not support her claim in this case. (DE-66 at 24) The ADA request that Plaintiff references is dated in August 2022, several months after she initiated this lawsuit. (DE-66-2; DE-1) And despite having an opportunity to amend her complaint, she did not.

As for the discrimination-based claim, that fails too. Plaintiff's argument—that her surgical request was denied because of her gender dysphoria—is circular and inaccurate. As noted throughout Defendants' briefing and as supported by the record, the surgery request was denied as not medically necessary and not because Plaintiff has GD. Plaintiff's argument that her surgery was denied because of her GD would only work if there was some sort of categorical ban to such care, which she concedes there is not. (*See* DE-66 at 21)

Additionally, Plaintiff's argument that if she had pursued a vulvoplasty in service of a medical condition other than GD it would have been approved (*see* DE-66 at 25) is not based on any record evidence and is pure speculation. The record evidence to which Plaintiff refers contains no testimony about vulvoplasty (much less testimony that vulvoplasty has been or would be approved for other conditions). (*See* DE-61-5 at 144-45) Moreover, the cited testimony clearly

establishes that regardless of the basis for the requested surgery (*i.e.*, cancer or GD), the Department would evaluate the request for medical necessity in the same way. (DE-61-5 at 144-45)

In short, as explained in Defendants' prior briefing (DE-60 at 30-35, DE-64 at 34-35), this record cannot support any disability claim. Plaintiff's response fails to affect this calculus. Accordingly, Defendants are entitled to summary judgment on Plaintiff's disability claim.

## CONCLUSION

For the reasons set forth herein, and for the reasons stated in Defendants' summary judgment brief and their response to Plaintiff's motion for partial summary judgment, (DE-60 and DE-64), Defendants respectfully request that their Motion for Summary Judgment (DE-59) be granted and that all claims asserted against them be dismissed with prejudice. Pursuant to Section II(c) of the Pretrial Order and Case Management Plan entered in this case, DE-28, Defendants respectfully request a hearing on their Motion for Summary Judgment.

This the 26th day of October 2023.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Orlando L. Rodriguez
Orlando L. Rodriguez
Special Deputy Attorney General
orodriguez@ncdoj.gov

Stephanie A. Brennan
Special Deputy Attorney General
sbrennan@ncdoj.gov

***Attorneys for Defendants***