**Defs' Reply Ex. 3**

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 1

1              IN THE UNITED STATES DISTRICT COURT

2         FOR THE WESTERN DISTRICT OF NORTH CAROLINA

3                    CHARLOTTE DIVISION

4                       *   *   *

5     KANAUTICA ZAYRE-BROWN,

6        Plaintiff,

7           vs.                 CASE NO. 3:22-cv-191

8     NORTH CAROLINA DEPARTMENT

9     OF PUBLIC SAFETY, et al.,

10       Defendants.

11                      *   *   *

12          Videotaped deposition of ARMAND H.

13    ANTOMMARIA, M.D., Ph.D., Expert Witness herein,

14    called by the Defendants for cross-examination

15    pursuant to the Rules of Civil Procedure, taken

16    before me, Vicky L. Marcon, a Notary Public within

17    and for the State of Ohio, at the offices of

18    Regus, PNC Center, 201 E. 5th Street, Suite 1900,

19    Cincinnati, Ohio, on Thursday, September 7, 2023,

20    at 9:00 a.m. Eastern

21                      *   *   *

22

23

24

25

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1    sir.

2                   MR. RODRIGUEZ:  All right.  This is a

3    good natural stopping point for a break.  If you

4    guys are good with it, we'll just do a quick five.

5                   THE VIDEOGRAPHER:  We're off the

6    record at 10:13 a.m.

7                   (Break taken.)

8                   THE VIDEOGRAPHER:  We're back on the

9    record at 10:21 a.m.

10   BY MR. RODRIGUEZ:

11        Q.   Okay.  As you were preparing your

12   report, who did you speak with aside from any

13   attorneys for the plaintiff?

14        A.   I don't believe anyone else, sir.

15        Q.   So, you didn't speak with Dr.

16   Ettner?

17        A.   No, sir.

18        Q.   All right.  And, as you were

19   preparing your report, what materials did you

20   review?

21        A.   Um --

22        Q.   You don't have a copy of it.

23        A.   Oh, you haven't given me the

24   report.  If I -- as I stated in the report, I

25   reviewed Dr. Ettner's report, Dr. Li's report,

Veritext Legal Solutions
800-743-DEPO (3376)          calendar-carolinas@veritext.com          www.veritext.com
Case 3:22-cv-00191-MOC-DCK   Document 71-3   Filed 10/26/23   Page 2 of 31

Armand H. Antommaria , M.D., Ph. D.                September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1    the information attached to those reports, and

2    other relevant background information, which is

3    cited in the content of my report.

4           Q.    Did you review any materials that

5    are not listed in your report?

6           A.    No, sir.

7           Q.    So, then, you didn't review any

8    medical records of the plaintiff?

9           A.    No, sir, I did not.

10          Q.    You didn't review any mental

11   health records of the plaintiff?

12          A.    No, sir, I did not.

13          Q.    Did you -- you didn't review,

14   then, the department's policy concerning the

15   evaluation, management and treatment of

16   transgender offenders?

17          A.    So there were attachments to Dr.

18   Ettner's report which included, to the best of

19   my knowledge, some institutional policies, but

20   I would need to refer to the report to refresh

21   my memory about the specific titles of those

22   policies or reports or --

23          Q.    Okay.  Did you review the expert

24   report of Dr. Penn?

25          A.    No, sir.

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 52

1          Q.   Did you review the expert report
2     of Dr. Boyd?
3          A.   No, sir.
4          Q.   Did you read the deposition
5     transcript of Dr. Penn?
6          A.   No, sir.
7          Q.   Deposition transcript of Dr. Boyd?
8          A.   No, sir.
9          Q.   Did you review any deposition
10    transcripts?
11         A.   No, sir.
12         Q.   When you sat down to begin working
13    on your report, were you supplied any
14    assumptions?
15         A.   Can you clarify what you mean by
16    supplied with assumptions, sir?
17         Q.   Yeah.  Were you -- when you were
18    engaged in this case, were you given a set of
19    assumptions to just assume were the case in
20    preparation of your report?
21         A.   No, sir, I was not.
22         Q.   So, aside from reviewing the
23    materials that you list in your report as
24    reviewing, and speaking with counsel for the
25    plaintiff, did you do anything else to prepare

Case 3:22-cv-00191-MOC-DCK   Document 71-3   Filed 10/26/23   Page 4 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1    for your report or to prepare in writing your

2    report?

3             A.    To -- if by that I reference in my

4    report is included the scientific literature

5    that I reviewed and incorporated into my

6    report, no.  That's the comprehensive scope of

7    my preparation for writing the report, sir.

8             Q.    All right.  Are all of your

9    opinions provided in your report?

10                  MS. NOWLIN-SOHL:  Object to form.

11                  THE WITNESS:  I'm sorry, sir, I don't

12   understand what you're asking.

13            Q.    Sure.

14            A.    I have lots of opinions.

15            Q.    Right.  Well, your opinion about,

16   you know, the Cincinnati Reds, or whatever,

17   doesn't -- that's not what I was getting at.

18   So, I'll ask a different question.  Are all of

19   the opinions that you intend to offer in this

20   case listed in your report?

21            A.    At this time, yes, sir.

22            Q.    Are you aware of any opinions, or

23   do you have any opinions about this case that

24   are not listed in your report that you intend

25   to offer?

Veritext Legal Solutions
800.743.DEPO (3376)          calendar-carolinas@veritext.com          www.veritext.com
Case 3:22-cv-00191-MOC-DCK   Document 71-3   Filed 10/26/23   Page 5 of 31

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 54

```
 1              A.    No, sir.
 2              Q.    So, are you offering any opinions
 3    in this case, then, about the medical necessity
 4    of any particular procedure requested by the
 5    plaintiff?
 6                    MS. NOWLIN-SOHL:  Object to form.
 7                    THE WITNESS:  So, aspects of my
 8    report touch upon the issue as to whether or not
 9    gender-affirming medical care is medically
10    necessary.
11              Q.    In general?
12              A.    Yes, sir, in general.
13              Q.    And so, as it relates to a
14    procedure requested by this plaintiff, are you
15    offering any opinions in your report about
16    medical necessity?
17              A.    No, sir.
18              Q.    Are you offering any opinions in
19    this report about how the department applies
20    the phrase medical necessity?
21              A.    No, sir, I'm not.
22              Q.    Are you offering any opinions in
23    this report about whether the plaintiff should
24    have ever been housed at a male correctional
25    facility?
```

Veritext Legal Solutions
800.743.DEPO (3376)        calendar.carolinas@veritext.com        www.veritext.com
Case 3:22-cv-00191-MOC-DCK   Document 71-3   Filed 10/26/23   Page 6 of 31

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 55

1          A.    No, sir, I am not.

2          Q.    Are you offering any opinions

3    about the timeliness of the plaintiff's

4    transfer to a female correctional facility?

5          A.    No, sir, I am not.

6          Q.    Are you offering any opinions

7    about the provision of hormone indication to

8    the plaintiff?

9          A.    No, sir, I am not.

10          Q.    Are you offering any opinions

11   about the Division Transgender Accommodation

12   Review Committee's evaluation of the

13   plaintiff's request for a vulvoplasty?

14          A.    No, sir, I am not.

15          Q.    Are you offering any opinions

16   about the department's policy for the

17   evaluation and management of transgender

18   offenders?

19          A.    No, sir, I am not.

20          Q.    Are you offering any opinions

21   about the department's personnel that sit on

22   the Division Transgender Accommodation Review

23   Committee?

24          A.    No, sir, I am not.

25          Q.    Are you offering any opinions

Veritext Legal Solutions
800.743.DEPO (3376)      calendar.carolinas@veritext.com      www.veritext.com
Case 3:22-cv-00191-MOC-DCK   Document 71-3   Filed 10/26/23   Page 7 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 56

1    about the qualifications of the personnel that

2    sit on the Division Transgender Accommodation

3    Review Committee?

4              A.    No, sir, I am not.

5              Q.    Are you offering any opinions

6    about the processes that the Division

7    Transgender Accommodation Review Committee

8    uses?

9                   MS. NOWLIN-SOHL:  Object to form.

10                   THE WITNESS:  To the best of my

11   knowledge, sir, no, I am not.

12              Q.    Are you offering any opinions

13   about the provision of healthcare to the

14   plaintiff?

15                   MS. NOWLIN-SOHL:  Object to form.

16                   THE WITNESS:  So, sir, I'm offering

17   opinions about the criteria that should be

18   utilized in order to determine whether or not

19   gender-affirming surgical treatment is medically

20   necessary for the patient.  So, some of the

21   opinions that I am offering touch on that issue

22   but not -- touch on that issue.

23              Q.    The medical necessity issue is a

24   general issue not specific to this particular

25   patient?

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 3:22-cv-00191-MOC-DCK   Document 71-3   Filed 10/26/23   Page 8 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 57

1          A.    Correct.  It is a general issue.
2          Q.    So, are you offering any opinions
3    about the provision of mental healthcare to
4    this particular patient?
5          A.    No, sir.
6          Q.    Are you offering any opinions
7    about the state of the plaintiff's mental
8    healthcare?  Or excuse me.  I'll ask a new
9    question.  Are you offering any opinions about
10   the state of the plaintiff's mental health?
11         A.    No, sir, I am not.
12               MR. RODRIGUEZ:  All right.  What are
13   we on, six?  For the witness.
14               THE WITNESS:  Thank you.
15               (Thereupon, Exhibit 6, Expert Report
16   of Fan Li, PhD, was marked for identification.)
17   BY MR. RODRIGUEZ:
18         Q.    Do you recognize this document,
19   Dr. Antommaria?
20         A.    Yes, sir.
21         Q.    What is it?
22         A.    It appears to be Dr. Li's report,
23   including the appendices.
24         Q.    The -- if you turn to page 12, Dr.
25   Li writes, in the second sentence there at the

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1   top, this assertion cites 21 references.  And

2   I'll represent to you that this assertion that

3   Dr. Li is referring to appears on the previous

4   page as WPATH Assertion 1.  Did you review any

5   of those 21 references that are cited in

6   support of WPATH Assertion 1?

7           A.   So, minimally I reviewed da Silva

8   and Lindqvist.

9           Q.   And is da Silva one of the cases

10  that you referenced reviewing, or one of the

11  studies that you referenced reviewing earlier

12  today in preparation for your deposition?

13          A.   Yes, sir.

14          Q.   It is?

15          A.   Yes, sir.

16          Q.   Is that the La Costa one, or is

17  that the Papadopulos one, or the Scandinavian

18  one?

19          A.   Oh.  So, I misspoke, sir.  It

20  would be what I erroneously referred to as La

21  Costa.

22          Q.   It was da Silva instead?

23          A.   Yes.

24          Q.   Okay.

25          A.   And it's D-A S-I-L-V-A.

Veritext Legal Solutions
800.743.DEPO (3376)          calendar-carolinas@veritext.com          www.veritext.com
Case 3:22-cv-00191-MOC-DCK   Document 71-3   Filed 10/26/23   Page 10 of 31

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 59

1          Q.   All right.  So, da Silva you said
2     you reviewed it minimally.  What does that
3     mean?
4          A.   I read the article, sir.
5          Q.   All right.  And then what was the
6     second study, the other study you said you
7     referenced, or you reviewed?
8          A.   Lindqvist.  L-I-N-D-Q-V-I-S-T.
9          Q.   All right.  Is that the
10    Scandinavian study?
11         A.   Yes, sir.
12         Q.   Okay.  And that third study that
13    you referenced, Papadopulos, you mentioned
14    earlier that you looked at that study in
15    preparation of your deposition.  Do you know if
16    that was one of these 21 studies?  And for ease
17    of reference, the reason why I included the
18    appendix to this one is because it lists all of
19    the studies.
20         A.   So, to the best of my knowledge,
21    sir, or to the best of my recall, no, I believe
22    that it's referenced later in Dr. Li's report.
23         Q.   Okay.  So, aside from da Silva and
24    Lindqvist, have you reviewed any of the other
25    19 studies referenced by Dr. Li here?

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 60

1          A.    So, I try to maintain my

2     familiarity with the literature, sir, and may

3     have read them in my work in this field but do

4     not recall reviewing them in particular in

5     preparation for my report.

6          Q.    Okay.  Page 15 of Dr. Li's report,

7     the last sentence on that page, he says, this

8     assertion -- which, again, I'll represent is

9     WPATH Assertion 2, which appears on the same

10    page.  Quote, this assertion cited 25 studies,

11    15 of which were cited also in WPATH Assertion

12    1.  Do you know if you reviewed any of the

13    balance of those studies or any of the ten

14    other studies that were not referenced in

15    WPATH 1?

16         A.    To the best of my knowledge, sir,

17    I did not review any of the balance of the

18    studies.

19         Q.    All right.

20         A.    And doing so was not necessary to

21    the formation of my opinion in my report.

22         Q.    Okay.  We'll turn to page 17,

23    middle of the page there beneath the paragraph

24    WPATH Assertion 6.  The next full paragraph

25    starts, Brown and Jones.  Did you review Brown

Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 12 of 31

Page 61

1    and Jones, 2015?

2          A.    Not to the best of my knowledge,

3    sir.

4          Q.    Okay.  Same page, WPATH Assertion

5    10, flip to page 18, first clause there, this

6    assertion cites 26 references.  Did you review

7    any of those studies?

8          A.    So, on page 18, Papadopulos,

9    P-A-P-A-D-O-P-U-L-O-S, is listed.

10                (Zoom interruption.)

11                MR. RODRIGUEZ:  John, you're not on

12   mute anymore, bud.  There you go.

13                THE WITNESS:  As well as da Silva.

14         Q.    All right.  So, there's

15   Papadopulos is referenced in there, and then da

16   Silva is also referenced.  Beyond da Silva and

17   Papadopulos, did you review any of these

18   studies, any of the other 26 studies, or 24

19   studies?

20         A.    Not to the best of my knowledge,

21   sir.

22         Q.    All right.  Page 19, with respect

23   to WPATH Assertion 11, Dr. Li writes that, this

24   assertion cites two references.  Did you review

25   either of those two?

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 62

1          A.    No, sir.

2          Q.    And then dropping down with

3    respect to Ettner Assertion 1, Dr. Li writes,

4    this assertion cited three references.  Did you

5    review any of those references?

6          A.    So, I only see one of the three

7    listed on page 19, and I did not review that.

8    I don't immediately see what the other two

9    were, sir.

10          Q.    I can tell you in one second.

11          A.    Thank you, sir.

12          Q.    So, the first one is the Pfafflin

13    and Junge, which I believe is the one that's

14    stated there in the document, and then the

15    other is Smith, et al., 2005.  It appears on --

16    in the appendix.  Unfortunately, it's not

17    numbered.

18               MS. NOWLIN-SOHL:  May I show him?

19               MR. RODRIGUEZ:  Yes.

20               THE WITNESS:  Sir, I believe I'm

21    familiar with other studies in the same cohort

22    that's reported by Smith, et al., and I did not

23    review the third study listed.

24          Q.    Okay.  Page 20, Dr. Ettner's

25    Assertion 2, she references Gijs and Brewayes.

Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 14 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 63

1    Did you review that?

2            A.    No, sir, I did not.

3            Q.    That study apparently analyzed 18

4    other studies.  Did you review any of the other

5    studies referenced in Gijs and Brewayes?

6            A.    So, Dr. Li's management of

7    systematic reviews is complicated, because she

8    discusses the reviews but not the individual

9    studies reported in the reviews.  And so, I

10   don't know -- and I don't believe she actually

11   lists the other 18 studies.  So, no, sir, I

12   don't -- I may have reviewed them in other

13   contexts.  So, I don't --

14           Q.    Well, you didn't review Gijs and

15   Brewayes in the context of preparing your

16   report?

17           A.    No, sir.  And I didn't explicitly

18   review the 18 studies that they listed, but I

19   may be familiar with those studies through

20   other work.

21           Q.    Okay.  Page 21, Ettner Assertions

22   5 through 9, the next paragraph below that

23   Dr. Et -- or Dr. Li writes, quote, first among

24   the 24 cited references.  Did you review any of

25   those studies for purposes of writing your

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 64

1    report?

2          A.   No, sir, I did not.

3          Q.   And page 22, Dr. Ettner Assertion

4    10 refers to a single paper, which is Bauer, G.

5    and Scheim, 2015.  Do you recall reviewing that

6    in preparation of your report?

7          A.   I'm sorry.  You're on page 22,

8    Ettner Assertion 10, sir?

9          Q.   Yeah.  And the actual study is not

10   listed there.  So, you have to use the appendix

11   to --

12         A.   No, sir, I did not.

13         Q.   On page 23, Ettner Assertion 11,

14   Dr. Li writes, this assertion cites Brown and

15   McDuffie, 2009.  Did you review that?

16         A.   No, sir, I did not.

17         Q.   Same page, Ettner Assertion 12,

18   Dr. Li refers to the meta-analysis, which it

19   said is Weinforth, et al., 2019.  Did you

20   review that?

21         A.   I did not, sir.

22         Q.   That meta-analysis was a

23   literature review of 13 studies.  Did you

24   review any of those 13 studies that would have

25   been referenced in Weinforth for purposes of

Case 3:22-cv-00191-MOC-DCK   Document 71-3   Filed 10/26/23   Page 16 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1   drafting your report?

2          A.   So, my testimony would be the

3   same, sir.  I may be familiar with some of

4   those 13 studies, but I did not review

5   Weinforth at all and so did not explicitly look

6   for those 13 studies and explicitly review them

7   for the purposes of writing my report.

8          Q.   So, are you offering any opinions

9   about whether the studies that Dr. Li discusses

10  in her report and that are contained in the

11  appendix, whether any of those studies provide

12  rigorous and consistent statistical evidence on

13  the benefits of quality of life and well-being

14  for gender-affirming surgery?

15          MS. NOWLIN-SOHL:  Object to form.

16          THE WITNESS:  I am offering opinions

17  about what Dr. Li identifies as rigorous and

18  consistent and reasonable evidence, and, in

19  particular, as that applies to the -- so, in

20  general, that is my primary opinion but do have

21  opinions regarding how that applies to the three

22  studies that we have mentioned previously.

23          Q.   Okay.  I'm going to have to ask

24  the question, I guess, differently, because

25  that wasn't quite what I was asking, or perhaps

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 17 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1   it was and we're just talking past each other.

2   So, you just testified that you didn't review

3   the vast majority of the studies referenced in

4   Dr. Li's report.  Is that accurate?

5             A.   Yes, sir.

6             Q.   And you didn't review the vast

7   majority of the -- you reviewed a handful of

8   those studies.  Correct?  Right?  You said you

9   reviewed three of them?

10            A.   Yes, sir.

11            Q.   And you said that you reviewed --

12  you may be familiar with some of the other

13  studies in other contexts.  Correct?

14            A.   Correct.

15            Q.   But with the exception of those

16  three, you just testified that you didn't

17  review any of the other studies that are listed

18  in here for purposes of writing your report.

19  Right?

20            A.   Correct, sir.

21            Q.   So, my question is whether you're

22  offering an opinion about whether those studies

23  that are specifically referenced in this report

24  by Dr. Li, whether those studies provide

25  rigorous and consistent statistical evidence on

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1    the benefit of quality of life and well-being

2    for gender-affirming surgery?

3                    MS. NOWLIN-SOHL:  Object to form.

4                    THE WITNESS:  So, yes, I am, sir,

5    because I'm offering an opinion as to what -- that

6    Dr. Li mischaracterizes what constitutes rigorous

7    and consistent, and because her broad category is

8    inappropriately characterized in terms of making

9    medical decisions, that opinion has implications

10   for her characterization of the individual

11   studies.

12         Q.   So, you're making -- so, you are

13   offering an opinion about whether these

14   specific studies provide rigorous and

15   consistent statistical evidence without having

16   reviewed all of the studies, with the exception

17   of three?

18                    MS. NOWLIN-SOHL:  Object to form.

19   Mischaracterizes prior testimony.

20                    THE WITNESS:  So the predominant

21   opinion that I am offering is that, again, that

22   Dr. Li's criteria for rigorous and consistent is

23   an inappropriate criteria.

24         Q.   Let me ask this question.  Are you

25   offering any opinions about these studies and

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 68

1    whether these studies provide rigorous and

2    statistical support for quality of life and

3    well-being of gender-affirming surgery, these

4    specific studies?

5              MS. NOWLIN-SOHL:  Object to form.

6    Asked and answered.

7              THE WITNESS:  So, Dr. Li's report

8    characterizes the methodology of the studies that

9    she cites, including the studies being, some

10   studies being prospective observational studies

11   with before and after comparisons and other

12   studies being cross-sectional studies.  And I am

13   offering an opinion that those types of study

14   designs offer sufficient evidence for the safety

15   and efficacy of medical treatments.

16        Q.   So, is that a no, that you're not

17   offering an opinion about whether these

18   specific studies provide rigorous and

19   consistent support for benefits of quality of

20   life and well-being for gender-affirming

21   surgery?

22             MS. NOWLIN-SOHL:  Object to form.

23   Asked and answered.  Argumentative.

24             THE WITNESS:  Can you restate your

25   question, sir?

Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 20 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1          Q.    So, I think I understand what

2     you're saying, that you're saying that you are

3     providing an opinion about the nature, the type

4     of studies that can lend support.  Is that what

5     you're saying?

6               MS. NOWLIN-SOHL:  Object to form.

7          Q.    The characterization of the

8     studies is what you're testifying about and

9     that the cross-sectional and longitudinal

10    observational studies can provide support for

11    procedures?

12              MS. NOWLIN-SOHL:  Object to form.

13    Mischaracterizes prior testimony.

14              THE WITNESS:  So, my report describes

15    that clinical practice guidelines are ideally

16    based on systematic reviews of the literature, and

17    systematic reviews of the literature characterize

18    the quality of the evidence, and that systematic

19    reviews then make recommendations, particular

20    treatment recommendations and characterize the

21    strength of the recommendations, and that those

22    recommendations can be based on what is referred

23    to as, in terms of art, as high, moderate, low or

24    very low quality evidence.

25              The studies that Dr. Li cites include

Defs' Reply Ex. 3
Armand H. Antommaria , M.D., Ph. D.        September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 70

1    observational studies which can provide and
2    potentially do provide justification for
3    gender-affirming surgical care.  And so, as to the
4    best as I understand your question, the answer is
5    no.  I am offering opinions about the adequacy of
6    the studies which are cited in Dr. Li's report to
7    support gender-affirming surgical care.
8         Q.   So, you're offering an opinion
9    about the adequacy of the studies cited in Dr.
10   Li's report without having reviewed the
11   majority of those studies?
12        A.   So, there is sufficient
13   information about those studies contained in
14   Dr. Li's report, with trusting that Dr. Li
15   characterized those studies accurately, and I
16   had no reason in reviewing her report to
17   believe that she characterized them
18   inaccurately in terms of their methodology and
19   results, that there is sufficient information
20   in the report to believe that they provide
21   sufficient evidence to support gender-affirming
22   surgical care.
23        Q.   Okay.  So, you are -- I'm just
24   trying to make sure I understand.  So, you're
25   saying that you are offering an opinion about

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 22 of 31

Page 71

1    whether the specific studies referenced in Dr.

2    Li's report provide rigorous and consistent

3    statistical evidence on the benefit of the

4    quality of life and well-being of

5    gender-affirming surgery without having

6    reviewed the vast majority of those studies?

7                 MS. NOWLIN-SOHL:  Object to form.

8    Asked and answered.  Argumentative.

9                 THE WITNESS:  So, sir, your question,

10   as best I understand it, has multiple subparts.

11   Again, I -- my -- it is my opinion that Dr. Li's

12   characterization about what constitutes rigorous

13   and consistent evidence is inaccurate.

14          Q.   And that's based on your review --

15   it's not based on your review of the studies.

16   So what is that based on?

17                 MS. NOWLIN-SOHL:  Object to form.

18                 THE WITNESS:  So, again, in my report

19   I reference the literature relevant to the

20   development of clinical practice guidelines and

21   treatment recommendations, including the GRADE

22   recommendations.

23                 THE COURT REPORTER:  The what

24   recommendations?

25                 THE WITNESS:  G-R-A-D-E, all

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 72

1    capitalized.

2         Q.   Does your report contain any

3    information about whether any of these studies

4    provide support for the assertions for which --

5    to which they're referenced?  I understand

6    you're talking about clinical practice

7    guidelines and treatment recommendations.

8         A.   So --

9              MS. NOWLIN-SOHL:  Object to form.

10             THE WITNESS:  So, in part, Dr. Li's

11   report analyzes the support for the WPATH

12   standards of care, which is a clinical practice

13   guideline, as well as the endocrine society's, and

14   she doesn't specifically mention, but in addition

15   to the endocrine society's clinical practice

16   guideline, which references a comparable body of

17   literature.  So, yes, her report does address

18   clinical practice guidelines and the evidence used

19   to support the recommendations made therein.

20        Q.   With respect to the specific

21   assertions that are quoted in her report or in

22   general?

23             MS. NOWLIN-SOHL:  Object to form.

24             THE WITNESS:  I'm sorry, sir.  I

25   don't understand.

Veritext Legal Solutions
800.743.DEPO (3376)      calendar-carolinas@veritext.com      www.veritext.com
Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 24 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1          Q.    I'll move on.  Well, as an
2     example, let's look at page 23, Ettner
3     Assertion 11.
4          A.    One moment, sir.
5               (Brief pause.)
6               THE WITNESS:  Okay.
7          Q.    Does your report address whether
8     that particular study supports the assertion
9     that is referenced or that it -- does it
10    support the assertion that is used as a
11    reference?
12               MS. NOWLIN-SOHL:  Object to form.
13               THE WITNESS:  So, sir, I do not
14    currently have an opinion whether Brown and
15    McDuffie assert what Li characterizes as Ettner
16    Assertion 11.
17          Q.    Do you have an opinion about
18    whether Weinforth, 2019, supports the assertion
19    that's quoted in Dr. Li's report, same page?
20          A.    Can you restate your question,
21    sir?
22          Q.    Do you have an opinion about
23    whether Weinforth supports the assertion -- Dr.
24    Ettner's Assertion 12?
25          A.    Yes, sir.

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 25 of 31

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 74

1          Q.   Is that opinion stated in your

2     report?

3          A.   So, for example, Dr. Li, on page

4     24, states the other nine studies are all of

5     low quality.  And so, in my report I clarify

6     that a low quality is a -- is potentially a

7     term of art that is used in the GRADE approach

8     to characterize one of the four levels of

9     evidence.  It is not clear to me how Dr. Li is

10    using that term, and it appears that she may be

11    using it in a nontechnical sense.  But to the

12    extent that Dr. Li states at the end of the

13    paragraph, I determined that this reference

14    fails to provide rigorous and consistent

15    statistical evidence supporting the benefits of

16    what she refers to as surgical reassignment,

17    sexual reassignment surgery, I do offer an

18    opinion that that conclusion is erroneous.

19         Q.   But you didn't review the nine

20    studies?

21              MS. NOWLIN-SOHL:  Objection.

22    Argumentative.

23              THE WITNESS:  So, sir, my reviewing

24    the nine studies isn't necessary to reach the

25    opinion that I stated.

Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 26 of 31

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 75

1          Q.   But that's a no, you didn't review
2     the nine studies?
3               MS. NOWLIN-SOHL:  Same objection.
4               THE WITNESS:  I believe that we --
5     that I previously testified that I did not, sir.
6          Q.   And you didn't speak with Dr.
7     Ettner?
8               MS. NOWLIN-SOHL:  Object to form.
9               THE WITNESS:  Again, I have
10    previously testified that I did not speak with Dr.
11    Ettner.
12         Q.   So, if you didn't speak with Dr.
13    Ettner, you don't know what she would have
14    considered to be low, medium, very low, or high
15    quality studies, do you?
16              MS. NOWLIN-SOHL:  Object to form.
17    Argumentative.
18              THE WITNESS:  So, my prior testimony
19    was not about what Dr. Ettner characterized as low
20    quality but what Dr. Li meant by low quality, as
21    the characterization of the studies is not, to the
22    best of my knowledge, Dr. Ettner's but Dr. Li's.
23    And I think that there are grounds in her report
24    to particularly her lack of reference to what she
25    means by low to suggest that she's not using it in

Armand H. Antommaria , M.D., Ph. D.                September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1      the technical sense used by the GRADE approach.

2              Q.    Right.  So, my -- I started this

3      question by, this whole round of questioning by

4      asking you whether Weinforth, whether you had

5      an opinion about whether Weinforth supported

6      Dr. Ettner's assertion which is quoted in Dr.

7      Li's report.  And I think I heard you say,

8      essentially, yes, you do have an opinion about

9      that.  Is that correct?

10             A.    Yes, sir.

11             Q.    And is your opinion that Weinforth

12     does support the assertion of Dr. Ettner?

13             A.    My primary opinion is that Dr.

14     Li's determination that Weinforth does not

15     support Ettner's assertion is erroneous.

16             Q.    Okay.  And that's based on not

17     having reviewed Weinforth, nor spoken with Li,

18     nor spoken with Ettner, to determine what they

19     mean by low quality or high quality or medium

20     quality?

21                   MS. NOWLIN-SOHL:  Object to form.

22     Argumentative.  Asked and answered.

23                   THE WITNESS:  I don't understand any

24     of the components that you just listed as

25     necessary in order to adequately base my

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 28 of 31

Defs' Reply Ex. 3

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 77

1    conclusion that Dr. Li's claim that I determined

2    that this reference fails to provide rigorous and

3    consistent statistical evidence supporting the

4    benefits of SRS as accurate.

5              Q.    But you didn't read those studies?

6              MS. NOWLIN-SOHL:   Object to form.

7    Asked and answered.   Argumentative.

8              THE WITNESS:   I believe that I

9    already answered that question, sir.

10             Q.    And that was a no, that you

11   didn't?

12             MS. NOWLIN-SOHL:   Same objections.

13             THE WITNESS:   So, in preparing my

14   report I did not read Weinforth.   Dr. Li's report

15   provides sufficient information about the content

16   of Weinforth in order for me to draw my

17   conclusion.

18             Q.    Are you offering any opinions

19   about Dr. Li's characterization of the study

20   designs, the outcomes, or the other attributes

21   of the studies that she references in her

22   report?

23             MS. NOWLIN-SOHL:   Object to form.

24             THE WITNESS:   I have -- in reviewing

25   Dr. Li's report and several of the individual

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

Page 78

1    studies, I have no reason to question that the

2    factual information contained in her appendix B is

3    inaccurate, with the exception of I do think that

4    several of her references are incorrect, such as

5    the years are incorrect, but that her description

6    of the study design, the patient population, and

7    the primary outcomes are generally accurate, or I

8    have no reason to question them.

9          Q.   Okay.  And you -- in your report

10   you agree, or at least you write that there are

11   few randomized clinical trials of

12   gender-affirming medical care, and the body of

13   evidence is currently appropriately

14   characterized as, quote, low or very low

15   quality.  Does that sound like something that

16   you would have written in your report?

17               MS. NOWLIN-SOHL:  Object to form.

18   Can we see where that's being quoted from?

19               MR. RODRIGUEZ:  Let him answer the

20   question first.

21               THE WITNESS:  So, yes, sir, that

22   sounds like a part of my conclusion in my report.

23          Q.   And Dr. Li refers to many of these

24   studies as low quality, as you just pointed

25   out.  Correct?

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 3:22-cv-00191-MOC-DCK  Document 71-3  Filed 10/26/23  Page 30 of 31

Armand H. Antommaria , M.D., Ph. D.          September 7, 2023
Zayre-Brown, Kanautica Vs. North Carolina Department Of Public Safety, Et Al.

1          A.   It appears that Dr. Li refers to

2   them as being low quality in a colloquial sense

3   and not necessarily in the technical sense in

4   which I'm using the term.

5          Q.   Okay.

6               MR. RODRIGUEZ:  All right.  So, this

7   is for the witness.  Oh, whoops.  I wrote on

8   yours.  Here we go.

9               (Thereupon, Exhibit 7, Expert

10  Rebuttal Report of Armand H. Matheny Antommaria,

11  MD, PhD, in the Zayre-Brown v. The North Carolina

12  Department of Public Safety, et al., Case, was

13  marked for identification.)

14  BY MR. RODRIGUEZ:

15         Q.   If you look at paragraph 18, which

16  it starts on page six, the second sentence

17  there -- oh.  I'll wait.  Sorry.

18         A.   I'm sorry.  I don't want to step

19  out of my scope, but did you want to introduce

20  the exhibit?

21         Q.   Oh.  Sure.  Do you recognize this

22  document?

23         A.   Yes, sir.

24         Q.   And this is a copy of your report.

25  Correct?