IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:22-cv-191

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, et al.,<br><br>Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT** |

### Introduction

Pursuant to the Court's order, DE-108, Defendants hereby respond to Plaintiff's renewed motion for summary judgment, DE-102. The record evidence, including the evidence submitted at the February 20, 2024, evidentiary hearing, establishes that, to the extent the Court declines to grant summary judgment to Defendants, Plaintiff is not entitled to judgment as a matter of law at this stage on her claims.

Defendants have separately renewed their own motion for summary judgment and filed a brief in support of that motion. (DE 109-110) Due to space limitations, and in order to avoid needless repetition, Defendants respectfully rely upon that brief – and all prior summary judgment and expert-related briefing – in opposition to Plaintiff's renewed motion. (DE 60, 61, 65, 65, 69, 86, 87, 88 & all exhibits) Thus, this response only addresses specific points newly raised by Plaintiff's renewed motion. Defendants do not intend to waive any issues or arguments previously made.

**I. Plaintiff Cannot Establish As A Matter of Law That Defendants Violated An Applicable WPATH Standard.**

On the first issue, Plaintiff attempts to argue that Defendants have not properly applied the

WPATH standards in determining medical necessity. (DE 103 at 10-12) But her expert's testimony made clear that WPATH does not dictate medical necessity here. WPATH itself has no medical necessity standard and merely references that of the American Medical Association ("AMA"). And while the AMA provides some general principles, it does not speak to whether gender affirming surgery was medically necessary for Plaintiff's individual circumstances. That requires analysis and consideration of individualized factors—which is exactly what Defendants did. (*See* DE 111 at 3-8) Thus, Defendants did not misapply anything in WPATH by considering Plaintiff's condition and level of symptoms in their analysis. Plaintiff can point to nothing in WPATH that answers the medical necessity question, and a disagreement over Defendants' application of medical necessity principles is insufficient to support a deliberate indifference claim and thus precludes summary judgment for Plaintiff.

### A. Plaintiff Cannot Show That WPATH (And the AMA) Definitively Establish Medical Necessity Here, As WPATH (And the AMA) Plainly Require Individualized Application Of General Medical Necessity Principles.

As explained in Defendants' brief in support of their renewed motion for summary judgment (*see* DE 100), Plaintiff's expert, Dr. Ettner conceded that "[m]eeting [WPATH] criteria does not mean that surgery is medically necessary for an individual." (DE 104-7 at 106:20-107:1) Dr. Ettner further acknowledged, as she must, that the WPATH does not provide its own standard for determining medical necessity. Instead, WPATH references the AMA's definition of the phrase. (DE-104-7 at 109:3-110:8) That, in turn, only provides generalized factors to consider, contemplates an individualized review, and does not answer the question of whether surgery is necessary for Plaintiff. (DE 111 at 1-3)

### B. Plaintiff Cannot Establish Through Undisputed Evidence That Defendants Misapplied WPATH.

Unable to point to a medical necessity standard requiring the surgery in WPATH, Plaintiff

Page **2** of **10**

Case 3:22-cv-00191-MOC-DCK    Document 112    Filed 03/21/24    Page 2 of 10

claims that Defendants set an incorrect standard of requiring "extreme," "severe," and "debilitating" gender dysphoria before approving surgery and that this is contrary to WPATH. (DE 103 at 10-11) But Plaintiff points to nothing in WPATH (or the AMA guidance) that precludes Defendants from considering individualized circumstances such as the severity of a person's symptoms and how well controlled those symptoms are with current treatments. Nor would such a standard make any sense in medicine, where an individualized risk-benefit analysis reasonably contemplates those very factors, which is in line with the general guidance provided in the AMA definition. (DE 104-7 at 54:4-14; DE-104-3 at 18-19)

Regardless, Plaintiff mischaracterizes Defendants' testimony. Drs. Peiper, Sheitman, and Campbell explained that Plaintiff's condition did not reflect significant (such as "severe" and "debilitating") symptoms and they considered this in determining that surgery was not medically necessary for her at the time of the determination. (DE-104-7 at 13:22-14:3, 19:21-25, 47:12-25, 48:17-22) They also testified that they would approve surgery in cases where a patient's dysphoria was not stable or well controlled. (DE-104-7 at 60:21-25, 18:17-19:8) Thus, contrary to Plaintiff's assertion, Drs. Peiper, Sheitman, and Campbell used the terms "severe" or "debilitating" in an illustrative manner (along with other descriptors) to explain their decision, describe the clear case where surgery would likely be necessary, and rebut the claim of a blanket ban—not to create a definitive standard. Indeed, Dr. Sheitman specifically testified that this was not the standard when Plaintiff's counsel tried to characterize it as one – saying that he looks for the persistence of symptoms. (*See* DE 104-7 at 100:21-22)

Each of Defendants' witnesses confirmed they would review each case individually and consider the specific patient's circumstances. (*See* DE 111 at 3-9) And as set forth in Defendants' renewed summary judgment brief, the testimony reaffirmed that Plaintiff's distress appeared

situational and well controlled. (*See* DE 111 at 5-7) More specifically, Dr. Peiper concluded that while "there were moments of crisis, moments of instability[,] [o]verall[,]" Plaintiff was generally stable, "[a]nd any of the mental health symptoms appeared reasonably well-controlled." (DE 104-7 at 13:22-14:3) Similarly, Dr. Campbell noted that Plaintiff experienced "episodic periods" of "distress," which "seemed to be often situational and generally short-lived without any severe implications." (DE 104-7 at 47:12-17) However, Dr. Campbell's overall assessment was that Plaintiff "was psychiatrically and emotionally stable and actually had very good indications of adapting well." (DE 104-7 at 47:18-25) Likewise, Dr. Sheitman concluded that Plaintiff was doing relatively well, and that she appeared to be energetic, forward-thinking, and not depressed. (DE 104-7 at 78:18-80:8)

All of this testimony confirms that Defendants performed a nuanced and detailed individualized analysis. Their analysis squarely fits the AMA's medical necessity standard – they "exercise[d] prudent clinical judgment" to determine which services they would approve for a patient for purposes of treating an illness or its symptoms. (*See* DE-104-3 at 18-19) Accordingly, Plaintiff cannot demonstrate that Defendants misapplied any applicable standard.

### C. Plaintiff's Disagreement With The Outcome Of The Department's Medical Necessity Analysis Cannot Support Her Deliberate Indifference Claim.

Plaintiff claims she should prevail because Dr. Ettner (who is not a physician) would apply the AMA standard to determine that surgery is medically necessary for Plaintiff. (*See* DE 103 at 5-6) Plaintiff also seeks to rely on the declarations of undisclosed experts – including the surgeon who would perform the surgery (Dr. Figler) and his colleague at UNC-Chapel Hill (Dr. Caraccio) – on this point.[1] (DE 103 at 6) On the other hand, Defendants have offered testimony from Drs.

---

[1] Regarding Dr. Caraccio, Dr. Figler, and Ms. Dula, Defendants have prepared a motion in limine to exclude portions of their testimony for failure to meet expert disclosure requirements under Rule 26(a)(2) and for exceeding the permissible scope of testimony for a treating provider.

Campbell, Peiper, and Sheitman, as well as expert opinion testimony from Dr. Penn, that surgery is not medically necessary here. (*See* DE 111 at 5-10; DE 65-13) As set forth in Defendants' prior briefing, a reasonable disagreement on medical necessity warrants summary judgment for Defendants and precludes summary judgment for Plaintiff. (*See, e.g.,* DE 60 at 23-25; DE 64 at 17-22; DE 69 at 3-9)

Plaintiff criticizes Defendants for not offering expert testimony at the hearing. (DE 103 at 6) However, Defendants had limited time available to address the two issues raised by the Court and did not understand the Court to be asking for a presentation of Defendants' expert evidence on medical necessity. Regardless, Dr. Penn's opinions on that issue have been presented to the Court, and he would testify to those opinions if given the opportunity to testify. (DE 65-13 at 8-9, 18-36)

## II. Plaintiff Received Individualized Consideration.

Plaintiff cannot credibly claim that the Department denied her request for surgery because of a blanket ban. Indeed, her earlier summary judgment briefing recognized that her claim is not framed "in terms of . . . a 'blanket ban[,]'" but instead is "based exclusively on her individual medical needs." (DE-66 at 21) It is clear from the record, including the testimony from the February 20, 2024, hearing that the Department's decision not to approve the request was the result of careful individualized consideration and not the product of some shadow blanket ban.

Plaintiff makes three arguments to the contrary. First, Plaintiff contends that the record shows that "Defendants have imposed a *de facto* ban on gender-affirming surgery." (DE-103 at 12) Second, Plaintiff claims that Drs. Peiper and Sheitman merely deferred to Dr. Campbell on the question of medical necessity. (DE-103 at 13) Lastly, Plaintiff argues that the record shows "Plaintiff did not receive meaningful, individualized consideration." (DE-103 at 13) These arguments fail as they are not supported by the record evidence.

### A. The Department Has Never Had A Blanket Ban.

To support the contention that the Department had a blanket ban, Plaintiff argues that "Dr. Campbell *twice* wrote why he thinks gender-affirming surgery is never medically necessary for anyone." (DE-103 at 12) This argument fails for two reasons. First, neither the position statement, nor the case summary, state that gender-affirming surgery is never medically necessary for anyone. (*See* DE 104-6, 104-4) Second, Plaintiff does not meaningfully address Dr. Campbell's testimony to the contrary, both at the hearing and in his deposition, wherein he testified at length regarding the position statement and his views as to the medical necessity of gender-affirming surgery.

While Dr. Campbell acknowledged that the position statement contains seemingly strong language, he also testified that he never intended to suggest that surgery could never be medically necessary. (DE-104-7 at 54:23-55:2) In fact, Dr. Campbell testified that the next level intervention, including surgery, could be necessary for a patient with symptoms, such as sleep or appetite disturbances, perseveration, hypo or hyper energy levels, suicidal ideation, psychomotor agitation, and other factors, which impacted a critical area of functioning, and were not improved by current treatments. (*See* DE-104-7 at 55:6-57:3) Similarly, there are other conditions for which interventions that generally might not be considered medically necessary can become necessary given a patient's particular symptoms. (*See* DE-104-7 at 51:17-52:3) Dr. Campbell also testified that his concerns with the mixed evidence in the literature were not a bar to surgery in Plaintiff's case and did not make denial of a request for gender-affirming surgery a forgone conclusion. (DE-104-7 at 51:14-16, 52:4-7) Moreover, Dr. Campbell testified that this position statement was a rough draft that would have gone through further edits and revisions to clarify and modify various aspects. (DE-104-7 at 58:4-9)

Rather than addressing this testimony in a meaningful way, Plaintiff simply dismisses Dr.

Campbell and his testimony as not credible. (*See* DE-103 at 12-13) But Dr. Campbell appeared and testified before the Court in good faith, and Dr. Campbell's credibility is for the Court (and, potentially, a jury) to decide.

### B. Drs. Sheitman And Peiper Independently Determined That Surgery Was Not Necessary For Plaintiff.

In an attempt to avoid the reality that Drs. Peiper and Sheitman each independently determined that surgery was not medically necessary for Plaintiff, she tries to point back to Dr. Campbell in two ways. First, Plaintiff contends that Drs. Peiper and Sheitman both deferred to Dr. Campbell with respect to medical necessity. (*See* DE-103 at 13) Next, Plaintiff asserts that Drs. Peiper and Sheitman's determinations on necessity were based on Dr. Campbell's interpretation of the medical literature. (S*ee* DE-103 at 13) But neither of Plaintiff's contentions are supported by the record.

As noted in Defendants' renewed motion for summary judgment, Drs. Peiper, Sheitman, and Campbell each conducted their own review of records and reached conclusions about Plaintiff's symptoms and the need for surgery independently. (*See* DE-110 at 4-7) In fact, Drs. Peiper and Sheitman specifically testified that they did not defer to Dr. Campbell in reaching their conclusions regarding Plaintiff's mental health. (DE-104-7 at 14:13-16, 80:20-81:3)

Similarly, Plaintiff's assertion that Drs. Sheitman and Peiper's determinations regarding medical necessity were based on Dr. Campbell's interpretation of the medical literature is flatly refuted by the record. Again, as articulated in Defendants' renewed motion for summary judgment, the DTARC's assessment of the medical literature was not the driving factor of the denial of surgery. (*See* DE-110 at 7-9) Specifically, Dr. Peiper testified that the discussion of the medical literature did not impact his assessment of the state of Plaintiff's mental health. (DE-104-7 at 15:7-10) Dr. Sheitman (who did his own literature review and did not merely rely on Dr. Campbell),

similarly testified that given a particular patient's presentation, he would have recommended surgery as medically necessary—regardless of the medical literature. (DE-104-7 at 81:13-83:20) And, as already noted above, Dr. Campbell testified that his concerns with the literature were not a bar to surgery in Plaintiff's case. (DE-104-7 at 51:14-16, 52:4-7)

### C. Plaintiff Received Individualized Consideration by the DTARC.

Plaintiff's final assertion on this point is that the record shows that she did not receive "meaningful, individualized consideration." (DE-103 at 13) Defendants have addressed how the DTARC's consideration was individualized for Plaintiff in their renewed summary judgment brief. (*See* DE 111 at 5-7)

Moreover, Plaintiff argues that the case summary contained "zero" individualized consideration. This is patently false. Dr. Peiper specifically testified that the DTARC documented its review process and its conclusion in three documents, including the case summary. (*See* DE-104-7 at 15:11-16:4; Defs.' Hr'g Exs. 5-7) In fact, Dr. Peiper specifically noted the portions of these documents wherein the DTARC makes reference to its assessment of Plaintiff's mental health. (*See* DE-104-7 at 16:5-18:10) The fact that the summary also contains references to the medical literature does not eliminate this factor or negate Dr. Campbell, Dr. Peiper, and Dr. Sheitman's testimony.

In short, Plaintiff's contentions that the Department had a blanket ban, that Drs. Peiper and Sheitman deferred to Dr. Campbell, and that she did not receive an individualized assessment (*see* DE-103 at 12-13), are all unsupported by the record. Thus, this Court should deny her renewed motion for summary judgment.

### III. Plaintiff's ADA & *Corum* Claims Lack Merit.

Defendants have fully addressed these two claims in previous filings. (*See* DE-60 at 30-35,

DE-64 at 33-35, DE-69 at 15-16) To the extent the Court believes that Plaintiff can succeed on her ADA claim by establishing deliberate indifference or that she lacked an adequate state remedy in the Industrial Commission and may succeed on a *Corum* claim, Defendants respectfully disagree and nonetheless assert that such claims fail for the reasons previously stated. These claims also fail for the same reasons Plaintiff's Eighth Amendment deliberate indifference claim fails as a matter of law.

IV. **Permanent Injunction**

For the reasons stated herein, and as argued in other briefing, Plaintiff has not shown entitlement to a permanent injunction, particularly at this juncture. Notably, a ruling in favor of Plaintiff on summary judgment and an order imposing a permanent injunction, without a trial or full evidentiary hearing, would be an outlier in light of the high standard for establishing Eighth Amendment deliberate indifference claims. Moreover, while the Fourth Circuit has not endorsed the procedure in *Edmo,* the current posture of this case is procedurally different than in *Edmo* in any event. In that case, the parties each had eight hours to present testimony (sixteen hours total) and did so over the course of three days and with notice from the district court that the hearing was on a motion for a final injunction. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 775 (9th Cir. 2019) By contrast, at the Court's direction the parties here presented evidence at the February 20 hearing limited to two specific issues raised in the order denying the parties' cross motions for summary judgment. That hearing was limited to three hours total. In short, the current posture of this case does not track with the procedure followed in *Edmo*.[2]

---

[2] If the Court grants injunctive relief prior to a jury trial, Defendants would be entitled to appeal any injunction before a jury trial on damages could proceed. *See FTC v. Yu Lin*, 66 F.4th 164, 166 (4th Cir. 2023) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (overruled by statute on other grounds) (noting that the Supreme Court held that "a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.")

## Conclusion

For the foregoing reasons, Defendants respectfully request that Plaintiff's renewed motion for summary judgment be denied.

Respectfully submitted, this the 21st day of March 2024.

                **JOSHUA H. STEIN**
                **Attorney General**

                /s/ Orlando L. Rodriguez
                Orlando L. Rodriguez
                Special Deputy Attorney General
                NC Bar No. 43167
                orodriguez@ncdoj.gov

                Stephanie A. Brennan
                Special Deputy Attorney General
                NC Bar No. 35955
                sbrennan@ncdoj.gov

                NC Department of Justice
                PO Box 629
                Raleigh, NC 27602-0629
                (919)716-6900

                ***Attorneys for Defendant***