IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN, <br><br> Plaintiff, <br><br> v. <br><br> THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*, <br><br> Defendants. | No. 3:22-cv-00191-MOC-DCK |

**PLAINTIFF'S REPLY IN SUPPORT OF HER RENEWED MOTION FOR SUMMARY JUDGMENT**

### I. Defendants Did Not Credibly Apply the WPATH Standards.

Defendants argue that the WPATH Standards do not provide a standard for determining medical necessity. (Doc. 112 at 2.) Not so. Dr. Ettner gave uncontradicted testimony that the WPATH Standards reference the AMA definition of medical necessity, which is the generally accepted standard in medicine. (Hearing Tr. 110:5-8, 111:1-4.) Dr. Ettner addressed every element of the AMA definition and concluded that gender-affirming surgery is medically necessary for Plaintiff. (*Id.* 111:14-112:12.) Conversely, Defendants did not engage with the WPATH Standards or the AMA definition when refusing Plaintiff surgery. Indeed, Dr. Campbell's medical analysis criticizes WPATH and rejects it as unreliable. (Doc. 104-4 at 2-3; Tr. 71:6-9.)

Instead, Defendants have created a bar that is both too high and constantly shifting. (Doc. 103 at 10-12.) Defendants now claim they used the terms "severe" and "debilitating" not to set a standard, but merely "in an illustrative manner . . . to

1

explain their decision[.]" (Doc. 112 at 3.) That assertion is hard to take seriously. Defendants did not testify to it, and even if true, Defendants do not say what else their standard might be. While Dr. Sheitman expressed the need for "persistent dysphoria" (Tr. 100:21-22), Defendants concede Plaintiff has had this since she entered custody in 2017.

Defendants point to Dr. Campbell's testimony on symptoms that could indicate the need for surgery, "such as sleep or appetite disturbances, perseveration, hypo or hyper energy levels, suicidal ideation, psychomotor agitation, and other factors, which impacted a critical area of functioning, and were not improved by current treatments." (Doc. 112 at 6.) But Dr. Campbell, who is not an expert and has no training or experience in evaluating patients for gender affirming surgery (Tr. 64:3-9), fails to cite any authority for these requirements, explain how they relate to gender dysphoria, or describe how many of these symptoms must be present. Of note, despite highlighting suicidal ideation as one such symptom, Dr. Campbell does not explain why Plaintiff's own history of suicidal ideation is insufficient.[1] And Dr. Campbell ultimately conceded that his medical analysis did not discuss Plaintiff's specific circumstances.[2] (Tr. 72:16-73:5.)

Moreover, it is important to keep in mind that the WPATH Standards

---

[1] The Court's Order found that "Plaintiff's medical records 'document her history of distress, anxiety, hopelessness, self-harm, and suicidal ideation.'" (Doc. 92 at 9)
[2] Defendants dispute that "Drs. Peiper and Sheitman both deferred to Dr. Campbell with respect to medical necessity." (Doc. 112 at 7.) But the Court already found as an undisputed fact that "Sheitman and Peiper . . . deferred to Dr. Campbell with respect to medical necessity." (Doc. 92 at 5.)

2

Case 3:22-cv-00191-MOC-DCK    Document 113    Filed 03/26/24    Page 2 of 7

explain their decision[.]" (Doc. 112 at 3.) That assertion is hard to take seriously. Defendants did not testify to it, and even if true, Defendants do not say what else their standard might be. While Dr. Sheitman expressed the need for "persistent dysphoria" (Tr. 100:21-22), Defendants concede Plaintiff has had this since she entered custody in 2017.

Defendants point to Dr. Campbell's testimony on symptoms that could indicate the need for surgery, "such as sleep or appetite disturbances, perseveration, hypo or hyper energy levels, suicidal ideation, psychomotor agitation, and other factors, which impacted a critical area of functioning, and were not improved by current treatments." (Doc. 112 at 6.) But Dr. Campbell, who is not an expert and has no training or experience in evaluating patients for gender affirming surgery (Tr. 64:3-9), fails to cite any authority for these requirements, explain how they relate to gender dysphoria, or describe how many of these symptoms must be present. Of note, despite highlighting suicidal ideation as one such symptom, Dr. Campbell does not explain why Plaintiff's own history of suicidal ideation is insufficient.[1] And Dr. Campbell ultimately conceded that his medical analysis did not discuss Plaintiff's specific circumstances.[2] (Tr. 72:16-73:5.)

Moreover, it is important to keep in mind that the WPATH Standards

---

[1] The Court's Order found that "Plaintiff's medical records 'document her history of distress, anxiety, hopelessness, self-harm, and suicidal ideation.'" (Doc. 92 at 9)
[2] Defendants dispute that "Drs. Peiper and Sheitman both deferred to Dr. Campbell with respect to medical necessity." (Doc. 112 at 7.) But the Court already found as an undisputed fact that "Sheitman and Peiper . . . deferred to Dr. Campbell with respect to medical necessity." (Doc. 92 at 5.)

absolutely do not require a patient to suffer extreme or debilitating symptoms. (*Id.* 113:10-115:8.) Defendants' unprincipled departure from the prevailing standard of care violates the Eighth Amendment here just as it did in *Edmo*. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 794 (9th Cir. 2019). 935 F.3d at 796 n.19 ("[P]rison officials render unacceptable care by following the views of outliers without offering a credible medical basis for deviating from the accepted view.").

Dr. Campbell's testimony is also inconsistent with his own test for medical necessity provided earlier in this case: "(1) an individualized risk benefit analysis; (2) any standard of care; and (3) evidence-based medicine." (Doc. 60 at 13-14. (citation omitted).) Defendants testified that Plaintiff faces no heightened risks from surgery and that Plaintiff would likely benefit from surgery. (Tr. 32:1-37:5, 71:25-72:15.) The WPATH Standards are relied upon by doctors in North Carolina and around the world as the relevant standard of care, and they show that surgery is necessary given Plaintiff's individual needs. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 595-96 (4th Cir. 2020); (Doc. 62-2 at 14.)

Finally, Defendants note they have "prepared" a motion in limine to exclude the testimony of Plaintiff's treating providers at UNC as undisclosed experts. (Doc. 112 at 4 n.1.) That motion would be untimely. Defendants failed to raise this issue in the first round of summary judgment briefing or at the evidentiary hearing. They still haven't filed anything. And even if timely, the motion would fail because those providers are critical fact witnesses whose testimony is exempt from Rule 26's expert requirements. *See Morris v. Bland*, 666 Fed. Appx. 233, 239 (4th Cir. 2016).

3

## II. The Evidence Demonstrates a *De Facto* Surgery Ban.

Though the evidence shows a blanket ban on gender-affirming surgery, Plaintiff's Eighth Amendment claim does not require such a finding. Nonetheless, her ADA claims also attack Defendants' overall practice for considering and, to date, denying, all requests for gender-affirming surgery. (*See* Doc. 63 at 33-35 (arguing that because Plaintiff "sought treatment for gender dysphoria disability, her process was prolonged, her consideration was cursory, and her denial was all-but preordained").

Defendants' arguments to the contrary are not persuasive. (*See id.* at 12-13.) Plaintiff agrees with Defendants that the Court must assess Dr. Campbell's credibility. In doing so, the Court should consider how Dr. Campbell's testimony conflicts with the documentary evidence in this case and strays from the established standards of care. *See Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985) ("Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it."); *Edmo*, 935 F.3d at 788 n.16 (accepted standards of care "establish a useful starting point for analyzing the credibility" of witnesses' testimony). Given the history laid out through his writings and communications (*see* Doc. 103 at 6-7), Dr. Campbell's post-hoc reversal lacks credibility.

Finally, Defendants insist that they gave individualized consideration because they looked at Plaintiff's medical records. But because of Defendants' improperly high standard, and because they ignored Plaintiff's treating providers' conclusions and wrongly discounted her severe and persistent dysphoria (Doc. 104-7 at 89:6-94:19), that review was a sham.

### III. Permanent Injunctive Relief Is Appropriate.

Defendants argue that the Court should not issue a permanent injunction "without a trial or full evidentiary hearing." (Doc. 112 at 9.) But Defendants have no right to a jury trial on Plaintiff's injunctive relief claims. (*See* Doc. 68 at 2 n.1.) Accordingly, this Court can make credibility determinations on those claims. *See id.; Porter v. Clarke,* 290 F. Supp. 3d 518, 531 n.10 (E.D. Va. 2018) (granting plaintiffs summary judgment on Eighth Amendment claim after weighing the "competing experts' opinions" in a way that "would be left to the Court" at a bench trial), *aff'd*, 923 F.3d 348 (4th Cir. 2019).

Defendants also argue that this case is an outlier because the evidentiary hearing was shorter than in *Edmo*. (Doc. 112 at 9.) But here, where many essential facts were undisputed and even Defendants' own expert psychologist conceded the need for surgery (Doc. 68 at 6-7), the Court found only two limited fact disputes. And, as in *Edmo*, Defendants waived any objection to the process by participating in the hearing without objection. 935 F.3d at 802-03 (defendants waived objection when it "vigorously participated in the evidentiary hearing without ever raising the right to a jury trial"). What's more, ordering the provision of gender-affirming surgery without a full trial is no outlier, as Defendants suggest. *See Edmo* 935 F.3d at 802; *Clark v. Quiros*, No. 3:19-cv-00575-VLB, 2023 WL 6050160, at *27-29 (D. Conn. Sept. 15, 2023) (summary judgment); *Iglesias v. Fed. Bureau of Prisons*, No. 19-CV-415-NJR, 2021 WL 6112790, at *27 (S.D. Ill. Dec. 27, 2021) (preliminary injunction).

Accordingly, Plaintiff's motion should be granted.

5

Respectfully submitted, this 26th day of March, 2024.

/s/ Jaclyn A. Maffetore
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com


Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*


*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on March 26, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*