UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-191-MOC-DCK

| KANAUTICA ZAYRE-BROWN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| PUBLIC SAFETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on the parties' renewed motions for summary judgment. (Doc. Nos. 102, 110).

The question presented by this case is whether North Carolina's process for assessing the medical necessity of gender-affirming surgery for inmates suffering from gender dysphoria violates the Eighth Amendment of the United States Constitution. North Carolina recognizes that gender dysphoria is a serious mental disorder. North Carolina also recognizes that gender-affirming surgery may sometimes be medically necessary to treat gender dysphoria. Thus, where a gender dysphoric prisoner requests gender-affirming surgery, the State must afford their request unbiased and individualized consideration. North Carolina failed to do so here.

**I.    Background**

Plaintiff, diagnosed with gender dysphoria ("GD") in 2010, is a prisoner in the custody of the North Carolina Department of Public Safety ("DPS"). The North Carolina Department of Adult Corrections ("DAC") subjects inmates' surgical requests to a "utilization review process" that evaluates whether the requested procedure is medically necessary. Under the DAC's Evaluation and Management of Transgender Offenders ("EMTO") policy, a specialized body

1

(the Division Transgender Accommodation Review Committee or "DTARC") reviews transgender inmates' medical requests. Thus, when inmates suffering from GD request treatment from the DAC, the DTARC serves as the utilization review authority with power to approve or deny requested treatment. The DTARC reviewed and denied Plaintiff's request for gender-affirming surgery to treat GD.

Dr. Arthur Campbell is a DTARC member and Chief Medical Officer of the DAC. He is one of only two medical doctors on the DTARC. Members of the DTARC without medical training deferred to Dr. Campbell's analysis of Plaintiff's medical records. There is evidence that even DTARC members with medical training deferred to Dr. Campbell's assessment of whether gender-affirming surgery was medically necessary in Plaintiff's case.

Before the DTARC reviewed Plaintiff's surgical request, Dr. Campbell authored a document titled "DTARC Medical Necessity Position Statement on Gender Reassignment Surgery." In the position statement, Dr. Campbell asserted that gender-affirming surgery is <u>never</u> medically necessary to treat GD. Further, Dr. Campbell requested the Committee adopt this view, which is in conflict with the State's position. The DTARC ultimately declined to adopt Dr. Campbell's position paper, but only <u>after</u> denying Plaintiff's surgical request.

In April 2022, after the DTARC denied Plaintiff's request for gender-affirming surgery, Plaintiff sued. Plaintiff alleges violations of the United States and North Carolina Constitutions and the Americans with Disabilities Act ("ADA"). In November 2023, the Court heard argument on the parties' cross motions for summary judgment. The Court denied both motions without prejudice in light of two genuine disputes of material fact. (Doc. No. 92). Rather than proceed directly to trial, the Court held an evidentiary hearing on those two questions, after which the Court permitted the parties to renew their summary judgment motions. (<u>Id.</u>).

The evidentiary hearing occurred on February 20, 2024. The parties renewed their summary judgment motions shortly thereafter. (Doc. Nos. 102, 110). Those motions are fully briefed, and this matter is now ripe for disposition.

**II.     Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material only if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The movant for summary judgment has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). If the movant satisfies this burden, the burden shifts to the non-movant. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 538 n.3. The non-movant may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment but must instead present evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 324; Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

Ruling on a summary judgment motion, the Court must view the evidence and any inferences therefrom in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Faced with cross-motions for summary judgment, the Court evaluates each motion separately on its own merits using the standard set forth above. See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003); accord Local 2-1971 of Pace Int'l Union v. Cooper, 364 F. Supp. 2d 546, 554 (W.D.N.C. 2005).

**III.     Discussion**

The Eighth Amendment requires that prison administrators give "individualized medical evaluation" to prisoners' requests for treatment. See Allard v. Gomez, 9 F. App'x 793, 785 (9th Cir. 2001); Fields v. Smith, 653 F.3d 550 (7th Cir. 2011); Keohane v. Fl. Dep't of Corr. Sec'y, 952 F.3d. 1257, 1266–67 (11th Cir. 2020)); Nosworthy v. Beard, 87 F. Supp. 3d 1164, 1191 (N.D. Cal. 2015). Thus, a categorical denial of a particular course of medically necessary treatment violates the Eighth Amendment. Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014); Gordon v. Schilling, 937 F.3d 348, 360–62 (4th Cir. 2019). Such a blanket ban is unconstitutional even if it is not explicit: "The majority of Courts hold that a blanket policy (or de facto ban) . . . which does not allow for the consideration of an inmate's particular medical needs, could violate the Eighth Amendment." Fisher v. Federal Bureau of Prisons, 484 F. Supp. 3d 521, 543 (N.D. Ohio 2020) (citing Kosilek v. Spencer, 774 F.3d 63, 91 (1st Cir. 2014); Fields, 653 F.3d at 550, 552, 556; Rosati v. Igbinoso, 791 F.3d 1037, 1040 (9th Cir. 2015); Keohane v. Fl. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266–67 (11th Cir. 2020)).

Plaintiff's Eighth Amendment claim boils down to a single question: is Dr. Campbell's testimony credible? Because Defendants are not entitled to trial by jury on Plaintiff's request for

4

equitable relief under the Eighth Amendment, the Court is authorized to assess Dr. Campbell's credibility at the summary judgment stage.

At the February 2024 evidentiary hearing before this Court, Dr. Campbell testified that, despite authoring a position paper to the contrary, the DTARC would under certain circumstances approve gender-affirming surgery as medically necessary for an inmate suffering from gender dysphoria. He gave no examples of what he might consider a medical necessity. Despite receiving more than thirty such requests, the DTARC has <u>never</u> approved gender-affirming surgery as medically necessary to treat gender dysphoria. Dr. Campbell has impressive qualifications and has served this country admirably for several decades. But considering Dr. Campbell's authorship of the position statement, other DTARC members' deference to his medical judgment, and the DTARC's track record of denying dysphoric prisoners' requests for gender-affirming surgery, the Court cannot credit Dr. Campbell's testimony.

A judge sharing Dr. Campbell's views would be expected to recuse themselves from this case. A juror holding those same views would be excused for cause. Even taking the evidence in the light most favorable to the Defendants, no reasonable factfinder could conclude that Defendants afforded Plaintiff's surgical request the "individualized medical evaluation" our Constitution requires. <u>Allard</u>, 9 F. App'x at 785; <u>Schilling</u>, 937 F.3d at 360–62.

The Court's decision remains value neutral as to Dr. Campbell's apparent views. This case is about process, not substance. While this case involves a transgender prisoner, it is not a case about transgender issues. It is certainly not a case about whether states should or should not be required to pay for transgender healthcare. Instead, this case is about whether states can permit prison officials' personal views to determine the medical care available to prisoners.

The Court will award injunctive relief on Plaintiff's Eighth Amendment claim. To be entitled to injunctive relief, Plaintiff must show (1) actual success on the merits; (2) irreparable injury; (3) the inadequacy of legal remedies; (4) that the "balance of hardships" favors injunction; and (5) that injunction would not disserve the public interest. See Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Plaintiff satisfies all five factors. The Court finds that Defendants' review of Plaintiff's accommodation request violated Plaintiff's Eighth Amendment rights insofar as Defendants denied Plaintiff the individualized medical evaluation the Eighth Amendment requires. And a violation of constitutional rights "constitutes irreparable harm for purposes of equitable jurisdiction." Ross v. Meese, 818 F.2d 1132, 1135 (4th Cir. 1987). Legal remedies are inadequate where, as here, the constitutional violation is ongoing. And the balance of the equities favors Plaintiff because a state is not harmed by injunctive relief preventing the state from acting unconstitutionally. Leaders of a Beautiful Struggle v. Baltimore Police Dep't, 2 F.4th 330, 346 (4th Cir. 2021). Finally, injunctive relief vindicating a party's constitutional rights is clearly in the public interest. Legend Night Club v. Miller, 637 F.3d 291, 303 (4th Cir. 2011).

The Court offers Defendants a choice between two means of remedying their Eighth Amendment violation. Defendants may either (1) give Plaintiff the surgery that Plaintiff's experts contend remains medically necessary; or (2) within 30 days from entry of this order form a new committee, subject to this Court's approval, to re-assess Plaintiff's accommodation request, that committee to contain at least two medical doctors with gender dysphoria expertise.

The Court makes no finding as to medical necessity. The Court finds only that the process by which Defendants assessed medical necessity was flawed. The Court will not, because of this finding, uncritically credit Plaintiff's medical necessity argument. At this stage,

taking the evidence in the light most favorable to either party, a reasonable jury could find for either party on the question of medical necessity.

If Defendants accommodate Plaintiff's surgical request, Plaintiff's Eighth Amendment claim will be moot. While Plaintiff's ADA and Corum claims may remain viable, Defendants are entitled to trial by jury on those damages claims. Thus, if Defendants accommodate Plaintiff's surgical request, and Plaintiff's ADA and Corum claims proceed to trial, then the question of medical necessity will be put to the jury.

If Defendants instead form a new committee to re-evaluate Plaintiff's surgical request, and that committee finds the surgery medically unnecessary, the Court will re-review Defendants' medical necessity determination on Plaintiff's motion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' renewed summary judgment motion (Doc. No. 110) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's renewed summary judgment motion (Doc. No. 102) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's motion is **DENIED** with respect to Plaintiff's ADA and Corum claims. Plaintiff's renewed summary judgment motion is further **DENIED** insofar as the Court declines to adopt Plaintiff's medical necessity argument. Plaintiff's motion is **GRANTED** insofar as the Court finds that Defendants' accommodation review process violated Plaintiff's Eighth Amendment rights.

## INJUNCTION

Upon their receipt of actual notice of this Order, DPS is hereby **ENJOINED** to, within 30 days, either

(1) Notify the Court of DPS' intention to accommodate Plaintiff's surgical request; or

7

Case 3:22-cv-00191-MOC-DCK   Document 116   Filed 04/16/24   Page 7 of 8

(2) Form a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this Court for approval.

**SO ORDERED**.

Signed: April 16, 2024

Max O. Cogburn Jr.
United States District Judge