UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-191-MOC-DCK

| | |
|---|---|
| **KANAUTICA ZAYRE-BROWN**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| **NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS, ET AL.**, | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendants' motion to stay. (Doc. No. 118). Plaintiff responded in opposition, and Defendants replied. (Doc. Nos. 122, 123). The Court will deny Defendants' motion.

### I. Background

Earlier this year, the Court denied without prejudice the parties' first cross motions for summary judgment. (Doc. No. 92). Thereafter, the Court set an evidentiary hearing limited to two questions. (Id. at 14). Following that hearing, the Court permitted both sides to renew their summary judgment motions. (Doc. Nos. 92, 108). The Court granted Plaintiff's renewed summary judgment motion in part and denied Defendants' renewed motion in its entirety. (Doc. No. 116). Specifically, the Court denied summary judgment with respect to Plaintiff's ADA and Corum claims but granted partial summary judgment on Plaintiff's Eighth Amendment claim. (Id.). Consequently, the Court entered a mandatory injunction requiring Defendants "to, within 30 days, either (1) Notify the Court of DPS' intention to accommodate Plaintiff's surgical request; or (2) Form a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this

1

Court for approval." (Id. at 7–8).

Rather than comply with the Court's injunction, Defendants appealed to the Fourth Circuit under 28 U.S.C. § 1292(a)(1). Pending resolution of their appeal, Defendants seek to stay proceedings in this Court. Plaintiff consents to the stay of her ADA and Corum claims but opposes Defendants' effort to stay the Court's injunction granting relief on Plaintiff's Eighth Amendment claim. Defendants have apparently taken no steps to comply with the Court's injunction.

## II. Legal Standard

Federal Rule of Civil Procedure 62(d) permits—but does not require—a court to stay enforcement of an injunction where the interlocutory order granting that injunction has been appealed. FED. R. CIV. P. 62(d). A Rule 62(d) stay "'is not a matter of right, even if irreparable injury might otherwise result.'" Nken v. Holder, 556 U.S. 418, 433–34 (2009) (quoting Virginian Ry. Co. v. U.S., 272 U.S. 658, 672 (1926)). Instead, staying enforcement of an injunction pending its appeal constitutes "an extraordinary remedy." Kadel v. Folwell, No. 1:19CV272, 2022 WL 11166311, at *1 (M.D.N.C. Oct. 19, 2022) (quoting Does 1-5 v. Cooper, No. 13CV711, 2016 WL 10587195, at *1 (M.D.N.C. Mar. 2, 2016)).

Thus, to grant or deny a Rule 62(d) injunction the Court must exercise its "judicial discretion." Virginian Ry. Co., 272 U.S. at 672; United States v. Texas, 144 S. Ct. 797, 798 (2024). "The propriety of [such stay's] issue is dependent upon the circumstances of the particular case." Virginian Ry. Co., 272 U.S. at 672–73; see Hilton v. Braunskill, 481 U.S. 770, 777 (1987) ("[T]he traditional stay factors contemplate individualized judgments in each case"). The legal principles guiding the Court's discretion "have been distilled into consideration of four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

2

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' Hilton, [481 U.S. at 776.] There is substantial overlap between these and the factors governing preliminary injunctions, see Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 [(2008)]." Nken, 556 U.S. at 434. "The first two factors . . . are the most critical. It is not enough that the chance of success on the merits be 'better than negligible.' Sofinet v. INS, 188 F.3d 703, 707 (C.A.7 1999) (internal quotation marks omitted). . . . By the same token, simply showing some 'possibility of irreparable injury,' Abbassi v. INS, 143 F.3d 513, 514 (C.A.9 1998), fails to satisfy the second factor." Nken, 556 U.S. at 434–35.

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken v. Holder, 556 U.S. 418, 433–34 (2009).

### III. Discussion

#### a. Jurisdictional Questions

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (emphasis added); see Coinbase, Inc. v. Bielski, 599 U.S. 736, 740 (2023) (quoting same). Defendants contend that their appeal "implicates all aspects of the case" and thus that "this Court lacks jurisdiction . . . to proceed with or enforce the injunction." (Doc. No. 119 at 3). That is wrong.

First, Defendants contend that their appeal of the injunction (which Defendants continue to defy) implicates the entire case because if Defendants voluntarily provide the surgery Plaintiff seeks, they "would lose the right to prevail on the merits of their appeal in a meaningful way." (Doc. No. 119 at 5). But even accepting Defendants' premise, Defendants have already indicated that they plan to pursue the second option afforded by the injunction—that is, to form a new

3

committee and re-assess Plaintiff's surgical request. See (Doc. No. 118). Therefore, Defendants' contention that their appeal implicates the entire case because it would require Defendants to provide the surgery Plaintiff requests is meritless.

Defendants next contend that their appeal implicates the entire case because "proceeding with option two [constituting a new committee to re-assess Plaintiff's request] would fundamentally alter the factual record underlying Plaintiff's claims." (Doc. No. 119 at 5). Specifically, Defendants contend that "if forced to move forward with injunctive relief now, Defendants will lose their ability to have the decision they made, and the Court's deliberate indifference finding in this context, meaningfully reviewed on appeal." (Id.). But this argument, like Defendants' first, relies on a non-sequitur. It is simply untrue that constituting a new committee "would create a new record . . . and eliminate Defendants' ability to rely on the evidence underlying the DTARC's determination." (Id. at 7). Instead, constituting a new committee would merely supplement the existing record. As Plaintiff notes, Defendants have already stated—and rigorously defended—their justification for denying Plaintiff's surgical request. (Doc. No. 122 at 7). Requiring them to do so for a second time—as the Court will—does not preclude Defendants from defending their original conclusion on appeal.

Third, Defendants contend that this Court would be without jurisdiction to approve a new committee or review its decision while Defendants' appeal remains pending. (Doc. No. 123 at 2). But Defendants conflate enforcing the injunction with expanding it. While the Court surely lacks jurisdiction to expand the injunction pending its appeal, the Court "does retain jurisdiction to enforce" it. Springs v. Ally Fin. Inc., 657 F. App'x 148, 151 (4th Cir. 2016) (quoting City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380, 394 (6th Cir. 2007)); see also Nat'l Grange v. California State Grange, 182 F. Supp. 1065, 1074 (E.D. Cal. 2016) (citing

4

Sekaquaptewa v. MacDonald, 544 F.2d 396, 406 (9th Cir. 1976)); Greater Potater Harborplace, Inc. v. Jenkins, 935 F.2d 267 (4th Cir. 1991) ("[A] court can enforce a judgment but, while the appeal is pending, it can take no action that expands the judgment or otherwise alters it."). That Defendants aim to improperly stay enforcement of the injunction—in contrast to an appropriate stay of its expansion—is clear from Defendants' pleadings. For example, Defendants' motion to stay "respectfully request[s] that the Court stay . . . the effect of the injunction[] pending resolution of the appeal." (Doc. No. 118 at 1).

Defendants contend that the Court's injunction "cannot be used to require surgery without further motion, judicial proceedings, new findings, and an expanded order." (Doc. No. 123 at 4). Perhaps. But that is not the issue before the Court. Instead, the issue is whether requiring Defendants to assemble a new committee and meaningfully review Plaintiff's surgical request constitutes impermissible expansion of the injunction under appeal. It does not. For that reason, the Court finds that it retains jurisdiction to enforce its injunction during the pendency of Defendants' appeal.

### b. The Nken Factors

In the alternative to their jurisdictional argument (i.e., that the Court must stay the injunction), Defendants contend that the Court should stay these proceedings on a discretionary basis. Defendant's motion thus requires the Court to consider the four Nken factors. United States v. Texas, 144 S. Ct. 797, 798 (2024). Those four factors are (1) the stay applicant's likelihood of success on the merits; (2) the probability the applicant will be irreparably injured absent stay; (3) whether a stay would substantially injure other interested parties; and (4) the public interest. Nken, 556 U.S. at 434; see also Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970). Of these four factors, the applicant's likelihood of success on appeal and the probability of irreparable injury

5

absent stay are most important. Id. at 434–35. But a mere chance of success on appeal is insufficient to justify a stay. Nken, 556 U.S. at 434–35 (quoting Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999)) ("It is not enough that the chance of success on the merits be 'better than negligible.'"). Likewise, the possibility of irreparable injury does not satisfy the second Nken factor. Nken, 556 U.S. at 434–35 (quoting Abbassi v. INS, 143 F.3d 513, 514 (9th Cir. 1998)).

It bears noting that—as the Supreme Court recognized in Nken—the factors this Court considers in assessing a motion to stay share "substantial overlap" with the factors this Court considered in granting Plaintiff's injunction. See Nken, 556 U.S. at 434 (citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008)).

### i. Likelihood of Success on the Merits

Defendant-Appellants claim they "will likely prevail on the merits of the appeal." (Doc. No. 119 at 8). It should come as no surprise that this Court—which ordered the injunctive relief Defendants now appeal—disagrees.

Defendants argue the Court's injunction is likely to be vacated by the Fourth Circuit because the Court made no medical necessity findings. (Doc. No. 119 at 8–9). Defendants are correct that Court eschewed the question of medical necessity. Instead, the Court found that Plaintiff satisfied the "actual success on the merits" prong of the injunction test by showing that Defendants violated Plaintiff's Eighth Amendment freedom from cruel and unusual punishment by denying her "the individualized medical evaluation that the Eighth Amendment requires." (Doc. No. 116 at 6) (citing Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); Ross v. Meese, 818 F.2d 1132, 1135 (4th Cir. 1987)).

In essence, Defendants argue that because the Court did not find that they denied

6

"medically necessary" care, Defendants cannot have violated the Eighth Amendment. Not so. Of course, denying inmates medically necessary healthcare does violate the Eighth Amendment. But it does not follow that denial of medically necessary healthcare is the only way Defendants could fall afoul of the deliberate indifference standard. Instead, correctional authorities also violate the Eighth Amendment where they fail to conduct a meaningful assessment of medical necessity but deny potentially necessary healthcare anyways. See Edmo v. Corizon, Inc., 935 F.3d 757, 800 n.22 (9th Cir. 2019). This is a second, distinct, theory of Eighth Amendment violation, and the one the Court found Defendants liable for here.

It is settled law that a de facto ban precluding "consideration of an inmate's particular medical needs" violates the Eighth Amendment. Fisher v. Federal Bureau of Prisons, 484 F. Supp. 3d 521, 543 (N.D. Ohio 2020) (citing Kosilek v. Spencer, 774 F.3d 63, 91 (1st Cir. 2014); Fields, 653 F.3d at 550, 552, 556; Rosati v. Igbinoso, 791 F.3d 1037, 1040 (9th Cir. 2015); Keohane v. Fl. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266–67 (11th Cir. 2020)). This Court found that Defendants maintained a de facto ban on gender-affirming surgery, and therefore refused to consider Plaintiff's individual medical needs—i.e., whether gender-affirming surgery was medically necessary for her specifically—in denying her surgical request. Defendants' categorical denial of a particular course of potentially medically necessary treatment violated the Eighth Amendment. See (Doc. No. 116 at 4) (citing Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014); Gordon v. Schilling, 937 F.3d 348, 360–62 (4th Cir. 2019)).

Defendants' administration of a de facto ban on gender-affirming surgery left this Court without a credible record of Defendants' rationale for concluding that such surgery was not medically necessary for this Plaintiff on these facts. The Court was, in effect, left without a medical necessity finding to review. Rather than uncritically credit Plaintiff's medical necessity claim, the

7

Court instead required Defendants to reconsider (in truth, meaningfully consider for the first time) whether gender-affirming surgery is medically necessary for this particular inmate. The Court's injunction merely requires Defendants to satisfy their Eighth Amendment duty. Thus, the Court concludes, Defendants are unlikely to prevail on the merits of their appeal.

The first Nken factor thus counsels against staying these proceedings.

### ii. Probability of Harm to Defendants Absent Stay

Defendants contend that absent stay they would suffer

> the risk of inconsistent rulings; the loss of the ability to have the decision they made, and the Court's deliberate indifference finding in this context, meaningfully reviewed on appeal; and the inability to challenge Plaintiff's remaining claims on medical necessity grounds, despite that issue being at the heart of all the claims.

(Doc. No. 119 at 8). Defendants further claim that "[t]he bulk of these harms would be irreparable." (Id.).

This argument is a version of Defendants' contention—rejected supra—that constituting a new committee to re-assess Plaintiff's surgical request "would fundamentally alter the factual record underlying Plaintiff's claims" such that "Defendants will lose their ability to have the decision they made, and the Court's deliberate indifference finding in this context, meaningfully reviewed on appeal." (Doc. No. 119 at 5). The Court rejects this argument for the same reason as before: convening a new committee would only supplement the existing record and would not prevent Defendants from defending the first committee's conclusion before the Fourth Circuit. In any case, Defendants retain the ability to secure meaningful appellate review (including on medical necessity grounds) of a hypothetical subsequent injunction ordering Defendants to provide gender-affirming surgery, including by moving to stay that second judgment on both jurisdictional (expansion of already-appealed injunction) and discretionary grounds.

Finally, neither the potential costs of re-constituting the DTARC, Long v. Robinson, 432 F.2d 977, 980 (4th Cir. 1970) (quoting Va. Petroleum Jobbers Ass'n v. Federal Power Commission, 259 F.2d 921, 925 (D.C. Cir. 1958)), nor the Court's "distort[ion] of Defendants' decision-making process," Kadel v. Folwell, 1:19CV272, 2022 WL 11166311, at *5 (M.D.N.C. Oct. 19, 2022), constitute irreparable harm sufficient to justify a stay. The second Nken factor thus favors denying Defendants' motion.

### iii. Potential Injury to Plaintiff

Defendants next argue that a stay would not substantially injure Plaintiff because "a stay merely maintains the status quo wherein the relief she seeks would only follow from success on the merits of her legal claims." (Doc. No. 119 at 8). But Defendants do not—and cannot—show that without a stay, Plaintiff would receive the relief she seeks absent success on the merits of her legal claims. First, the Court's injunction was predicated on Plaintiff's showing of actual success on the merits of her Eighth Amendment claim. Second, the Court's injunction does not require Defendants to provide Plaintiff the relief she seeks, but only to assemble a new tribunal capable of fairly assessing whether gender-affirming surgery is medically necessary in Plaintiff's case. Thus, whether Plaintiff will receive gender-affirming surgery continues to depend on the merits of her legal claim.

Further, Plaintiff convincingly shows that the balance of the harms favors denying Defendants' motion to stay. Applying the Winter test, which shares "substantial overlap" with the Nken factors, this Court's order granting Plaintiff equitable relief concluded that "the balance of the equities favors Plaintiff because a state is not harmed by injunctive relief preventing the state from acting unconstitutionally." (Doc. No. 116 at 6) (citing Leaders of a Beautiful Struggle v. Baltimore Police Dep't, 2 F.4th 330, 346 (4th Cir. 2021)). The Court finds no reason to abandon

9

that conclusion here. The balance of harms thus favors denying Defendants' motion to stay.

Finally, the Court notes that Plaintiff's projected release date is November 4, 2024. If the Court were to stay these proceedings, and Plaintiff were released before the Fourth Circuit rules on Defendants' appeal, the stay would effectively moot the injunctive relief to which Plaintiff is entitled. Insofar as a stay would allow Defendants to "run out the clock" on this Court's injunction, the stay creates a high probability of serious injury to Plaintiff. For this reason, as well, the balance of harms counsels against granting Defendants' motion.

### iv. The Public Interest

Defendants first contend that the public interest favors staying these proceedings because "the public has an interest in ensuring the efficient use of taxpayer dollars." (Doc. No. 119 at 9). To comply with this Court's injunction, Defendants suggest they "will need to spend tens of thousands of dollars to hire new committee members to re-evaluate Plaintiff's request," funds that would be "wasted" if Defendants prevail on appeal. (Id.).

First, the Court reiterates that Defendants are unlikely to prevail on appeal. Consequently, funds expended to comply with this Court's injunction by re-evaluating Plaintiff's surgical request are unlikely to be "wasted." Second, the Court notes that any "[in]efficient use of taxpayer dollars" (Doc. No. 119 at 9) is chargeable to Defendants themselves: it was Defendants who maintained a de facto policy refusing to provide gender-affirming surgery, a "sham process where the answer is always no." (Doc. No. 92 at 14). Third, Courts routinely hold that fiscal responsibility does not outweigh the public interest in protecting Constitutional rights or preserving public health. See Pashby v. Delia, 709 F.3d 307, 331 (4th Cir. 2013); Legend Night Club v. Miller, 637 F.3d 291, 303 (4th Cir. 2011); Leaders of a Beautiful Struggle, 2 F.4th at 346.

Next, Defendants suggest that a stay is justified because the public interest is served by

"having novel legal claims fully reviewed and considered through available appellate processes." (Doc. No. 119 at 9). More specifically, Defendants contend that the Court should stay these proceedings because "[t]he appeal may provide significant guidance on how to proceed with this case, including on the determination of medical necessity." (Id. at 6). Maybe so. But, as Plaintiff notes, the legal grounds on which this Court found in favor of Plaintiff's Eighth Amendment claim are not especially novel. It is well-established that a "blanket, categorical denial of medically indicated surgery . . . is the paradigm of deliberate indifference" prohibited by the Eighth Amendment. Colwell v. Bannister, 763 F.3d 1060, 1063 (9th Cir. 2014); see Gordon v. Schilling, 937 F.3d 348 (4th Cir. 2019). The truly novel aspect of Plaintiff's claim is that gender-affirming surgery is medically necessary on these facts. Even if the Circuit concludes that Plaintiff's medical necessity argument fails—an issue not directly presented by Defendants' appeal, since the Court's injunction does not rely on a medical necessity finding—this Court's finding that Defendants violated Plaintiff's Eighth Amendment rights by failing to individually consider her surgical request could still stand.

## IV. Conclusion

For the foregoing reasons, the Court finds that it retains jurisdiction to enforce the injunction while it remains on appeal, and that the factors articulated by the Fourth Circuit and Supreme Court do not favor Defendants' motion to stay. Defendants "bear[] the burden of showing that the circumstances justify" a stay. Defendants have failed to carry that burden here, so their motion will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' motion to stay, (Doc. No. 118), is hereby **DENIED**. Defendants remain free to move for a stay before the Fourth Circuit under

11

Case 3:22-cv-00191-MOC-DCK   Document 126   Filed 07/12/24   Page 11 of 12

FED. R. APP. P. 8(a)(2).

**IT IS, FURTHER, ORDERED** that Defendants **SHALL**, within 14 days of this Order's entry, form a new committee containing at least two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request, and submit a roster of the reconstituted committee to this Court for approval.

**SO ORDERED**.

Signed: July 12, 2024

Max O. Cogburn Jr
United States District Judge