FILED: July 25, 2024

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 24-6477
(3:22-cv-00191-MOC-DCK)
_____

KANAUTICA ZAYRE-BROWN

      Plaintiff - Appellee

v.

NORTH CAROLINA DEPARTMENT OF ADULT CORRECTIONS; TODD E. ISHEE, in his official capacity as Secretary of the North Carolina Department of Adult Correction; GARY JUNKER, in his official capacity as Deputy Secretary of the North Carolina Department of Adult Correction; ARTHUR CAMPBELL, in his official capacity as Medical Director III, the North Carolina Department of Adult Correction; BRANDESHAWN HARRIS, in her official capacity as Chief Deputy Secretary, the North Carolina Department of Adult Correction; TERRI CATLETT, in her official capacity as Director of Healthcare Administration, Division of Prisons, the North Carolina Department of Public Safety; JONATHAN PEIPER, in his official capacity as Human Services Director the North Carolina Department of Adult Correction; BRIAN SHEITMAN, Medical Director III, the North Carolina Department of Adult Correction; VALERIE LANGLEY, in her official capacity as Nurse Director the North Carolina Department of Adult Correction; ABHAY AGARWAL, Medical Director II, the North Carolina Department of Adult Correction; SARAH COBB, in her official capacity as Director of Rehabilitative Services, Division of Prisons, the North Carolina Department of Adult Correction; JOSH PANTER, in his official capacity as Correctional Administrator the North Carolina Department of Adult Correction; CHARLOTTE WILLIAMS, in her official capacity as a Program Manager, the North Carolina Department of Adult Correction; ELTON AMOS, in his official

capacity as Medical Director II, the North Carolina Department of Adult Correction

        Defendants - Appellants

_____

ORDER

_____

Upon consideration of the submissions relative to appellants' motion to stay the proceeding in the district court and for a temporary administrative stay, the court denies the motion to stay the proceeding.

Judge Gregory and Judge Thacker voted to deny the motion. Judge Rushing voted to grant the motion.

        For the Court

        /s/ Nwamaka Anowi, Clerk

RUSHING, Circuit Judge, dissenting:

The North Carolina Department of Adult Correction denied a transgender inmate's request for sex-change surgery—here, a vulvoplasty[1]—after the Department's Transgender Accommodation Review Committee determined that surgery was not medically necessary. The inmate sued the Department, alleging that it had violated the Eighth Amendment's ban on cruel and unusual punishment by denying the inmate "medically necessary" care. Dist. Ct. Dkt. ECF 1, at 2, 38 (Complaint). Without making any finding about the likely medical necessity of this surgery, the district court—disturbed by one of the committee doctor's views on the medical efficacy of transgender surgery—imposed a mandatory preliminary injunction on the Department. *Zayre-Brown v. N.C. Dep't of Pub. Safety* (*Zayre-Brown II*), No. 3:22-CV-191-MOC-DCK, 2024 WL 1641795, at *3–4 (W.D.N.C. Apr. 16, 2024).

That injunction requires the Department—by this Friday, July 26—either (1) to agree to perform the vulvoplasty the committee determined was medically unnecessary, or (2) to form a new committee of "gender dysphoria expert[s]," who must be approved by the district court for correct views on this medical issue and who will reevaluate the inmate's request. *Id.* at *4. The Department is appealing the preliminary injunction to our Court, arguing it should never have been imposed. In the interim, the Department asked our Court to stay the injunction pending appeal. That way, the Department is not forced to perform a medically unnecessary surgery (thereby mooting the Eighth Amendment claim)

---

[1] A "vulvoplasty," in the words of the inmate's expert witness, entails the "removal of the phallus and the creation of typical, female-appearing [outer] genitals" in its place. Dist. Ct. Dkt. ECF 101, at 112.

1

or to create a taxpayer-funded committee of gender-dysphoria experts selected by the district court who will redo the prison committee's work and reach a new conclusion—all before this Court has a chance to decide the lawfulness of the injunctive order in the first place.

But today, a panel of this Court denies a stay, so that by the time our Court resolves the Department's appeal, our decision won't matter. Indeed, the panel denies even a temporary administrative stay, which would have given this Court some time to consider whether to grant the stay pending appeal. The panel's decision cannot be reconciled with the governing legal standard.

First—most importantly and most obviously—the Department is "likely to succeed on the merits" of its appeal challenging this mandatory preliminary injunction. *Ohio v. EPA*, 144 S. Ct. 2040, 2052 (2024). The district court's errors leap off the page. To begin, the court made *no finding* that the inmate's requested surgery was medically necessary and yet concluded the Department violated the Eighth Amendment by denying it. Even the out-of-circuit case the district court relied upon makes this error clear: "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances"—*i.e.*, that the official denied "medically necessary" treatment—"and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786–792 (9th Cir. 2019) (per curiam) (internal quotation marks and brackets omitted); *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("[T]he essential test is one of medical necessity."). The district court expressly made "no finding as to medical necessity"

2

because "a reasonable jury could find for either party on the question of medical necessity." *Zayre-Brown II*, 2024 WL 1641795, at *4. When pressed, the district court doubled down, stating that "Defendants are correct that [the] Court eschewed the question of medical necessity." *Zayre-Brown v. N.C. Dep't of Adult Corr.* (*Zayre-Brown III*), No. 3:22-CV-191-MOC-DCK, 2024 WL 3404620, at *3 (W.D.N.C. July 12, 2024). Without finding a likelihood of success on the medical necessity question, the district court could not find "actual success on the merits" of the inmate's deliberate indifference claim, as the court purported to do. *Zayre-Brown* II, 2024 WL 1641795, at *3.

Nor did the district court find, as our deliberate indifference precedent requires, that committee members likely had "actual *subjective* knowledge of both the inmate's serious medical condition and the excessive risk posed by [their] action or inaction," *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (emphasis added), such that their decision was "so grossly incompetent, inadequate, or excessive as to shock the conscience," *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) (internal quotation marks omitted). Rather, the uncontradicted testimony in the record reflects that, after much evaluation, the committee determined that the inmate was benefiting from the current treatment (of hormone therapy, psychological counseling, and women's housing and personal items) and a vulvoplasty was not medically necessary to treat the inmate's current condition. The inmate's expert disagreed, but "a disagreement among reasonable medical professionals is not sufficient to

3

sustain a deliberate indifference claim," which requires *subjective* knowledge and disregard of an excessive risk to the inmate's health or safety.[2]  *Hixson*, 1 F.4th at 303.

Instead of following these legal requirements, the district court claimed the Department violated the Eighth Amendment in its "process, not substance." *Zayre-Brown II*, 2024 WL 1641795, at *3.  Without any determination that the Department denied the inmate adequate medical care, the district court apparently concluded that the Department's decisionmaking process itself was cruel and unusual punishment. *See id.* at *4 ("The Court finds only that the process by which Defendants assessed medical necessity was flawed. . . . Defendants' accommodation review process violated Plaintiff's Eighth Amendment rights.").  That is, to say the least, difficult to square with the Constitution.

---

[2] The district court relied on the World Professional Association for Transgender Health (WPATH) Standards. *Zayre-Brown v. N.C. Dep't of Pub. Safety* (*Zayre-Brown I*), No. 3:22-CV-191-MOC-DCK, 2024 WL 410243, at *5 (W.D.N.C. Feb. 2, 2024).  This Court has declined to "offer an opinion one way or the other" regarding the "the necessity of sex reassignment surgery" in connection with the "WPATH Standards of Care" for "Eighth Amendment deliberate-indifference" claims, noting that other circuits have rejected such medical necessity arguments. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 595 n.2 (4th Cir.), *as amended* (Aug. 28, 2020); *cf. De'lonta v. Johnson*, 708 F.3d 520, 522–523, 526 (4th Cir. 2013).  In any event, the WPATH Standards appear to be a red herring because they do not define medical necessity in this context.  The prison clinicians explained that the WPATH Standards are "absolutely used" in their surgical intervention evaluation process, but that WPATH does not provide an "operational definition for medical necessity that we, at the primary-care level as providers, can utilize." Dist. Ct. Dkt. ECF 101, at 61–62.  The inmate's expert witness, "one of the authors" of the WPATH Standards, testified to the same, explaining that "[m]eeting [the eligibility] criteria does not mean that surgery is medically necessary" and that the medical necessity determination must be "undertaken by a qualified mental-health professional" on a "case-by-case basis." Dist. Ct. Dkt. ECF 101, at 103, 106–107, 111.  So even if one accepted the district court's highly suspect decision to incorporate the WPATH Standards into the Eighth Amendment as the constitutional minima, *see Zayre-Brown I*, 2024 WL 410243, at *5–6, that would make no difference.  The WPATH Standards require "case-by-case" evaluations by mental health professionals.

4

*See Wilson v. Seiter*, 501 U.S. 294, 297 (1991) ("[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." (internal quotation marks and emphasis omitted)). And it is based on a clearly erroneous assessment of the record. The district court asserted that, despite its policies to the contrary, the Department has a de facto ban on transgender surgeries. But the uncontradicted evidence amply demonstrates that the inmate here received an individualized evaluation.[3] For all these reasons, the Department is likely to succeed on the merits of its appeal challenging the mandatory injunction.

Second, the Department will "suffer irreparable injury without a stay" and the "public interest lies" in granting one. *Ohio*, 144 S. Ct. at 2052; *see Nken v. Holder*, 556

---

[3] *See* Dist. Ct. Dkt. ECF 61, Ex. 27 (committee report detailing consideration of inmate's specific circumstances, even examining "recent progress notes from supportive counseling and therapy sessions"); Dist. Ct. Dkt. ECF 101, at 11–14, 22, 45–50, 55–60, 76–80, 83–84, 88–90 (uncontradicted testimony of three clinicians on the committee that the Department's individualized consideration policy is de jure and de facto and that they each conducted independent individualized reviews of the inmate's mental health); *see also Zayre-Brown I*, 2024 WL 410243, at *2 (describing how the committee consulted with the UNC Transgender Health Program and referred the inmate for evaluations by medical professionals in that program).

At bottom, the district court's analysis turned on the views of one committee member, who had expressed skepticism in a draft policy document about the medical necessity of sex-change surgery. *Zayre-Brown II*, 2024 WL 1641795, at *3. The district court was upset that the doctor's "personal views" on this medical subject might have affected the process and so ordered the process redone with right-thinking doctors. *Id.* But the Eighth Amendment prohibits deliberate indifference, not differing medical opinions about the efficacy of surgery. *See Hixson*, 1 F.4th at 303. The committee could have been biased, negligent, and even guilty of malpractice without violating the Eighth Amendment. *See Jackson*, 775 F.3d at 178 (4th Cir. 2014) (noting that deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference").

5

U.S. 418, 435 (2009) (explaining that these factors "merge" here). Intruding on the Department's prerogatives—whether by requiring it to provide potentially unnecessary sex-change surgery against the judgment of prison medical professionals or by requiring it to create a new committee whose members are to be vetted by the district court for correct views on transgender surgery—constitutes irreparable injury and is contrary to the public interest. *See O'Dell v. Netherland*, 112 F.3d 773, 777 (4th Cir. 1997) (staying injunction pending appeal and explaining "it is not for the federal courts to so micromanage the Nation's prisons"); *see also Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994) ("We immediately stayed the district court's order . . . of [mandatory] preliminary injunction," and explained it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." (internal quotation marks omitted)). In addition, the Department is unlikely to recoup the taxpayer-funded expenditures the district court is imposing, whether in paying for the surgery or for hiring the reconstituted panel. *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 218 (4th Cir. 2019) (holding that when "monetary damages will be unavailable to remedy financial losses when litigation ends, there is no bar to treating those losses as irreparable injury").

Finally, a stay pending appeal will not "substantially injure" the inmate. *Ohio*, 144 S. Ct. at 2052. There has not yet been a finding that this surgery is necessary for the inmate, much less urgently so; indeed, the injunction does not even require the Department to provide surgery, so long as it forms a reconstituted committee that satisfies the district court. Staying this "disfavored" form of injunction—one that grants relief before trial—

would simply return the parties to the status quo while we decide the appeal. *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024) (internal quotation marks omitted).

Consideration of these longstanding traditional factors requires a stay pending appeal. Yet the panel refuses to issue one. It refuses even though denying a stay means that, by the time our Court issues a decision on the lawfulness of the district court's order, our ruling will be of no effect. But perhaps that's the point.

I respectfully dissent.