IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN, <br><br> Plaintiff, <br><br> v. <br><br> THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*, <br><br> Defendants. | No. 3:22-cv-00191-MOC-DCK |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' PROPOSAL FOR COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION**

In response to the Court's permanent injunction, Defendants have proposed two candidates—Drs. Ingrid Renberg and Eugene Simopoulos—to reevaluate Plaintiff for gender-affirming surgery. (Doc. 128.) As discussed below, Defendants have not fully complied with the Court's order and do not appear to be taking their obligations in this matter seriously. Instead, they appear to be trying to "run out the clock" on this case to avoid the possibility of having to provide Plaintiff surgery.

Therefore, Plaintiff respectfully urges the Court to adjudicate whether Plaintiff has proven the medical necessity of surgery by a preponderance of the evidence. The Court has already received extensive briefing and held an evidentiary hearing on that issue. If any disputed issues of fact remain, the Court—which is the trier of fact on Plaintiff's Eighth Amendment claim seeking only equitable relief—can weigh the evidence, and only the Court may enter injunctive relief. (Doc. 116 at 4-5.) The

1

pending appeal before the Fourth Circuit concerns a different basis for liability—Defendants' *de facto* ban on surgery—that would not prevent this Court from addressing medical necessity and issuing a new injunction based on its findings. In sum, the issue is properly before the Court and ripe for determination.

If the Court permits Defendants to go forward with their proposed evaluators, Plaintiff respectfully submits the following objections:

*First*, Plaintiff objects to Renberg and Simopoulos's lack of demonstrated qualifications. The Court ordered Defendants to "[f]orm a new committee containing two medical doctors with gender dysphoria expertise to re-assess Plaintiff's accommodation request and submit a roster of the reconstituted committee to this Court for approval." (Doc. 116 at 8.) It is unclear from Defendants' filing whether Renberg and Simopoulos have the required "expertise", or if they are like Defendants themselves—prison officials who are generally familiar with gender dysphoria but who do not have specialized training or experience treating patients with that condition. It is also unclear whether either doctor has previously evaluated patients for gender-affirming surgery, and if they have, how often, what criteria they used, and if unlike Defendants, they have ever recommended surgery.

Defendants' counsel state that Renberg has performed such evaluations[1]—they do not state the same for Simopoulos (Doc. 128 at 2)—but the Court and Plaintiff

---

[1] Concerningly, independent research by Plaintiff's counsel has revealed that Dr. Renberg herself is being sued for allegedly violating the Eighth Amendment rights of a transgender prisoner by denying her request for gender-affirming surgery, and those claims have survived Dr. Renberg's motion to dismiss. *See Guthrie v. Noel*, 1:20-CV-02351, 2023 WL 8115928, *18-22 (M.D. Penn. Sept. 11, 2023).

2

have no way to evaluate that representation. Given Defendants' barebones filing, they likely could not carry their burden of qualifying these doctors as experts under Federal Rule of Evidence 702. *See Kadel v. Folwell*, 100 F.4th 122, 158 (4th Cir. 2024) (en banc) (affirming limitation of expert testimony on gender dysphoria "to the specific technical areas in which [the witnesses] had expertise"). They should not be treated as experts here.

To avoid protracted litigation on this issue, if the Court permits the evaluation to go forward, Plaintiff does not propose that Defendants receive even more time to find alternate candidates—they have already had over 100 days. But, if Defendants cannot timely propose different candidates who possess gender dysphoria expertise, Plaintiff lodges this objection now should the Court be required to later review the validity of Renburg and Simopoulos's evaluations.

*Second*, this Court ordered Defendants to "[f[orm a new committee . . . and submit *a roster of the reconstituted committee* to this Court for approval." (Doc. 126 at 12. (emphasis added)) But Defendants have not provided a full roster of the reconstituted committee and it is unclear whether Defendant Campbell will participate in this process. Plaintiff objects to any involvement by Defendant Campbell. As the Court found, he believes that gender-affirming surgery is never medically necessary for anyone, and "[a] judge sharing Dr. Campbell's views would be expected to recuse themselves from this case." (Doc. 116 at 5.) His continued involvement would inject bias into the process and not afford Plaintiff an objective evaluation.

3

*Third*, Plaintiff does not object to the proposed materials to be made available to Drs. Renberg and Simopoulos. (Doc. 128 at 3.) She asks, however, that they also be provided the declarations of Katherine Croft, Dr. Figler, Dr. Caraccio, and Jennifer Dula and the expert report of Dr. Randi Ettner a. (Docs. 62-2, 62-16, 62-17, 62-18, 62-19.) The issue here is whether surgery medically necessary *now*, not solely whether what the DTARC decided in February of 2022 was justified. *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

*Fourth*, Defendants' proposal seems to contemplate that the new committee would evaluate Plaintiff based only on "an independent record review," and without an actual evaluation of Plaintiff herself. Defendants themselves have argued that actual evaluations of Plaintiff were critical for their experts to opine on Plaintiff's medical needs. (*See* Doc. 38.) Plaintiff objects to any process that would not require Defendants' new committee members to meet with Plaintiff at least virtually.

*Fifth,* Defendants propose that "the record review and the committee meeting occur within 30 days of the entry of an order approving the new committee and that the consensus report or individual reports be submitted to Defendants' counsel within 45 days of the entry of an order approving the new committee." (Doc. 128 at 4.) Plaintiff shares the Court's concern that Defendants are trying to "run out the clock" on this case. (Doc. 126 at 10.) Therefore, Plaintiff proposes that Defendants have 21 days to conduct the evaluation, communicate their decision to the Court and Plaintiff's counsel, and provide all materials created for the evaluation process. Plaintiff understands that Defendants have busy schedules. But Plaintiff's constitutional interest in

4

obtaining timely, adequate medical care—along with Defendants' constitutional obligation to provide such care—is an overriding consideration.

In sum, because the candidates and procedure set forth by Defendants are inadequate and time is of the essence, Plaintiff asks the Court to proceed to adjudicating her medical necessity claim. If the Court declines to do so, Plaintiff proposes that the Court adopt the following process for her evaluation:

1. Defendants will provide a full list of their proposed committee members to the court immediately. The proposed committee will have 21 days to conduct their record review and evaluation of Plaintiff, confer, and communicate their decision to the Court and Plaintiff's counsel. Dr. Campbell must not participate in that process at all, formally or informally.

2. Defendants will make available to Drs. Renberg and Simopoulos and the rest of the proposed committee the following materials:

    a. The medical records found at Defendants' Exhibit 8 entered into evidence during the February 20, 2024, hearing.

    b. Plaintiff's entire health chart from her admission into the Department's custody in October 2017 through the present.

    c. The results of the psychometric assessments performed by Plaintiff's expert, Randi C. Ettner, Ph.D., and Defendants' expert, Sara Boyd, Ph.D.

    d. The declarations of Katherine Croft, Dr. Bradley Figler, Dr. Donald Caraccio, and Jennifer Dula. (Docs. 62-16, 62-17, 62-18, 62-19.)

    e. The expert report of Dr. Ettner. (Docs. 62-2.)

5

3. When Defendants communicate their decision, they will share all materials referenced or created for the evaluation process excluding any materials protected by attorney-client privilege.

4. Defendants' counsel will also provide declarations or affidavits from Drs. Simopoulos and Renberg attesting to how many times they have evaluated a patient with gender dysphoria for gender-affirming surgery; when those evaluations occurred; what criteria they used; and whether they recommended surgery.

5. If Defendants again refuse to provide surgery, Plaintiff requests that the Court consider a renewed motion on her medical necessity claim on an expedited basis.

Respectfully submitted this the 30th day of July, 2024.

/s/ *Jaclyn A. Maffetore*
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*

(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on July 30, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*
