IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN, <br><br> Plaintiff, <br><br> v. <br><br> THE NORTH CAROLINA DEPARTMENT OF ADULT CORRECTION, *et al.*, <br><br> Defendants. | No. 3:22-cv-00191-MOC-DCK |

**PLAINTIFF'S RENEWED PROPOSAL FOR
COMPLIANCE WITH THE COURT'S PERMANENT INJUNCTION**

In response to the Court's permanent injunction, Defendants proposed two candidates—Drs. Ingrid Renberg and Eugene Simopoulos—to reevaluate Plaintiff for gender-affirming surgery and set forth a proposal for the re-evaluation process. (Doc. 128.) Plaintiff filed a Response to Defendants' Proposal for Compliance with the Court's Permanent Injunction, lodging objections to Defendants' proposed reviewers and proposing revisions to the forecasted review process. On August 16, 2024, this Court held a hearing on Doc. 128, Defendants' Notice in Response to the Court's Injunction, and Doc. 129, Plaintiff's Response to Defendants' Proposal for Compliance with the Court's Permanent Injunction. The Court indicated that Defendants' proposed reviewers, Dr. Ingrid Renberg and Dr. Eugene Simopoulos, would be permitted to re-evaluate Plaintiff's need for gender-affirming surgery but invited the parties to

1

submit proposals regarding the process and materials to be considered in conjunction with that review.

Plaintiff reincorporates the concerns raised in her Response, Doc. 129, and proposes that the Court adopt the following process for her evaluation:

1. Drs. Renberg and Simopoulos will conduct telehealth evaluations of Plaintiff in addition to their records review and consider those evaluations in rendering their determination.[1]

2. Defendants will make available to Drs. Renberg and Simopoulos the following materials:

    a. The medical records found at Defendants' Exhibit 8 entered into evidence during the February 20, 2024, hearing;

    b. Plaintiff's entire health chart from her admission into the Department's custody in October 2017 through the present;

    c. The results of the psychometric assessments performed by Plaintiff's expert, Randi C. Ettner, Ph.D., and Defendants' expert, Sara Boyd, Ph.D.;

---

[1] At the August 16 hearing, Defendants' counsel expressed concern that Drs. Renberg and Simopoulos have full-time jobs that could make it difficult for them to conduct telehealth evaluations of Plaintiff. As Plaintiff is presently incarcerated in Defendants' custody, Defendants of course could make her available to be evaluated at any time Drs. Renberg and Simopoulos could conduct such telehealth evaluations, including in the evening. Given that what is to be determined is whether it is *currently* medically necessary for Plaintiff to receive gender-affirming surgery, *see Farmer v. Brennan*, 511 U.S. 825, 847 (1994), having Drs. Renberg and Simopoulos evaluate Plaintiff's *current* condition, as well as her *entire* health chart to date, is essential.

2

d. The declarations of Katherine Croft, Dr. Bradley Figler, Dr. Donald Caraccio, and Jennifer Dula (Docs. 62-16, 62-17, 62-18, 62-19);[2] and

e. The expert report of Dr. Ettner. (Docs. 62-2.)

3. Plaintiff objects to the inclusion of the Expert Report of Dr. Joseph Penn in the materials to be reviewed by Drs. Renberg and Simopoulos, as suggested by Defendants during the August 16 hearing. Dr. Penn did not evaluate Plaintiff, and his expert report is not relevant to the issues to be determined by Drs. Renberg and Simopoulos. Dr. Penn opined on "the adequacy and appropriateness of policies and procedures used by the Department for evaluating and managing requests for accommodations by transgender patients," "the Department's formulation and application of the phrase 'medical necessity'" and "Defendants' evaluation of Plaintiff's request for vulvoplasty." Doc. 65-13 at 1. These matters relating to the original review process have already been addressed by this Court and have no bearing on the subsequent review process. Moreover, Plaintiff moved to strike Dr. Penn's expert testimony. *See* Doc. 75 ("Dr. Penn is not qualified to opine on the matters at issue, and his opinions lack a reliable basis and are ultimately irrelevant to the Court's consideration."), Doc. 76. Dr. Penn's report should not be considered.[3]

---

[2] Defendants inaccurately asserted at the August 16 hearing that these declarations were "advocacy" documents. Not so. These are sworn statements of the medical providers to whom Defendants referred Plaintiff, whose views about the medical necessity of Plaintiff receiving gender-affirming care are now known to Defendants and should be part of any evaluation of Plaintiff's need for surgery regardless of whether they made their way into Plaintiff's prison health chart or not.

[3] While Plaintiff also has moved to strike the expert report of Dr. Boyd, Plaintiff conceded at the August 16 hearing that, given that Dr. Ettner's expert report should be

3

4. Plaintiff requests that Drs. Renberg and Simopoulos conduct their review as expeditiously as possible and would suggest a timeframe of 21 days from this Court's order.

5. Plaintiff requests that Defendants inform the Court and Plaintiff within 7 days from the conclusion of Drs. Renberg's and Simopoulos's review whether Defendants will provide Plaintiff the gender-affirming surgery she continues to seek. When Defendants communicate their decision, they will share all materials referenced or created for Drs. Renberg's and Simopoulos's evaluation processes, excluding any materials protected by attorney-client privilege.

6. Defendants' counsel will also provide the Court and Plaintiff declarations or affidavits from Drs. Simopoulos and Renberg attesting to how many times they have evaluated a patient with gender dysphoria for gender-affirming surgery; when those evaluations occurred; what criteria they used; and whether they recommended surgery or not after each such evaluation.

7. If Defendants again refuse to provide Plaintiff surgery, Plaintiff requests that the Court consider a renewed motion on her medical necessity claim on an expedited basis.

Respectfully submitted this the 23rd day of August, 2024.

                                                */s/ Jaclyn A. Maffetore*
                                                Jaclyn A. Maffetore
                                                NC Bar No. 50849

---

considered by Drs. Renberg and Simopoulos, Dr. Boyd's report could be as well, since, like Dr. Ettner, Dr. Boyd personally examined Plaintiff. Plaintiff nonetheless does not withdraw or waive her motion to strike Dr. Boyd's report to the extent it might be considered for other purposes related to this litigation.

Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on August 23, 2024, I electronically filed the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*