IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KANAUTICA ZAYRE-BROWN,<br><br>   Plaintiff,<br><br>   v.<br><br>THE NORTH CAROLINA DEPART-MENT OF ADULT CORRECTION, *et al.*,<br><br>   Defendants. | No. 3:22-CV-00191-MOC-DCK |

### PLAINTIFF'S REPLY IN SUPPORT OF
### MOTION FOR ATTORNEY'S FEES AND COSTS

  Plaintiff won a final judgment on the merits of her Eighth Amendment claim and the Court permanently enjoined Defendants to alter their behavior. Plaintiff is therefore a prevailing party, and the fees sought are reasonable given the circumstances of the case. The work of Plaintiff's counsel was necessary to prove that, as the Court found, Plaintiff had an objectively serious medical condition, Defendants were subjectively aware of that condition, and Defendants had imposed a blanket ban on a potentially necessary treatment for that condition. (Doc. 92 at 8–10; Doc.116 at 1). The Court should reject Defendants' arguments to the contrary.

### I. Plaintiff is a prevailing party because she won a final judgment on the merits that caused Defendants to alter their behavior.

  Defendants argue that, even though Plaintiff won a final judgment on the merits of her Eighth Amendment claim and a permanent injunction, she is not a prevailing party because she did not obtain all the relief sought—specifically, the Court did

1

not require Defendants to provide Plaintiff with gender-affirming surgery. Defendants also argue that Plaintiff is not a prevailing party because the permanent injunction was vacated after Plaintiff was released from prison.

Both arguments are meritless.

### A. The extent of the relief obtained is unrelated to whether Plaintiff is a prevailing party.

The Supreme Court has held that "[i]f the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791–92 (1989) (cleaned up). "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). Whatever its form, a final judgment will confer prevailing-party status if it "'affects the behavior of the defendant toward the plaintiff.'" *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761, (1987)). This question "does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

Here, Defendants say that because the Court did not require them to provide gender-affirming surgery, Plaintiff is not a prevailing party. (Doc. 166 at 8). Plaintiff acknowledges that she did not obtain all the relief she sought in this case—but she certainly obtained some of it. In her complaint, Plaintiff asked the Court to declare unconstitutional "Defendants' practices in obstructing and denying [her] . . . adequate and necessary medical treatment and accommodations for gender dysphoria." (Doc. 1

at 46). She also sought a permanent injunction requiring adequate medical care, which would necessarily involve an individualized evaluation. (*See id.*)

Plaintiff got both. The Court found that Defendants' practices amounted to an unconstitutional ban on medical care and compelled Defendants to take steps for Plaintiff's benefit: either provide her surgery or an independent evaluation for surgery by qualified doctors. (Doc. 116 at 6).[1] The *extent* of the relief may affect her total recovery, but it does not affect whether she is a prevailing party under 42 U.S.C. § 1988.[2]

Defendants rely on the Supreme Court's recent decision in *Lackey v. Stinnie*, but that case only held that *preliminary* injunctions cannot confer prevailing-party status. 145 S. Ct. 659, 667 (2025). That litigation became moot after the district court entered a preliminary injunction but before it "reached final judgment[.]" *Id.* at 664.

---

[1] Defendants also argue that the doctors they retained "reached the same results as Defendants when [they] determined … that gender affirming surgery was not medically necessary for Plaintiff." (Doc. 166 at 4). That is misleading. Those doctors determined that there was "no compelling clinical reasons or evidence that gender-affirming surgery must be completed *immediately* and *prior to [Plaintiff's impending] scheduled release.*" (Doc. 140-1 at 8, 10 (emphasis added); *see also* Doc. 140-2 at 1–2.) Defendants, on the other hand, had imposed a complete ban on gender-affirming surgery no matter a patient's individual circumstances. (Doc. 116 at 5).

[2] The extent of the relief here was limited in part because Defendants repeatedly failed to comply with the Court's order. When the deadline for compliance passed, no stay had been entered and "Defendants ha[d] apparently taken no steps to comply with the Court's injunction." (Doc. 126 at 2). Defendants eventually submitted a report that the Court found non-compliant with "basic requirements" of the injunction. (Doc. 146 at 3). The Court required Defendants to submit a compliant report within ten days. (*Id.* at 2–4). By that time, however—more than seven months after the Court ordered injunctive relief—Plaintiff had been released from prison. As discussed more below, the Court should not reward Defendants' recalcitrant behavior.

The Supreme Court explained, "Preliminary injunctions . . . do not conclusively resolve legal disputes. In awarding preliminary injunctions, courts determine if a plaintiff is *likely* to succeed on the merits[.]" *Id.* at 667. "Because preliminary injunctions do not conclusively resolve the rights of parties on the merits, they do not confer prevailing party status. A plaintiff who secures a preliminary injunction has achieved only temporary success at an intermediary stage of the suit." *Id.* (cleaned up).

The Supreme Court, however, did not suggest that its decision extended to *final* judgments on the merits that alter a defendant's behavior. Rather, the Court explained that a plaintiff can still become a prevailing party even "based on an award of nominal damages, or a final victory on a material even if not predominant claim." *Id.* at 668 (citations omitted). What matters is that "[t]he plaintiff must succeed on the merits." *Id.* That is what happened here.

Defendants also contend that Plaintiff's win was only "procedural" in nature. (Doc. 166 at 4, 7). But *Lackey* made no distinction between vindicating procedural rights and substantive rights. Moreover, entirely procedural claims can still merit attorney's fees. Applying *Lackey*, the Third Circuit recently held that a plaintiff who vindicates a legal right is a prevailing party "irrespective of whether that right is substantive or procedural." *Augustyn v. Wall Twp. Bd. of Educ.*, 139 F.4th 252, 257 (3d Cir. 2025); *see also Grabarczyk v. Stein*, 32 F.4th 301, 304 (4th Cir. 2022) (affirming fee award for successful procedural due process claim).

4

Case 3:22-cv-00191-MOC-DCK   Document 167   Filed 08/11/25   Page 4 of 20

All told, after years of litigation, this Court held that Plaintiff achieved "actual success on the merits" of her Eighth Amendment claim and ordered Defendants to alter their behavior. (Doc. 116 at 6). She is therefore entitled to a fee award.

### B. Plaintiff remains a prevailing party because the Fourth Circuit did not reverse this Court on the merits.

Defendants further argue that Plaintiff is not a prevailing party because the Fourth Circuit vacated the final judgment following Plaintiff's release from prison. (Doc. 166 at 8–9). This argument fails as well.

In *Grabarczyk*, the Fourth Circuit held that plaintiffs who won a permanent injunction at the district court remained prevailing parties after the case became moot and the injunction was vacated while the defendants' appeal was pending. 32 F.4th at 305. Defendants point out that, unlike this case, *Grabarczyk* "found the plaintiff to be a prevailing party despite mootness and an accompanying vacatur, '[w]hen the reason for mootness and an accompanying vacatur is that a state legislature acted to remedy a violation of federal law declared by the district court.'" (Doc. 166 at 12 (quoting *Grabarczyk*, 32 F.4th at 307)).

That is true, but Defendants fail to explain why the distinction matters. The fact remains that Plaintiff succeeded before this Court and Defendants' appeal was dismissed. And *Grabarczyk* did not suggest that the reason for a case becoming moot—whether it is the defendant's voluntary conduct or something outside the parties' control—should make a difference.

To that point, *Grabarczyk* acknowledged other courts "holding categorically that a plaintiff who wins relief on the merits before a district court remains a

5

prevailing party if the judgment is vacated as moot on appeal, regardless of *why* the case has become moot." 32 F.4th. at 310. At least eight circuits have reached similar conclusions. *See Thomas v. Haslam*, No. 20-6188, 2021 WL 3754240, at *2 (6th Cir. Aug. 25, 2021) (citing cases and holding that "[e]ven though our Court held that this case was moot because [the challenged statute] was amended, it does not change the fact that the Plaintiffs prevailed at the district court").

These cases are persuasive. Congress enacted 42 U.S.C. § 1988 "to ensure that federal rights are adequately enforced." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). So, "[t]o hold that mootness of a case pending appeal inherently deprives plaintiffs of their status as 'prevailing parties' would detract from § 1988's purposes. Such a rule could result in disincentives for attorneys to bring civil rights actions when an event outside the parties' control might moot the case after the district court rendered a favorable judgment but before the judgment could be affirmed on appeal." *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 455 (1st Cir. 2009). Moreover, as discussed in Plaintiff's opening brief, the need to incentivize competent attorneys to take on civil rights claims is especially important in the prison context. These cases often involve unpopular plaintiffs and a low likelihood of a major financial recovery. (Doc. 164 at 14–15).

Defendants also rely on *United States v. Munsingwear, Inc.,* 340 U.S. 36 (1950), which addressed when a judgment should be vacated upon becoming moot. (Doc. 166 at 10). But that argument conflates vacatur with a reversal on the merits, which did not happen here. "Vacatur, unlike a reversal of the district court's judgment on the

6

merits, does not reflect upon the underlying merits of the parties' claims, which the court no longer has jurisdiction to determine. It is instead a remedy designed to prevent unfairness to the losing party, who would otherwise have to continue complying with an adverse judgment." *Diffenderfer*, 587 F.3d at 451; *see also Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 17 (2023) (Jackson, J., concurring) ("[E]ven if a party cannot appeal [because of mootness], . . . lower court judgments are binding and presumptively valid. And the lack of an appeal, on its own, does not suffice to rebut that presumption.").

Defendants' position—that a plaintiff loses prevailing-party status if a final judgment becomes moot and is vacated pending appeal—also creates a line-drawing problem: What if the court of appeals affirms, but the issue becomes moot before en banc review, or before the defendant can seek review at the Supreme Court, or after the Supreme Court grants certiorari but before a decision on the merits? Under this view, a plaintiff could win on the merits repeatedly, never lose on the merits, but still not be a "prevailing party" under § 1988. That cannot be something that Congress intended with a statute designed to incentivize civil rights enforcement.

Moreover, permanent injunctions do not have to last indefinitely for a plaintiff to be a prevailing party. Courts routinely dissolve or modify permanent injunctions when circumstances change. Those post-judgment events, which are unrelated to the merits of the case, do not strip plaintiffs of their status as prevailing parties. *See, e.g.*, *Portz v. St. Cloud State Univ.*, No. 16-1115 (JRT/LIB), 2025 WL 641837, at *3 (D. Minn. Feb. 27, 2025).

7

Case 3:22-cv-00191-MOC-DCK    Document 167    Filed 08/11/25    Page 7 of 20

Finally, Defendants argue that *Grabarczyk* and cases reaching similar holdings "are no longer good law" after *Lackey v. Stinnie*. (Doc. 166 at 12–13). That is wrong. As discussed above, *Lackey* dealt exclusively with *preliminary* injunctions and made clear that a final judgment on the merits—even if the relief is limited or not based on the plaintiff's "predominant claim"—will still entitle a plaintiff to a fee award. 145 S. Ct. at 668.

## II. Plaintiff's requested fee award is consistent with the PLRA and reasonable in light of § 1988's purpose.

Defendants argue that, even if Plaintiff is a prevailing party, the Court should substantially decrease Plaintiff's requested award in light of the Prison Litigation Reform Act (PLRA) and her degree of success. But the fee award sought already takes these factors into account. After years of litigation, precedent and the purpose of the civil rights fee award statutes justify the award.

### A. This Court can and should apply the current PLRA rate.

Defendants take issue with Plaintiff's use of the current PLRA rate, rather than historical rates, to determine the lodestar here. (Doc. 166 at 15–16). The Supreme Court and Fourth Circuit have made clear that compensation for work done over time may require adjustment to account for present value. *See Missouri v. Jenkins*, 491 U.S. 274, 282 (1989) (compensation for fees over time is made "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value"); *Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir. 1986) (district court erred by adopting historic rates and remanding to either "increase the hourly rates to reflect current market rates" or "increase the lodestar to counterbalance the

8

effect of inflation and forgone interest"). Courts within the Fourth Circuit have exercised their discretion in this way. *See, e.g. Scott v. Clarke*, No. 3:12-CV-00036, 2020 WL 7220571, at *6 (W.D. Va. Mar. 12, 2020) (finding "reasonable and consistent with the PLRA's hourly rate cap" a rate of $220.50 for work performed between January 2017 and June 2019), *report and recommendation adopted as modified*, 2020 WL 2771949 (W.D. Va. May 28, 2020).

Here, based on counsel's skill and experience, the current PLRA rate of $262.50 is still below the market rate for a case of this nature and is presumptively reasonable. (*See* Doc. 164 at 9–11(citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Kelly v. Wengler*, 822 F.3d 1085, 1103 (9th Cir. 2016)). This Court is well within its discretion to award Plaintiff's counsel a fee award that accounts for the passage of time.

### B. Plaintiff is entitled to recover for work that was reasonably necessary to her Eighth Amendment claim.

Defendants argue that billing for work at critical stages of the case—including drafting the complaint, conducting discovery, and briefing dispositive motions—was "'not directly and reasonably incurred' to establish the violation underlying the Court's injunction" and that Plaintiff's counsel should therefore not be compensated. (Doc. 166 at 16–17 (urging that plaintiff "cannot recover" for work on the "complaint . . . written discovery, depositions, original summary judgment briefing" and appellate work because "all focused on the claim that Plaintiff was denied medically necessary care" or occurred "after the injunction was entered")). This argument fails.

The "'strong presumption' that the lodestar number represents a reasonable attorney's fee" can only be overcome in "rare circumstances." *McAffee v. Boczar*, 738

9

F.3d 81, 88 (4th Cir. 2013) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)); *see also id.* at 89 ("departures from the lodestar figure are to occur rarely and only in extraordinary cases" (quoting *Johnson*, 906 F. Supp. 2d at 490)). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir. 1992).

To that end, while the Court can deduct time spent on unsuccessful *claims*, "[t]he Court may award fees for unsuccessful motions to the extent that the motions were necessary and Plaintiff was ultimately successful on the claims underlying the motions." *Hair Club for Men, LLC v. Ehson*, No. 1:16-CV-236, 2017 WL 1250998, at *9 (E.D. Va. Apr. 3, 2017). *See, e.g.*, *Marshall v. Rio Grande River Ltd. P'ship*, 162 F. Supp. 3d 54, 59 (D. Mass. 2016) (awarding fees for unsuccessful motions "typical of civil trials" that were "very much related to the" facts underlying a successful claim). "Striking time spent on unsuccessful motions effectively requires the court to second-guess every decision made by Plaintiffs to determine whether each decision actually advanced Plaintiffs' case." *United States v. Parker-Migliorini Int'l, LLC*, No. 212CV00381JNPCMR, 2023 WL 1474858, at *5 (D. Utah Feb. 2, 2023) (quotation marks omitted). Even work on documents that are never filed can be compensated if the work appeared reasonably necessary when performed. *See, e.g.*, *Searles v. Van Bebber*, 64 F. Supp. 2d 1033, 1039 (D. Kan. 1999) (awarding fees for work on unfiled brief in PLRA case), *vacated on other grounds*, 251 F.3d 869 (10th Cir. 2001).

10

Here, the complaint—which initiated the case, prayed for injunctive and declaratory relief, and made extensive factual allegations that allowed Plaintiff to overcome Defendants' motion to dismiss—was obviously integral to the relief achieved. (Doc. 1 at 46; Doc. 25 at 5–8). The discovery period in which Dr. Campbell's position statement was uncovered, Dr. Campbell's credibility was undermined, and the extent of the DTARC's reliance on Dr. Campbell was exposed, served as the foundation for this Court's ultimate conclusion that Defendants' processes were constitutionally infirm. (Doc. 92 at 3, 5–6, 11).

Moreover, it was through the initial round of summary judgment that Plaintiff proved both elements of her Eighth Amendment claim: she had an objectively serious medical condition that Defendants were subjectively aware of. (*Id.* at 8–9, 11). It does not follow that this work was unnecessary simply because Plaintiff also pursued an alternative but related legal theory.[3] *Cf. Texas State Teachers Ass'n v. Garland independent School Dist.*, 489 U.S. 782, 791 (1989) ("the search for the 'central' and 'tangential' issues in the lawsuit, or for the 'primary,' as opposed to the 'secondary,' relief sought . . . distracts the district court from the primary purposes behind § 1988" and would be "sure to provoke prolonged litigation")

Further, Defendants seem to imply that it was not reasonably necessary for Plaintiff's counsel to zealously defend their client against Defendants' attempts to undermine her case. But, "[a] defendant 'cannot litigate tenaciously and then be

---

[3] Despite Defendants' apparent contention to the contrary (Doc. 166 at 16), Plaintiff's counsel has already removed, and does not seek compensation for, hours associated with the preliminary injunction.

11

heard to complain about the time necessarily spent by the plaintiff in response." *Stuart v. Walker-McGill*, No. 1:11-CV-804, 2016 WL 320154, *7 (M.D.N.C. Jan. 25, 2016) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986)).

Defendants chose to attack Plaintiff's claims at the motion to dismiss phase and again at summary judgment; Plaintiff could not have prevailed without defending against those motions. (Doc. 9; Doc. 60). Defendants also chose to pursue two intrusive Rule 35 examinations of Plaintiff, despite having several doctors employed who had already examined her; Plaintiff's counsel had a duty to defend her and successfully limited the Rule 35 examination that was allowed. (Doc. 37). Defendants also chose to put forward three expert witnesses with questionable experience and credibility, and Plaintiff was justified in filing routine Rule 702 motions to exclude their testimony. (*See* Doc. 89). And Defendants chose to seek to stay and reverse the judgment in Plaintiffs favor at the Fourth Circuit (Doc. 117; Doc. 118), which Plaintiff had to fight in order to "enforce[] the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1). *See Doe v. Rumsfeld*, 501 F. Supp. 2d 186, 191 (D.D.C. 2007) (plaintiffs who succeed at district court could recover fees for appellate work where defendants' appeal was dismissed as moot).

All of this work was reasonably necessary. Defendants tellingly cite no law suggesting otherwise. The proper inquiry to compensate for this time—under the PLRA or otherwise—is whether Plaintiff would have undertaken each of these efforts had she only brought her Eighth Amendment claim for declaratory and injunctive

relief. *Edmo v. Idaho Dep't of Corr.*, No. 1:17-CV-00151-BLW, 2025 WL 605467 at *4 (D. Idaho Feb. 25, 2025). The answer is plainly yes.

Next, Defendants call this case overstaffed simply because Plaintiff seeks time for five attorneys. (Doc. 166 at 17). However, "the crux of the lodestar calculation is whether the prevailing party's attorneys claimed a reasonable number of hours for their work on the litigation, not the number of lawyers or law firms involved." *Scott*, 2020 WL 7220571, at *15 (noting that "the decision to have sixteen attorneys" working on a case, "without more, is neither unquestionably excessive . . . nor inherently unnecessary"). *See also Elderberry of Webster City, LLC v. Living Ctrs.-Se.*, No. 6:12-CV-00052, 2014 WL 3900389, at *5 (W.D. Va. Aug. 11, 2014) ("Reduction of hours is not warranted simply because a client has multiple attorneys."); *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762, 775–76 (E.D. Va. 2013) (focusing on the reasonableness of time expended by at least twenty-one attorneys with two firms and concluding that the information provided by the prevailing party showed that the matter was "for the most part, ... prudently staffed").

Defendants argue that significant cuts should be made to work they consider "duplicative," simply because it was divided among a five-attorney team.[4] However, they make no argument that the total hours spent on these tasks was unreasonable. They cite no case that says litigation teams cannot meet to strategize and apportion out the work of their cases or to speak to their clients, or that five attorneys dividing

---

[4]Defendants ignore the fact that, although Plaintiff seeks to recoup for five attorneys' time spent on this case, more than half of the time is sought, largely unduplicated, for the work of lead counsel.

13

up discovery in a case with sixteen total depositions is not reasonable, or that more than one person cannot work on an expert declaration or edit a brief. Certainly, it is not the law that complex civil rights litigation can only be reasonably compensated if done alone, outside of a team setting. *See Stuart*, 2016 WL 320154 at *8 ("Time spent coordinating, editing, and conferring" among co-counsel considered reasonable and compensable "given the different aspects of the case the attorneys worked on and their different areas of value-added expertise.")

### C. The fees sought are reasonable based on Plaintiff's degree of success.

The fees sought are reasonable when accounting for Plaintiff's degree of success compared to similar cases. Defendants chide Plaintiff for citing *Bone* and *Edmo* because of the greater degree of success achieved in those cases. (Doc. 166 at 21). But Plaintiff cites those cases for exactly that reason. They were similar in duration and complexity to Plaintiff's case, and similar overall hours were expended. (*See* Doc. 164 at 19 noting 42% overall reduction in Plaintiff's hours sought). Nevertheless, Plaintiff seeks compensation of just over $526,207.50 for just over 2,000 hours—less than 50% of the $1.1 million that was sought in *Bone,* and less than 25% of the $2.4 million that was sought in *Edmo*. (*See* Doc. 164 at 16–17).

Defendants also mischaracterize their own defiance of the Court's orders as a lack of success on Plaintiff's part. It is undeniable that this Court found for Plaintiff on the merits of her Eighth Amendment claim and entered permanent injunctive relief. (Doc. 116). But Defendants refused to comply with the injunction by the deadline (Doc. 126 at 2) and filed unsuccessful stay motions. (*E.g.,* Doc. 118). After finally

14

making their submissions *seven months* after the Court's entry of a permanent injunction, the Court found that Defendants' attempt at compliance remained inadequate. (Doc. 140; Doc. 146). Therefore, Plaintiff's degree of success is limited in part due to Defendants' defiance of the Court's orders. But that resistance is not legal grounds for Defendants to claim that Plaintiff's relief was worthless, or her attorneys' time uncompensable.

Defendants further urge reduction of her fee award by fixating on the lack of recovered damages. Defendants rely on *Farrar,* 506 U.S. 103, where the plaintiff sought damages and abandoned his claim for injunctive relief early on in the litigation. A jury awarded only nominal damages, finding plaintiff had failed to demonstrate the critical element of proximate cause. *Id.* at 106. In declining to award any attorney's fees despite plaintiff technically enjoying prevailing party status, the court noted that plaintiffs received "[n]o money damages. No declaratory relief. No injunctive relief. Nothing." *Id.* at 107.

Unlike the plaintiff in *Farrar*, Plaintiff here opted not to pursue her damages claims; however, she did pursue—and win—declaratory and injunctive. The lack of a damages award does not make the declaratory and injunctive relief worthless, as Defendants suggest.[5] *See, e.g. City of Riverside*, 477 U.S. at 575 ("Because damages

---

[5] Defendants also cite *Texas State Teachers Ass'n v. Garland independent School Dist.*, 489 U.S. 782 (1989) to support the same proposition; however, the court in *Garland* made no mention of damages, and instead concluded that even though plaintiffs had lost on a number of their claims, they had obtained some of the relief sought and thus were entitled to fees. (Doc. 166 at 7). The same is true here.

15

awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases . . . to depend on obtaining substantial monetary relief.). What's more, the PLRA's attorney's fees cap for damages claims is entirely irrelevant to the reasonableness of fees sought for the vindication of Plaintiff's Eighth Amendment claim for declaratory and injunctive relief. *See* 42 U.S.C. § 1997e(d)(2) (noting that a cap applies to an award of attorney fees "[w]henever a monetary judgment **is awarded**" in a claim covered by § 1988); *Kelly*, 822 F.3d at 1100 (noting that PLRA cap on fee awards associated with monetary judgments "does not apply to actions (or parts of actions) resulting in non-monetary relief"). Plaintiff's compensable claim under § 1988 did not even seek damages.

### D. The purpose of the civil rights attorney's fees statutes warrant a significant fee award

Defendants do not dispute that an award of fees in this case serves the purpose of § 1988 and the public interest. "Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit 'does so not for himself alone but also as a private attorney general,' vindicating a policy that Congress considered of the highest importance." *City of Riverside*, 477 U.S. at 575 (cleaned up). "If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated, and the entire Nation, not just the individual citizen, suffers." *Id.*

"[L]ower courts must not forget the need to ensure that civil rights plaintiffs with bona fide claims are able to find lawyers to represent them." *Hensley v. Eckerhart*, 461 U.S. 424, 444 (1983). Thus, an integral purpose of § 1988 is to attract

16

competent counsel to pursue meritorious but unpopular cases. "Prisoner cases are notoriously unpopular among the private bar as pro bono candidates" and fee awards are especially warranted in cases which "involved challenges to institutional practices that are likely to impact future cases." *Hudson v. Dennehy*, 568 F. Supp. 2d 125, 133–34 (D. Mass. 2008).

Further, fee awards are intended to disincentivize future violations. *City of Riverside*, 477 U.S. at 574–75. A meaningful fee award here would put prison officials on notice that they cannot violate the law without consequence simply by running out the clock on an incarcerated person's sentence.

Conversely, declining to make a significant fee award may disincentivize competent counsel from bringing suits to vindicate civil rights where a damages payout is unlikely, and will instead reward recalcitrant defendants who not only violated the Constitution, but repeatedly defied a federal court's order to remedy that violation. (*See* Doc. 146 at 2–4).

## CONCLUSION

For the foregoing reasons and for the reasons stated in her memorandum in support of her motion, Plaintiff requests that this court grant her motion for reasonable attorney's fees and expenses.[6]

---

[6] Defendants have submitted no objection to Plaintiff's Bill of Costs seeking $21,617.90, (Doc. 165), and the time to do so has since expired. Additionally, Defendants' response brief makes no mention of Plaintiff's requested expenses of $10,385.29, (Doc. 164 at 19). Because Defendants have not disputed these costs and expenses, they should be awarded.

17

Respectfully Submitted this the 11th day of August, 2025.

/s/ Jaclyn A. Maffetore
Jaclyn A. Maffetore
NC Bar No. 50849
Daniel K. Siegel
NC Bar No. 46397
Michele Delgado
NC Bar No. 50661
ACLU OF NORTH CAROLINA
LEGAL FOUNDATION
jmaffetore@acluofnc.org
dsiegel@acluofnc.org
mdelgado@acluofnc.org
(919) 354-5070

Christopher A. Brook
NC Bar No. 33838
PATTERSON HARKAVY LLP
cbrook@pathlaw.com

Jon W. Davidson*
(admitted only in California)
L. Nowlin-Sohl*
(admitted only in Washington)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
jondavidson@aclu.org
lnowlin-sohl@aclu.org

*admitted *pro hac vice*

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on August 11, 2025 I filed the foregoing with the Clerk of Court using the CM/ECF system which will effect service on all counsel of record.

Respectfully submitted this the 11th day of August, 2025.

> */s/ Jaclyn A. Maffetore*
> Jaclyn A. Maffetore
>
> *Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's standing order on the use of artificial intelligence, Docket No. 3:24-mc-104, I hereby certify that no artificial intelligence was employed in the research for the preparation of the foregoing document except for such artificial intelligence embedded in Westlaw. I further certify that every statement and citation to authority in the foregoing document has been checked by an attorney in this case or a paralegal working at their direction as to the accuracy of the proposition for which it is offered and the citation to authority provided.

Respectfully submitted this the 11th day of August, 2025.

*/s/ Jaclyn A. Maffetore*
Jaclyn A. Maffetore

*Counsel for Plaintiff*