UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-191-MOC-DCK

| | | |
|---|---|---|
| **KANAUTICA ZAYRE-BROWN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al.**, | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Attorney's Fees and

costs. (Doc. No. 163). Defendants filed a response in opposition, and Plaintiff has filed a reply.

(Doc. Nos. 166, 167). This matter is ripe for disposition.

## I.      Background

Plaintiff is a transgender woman with gender dysphoria. In 2010, Plaintiff transitioned

socially to living as a woman and began receiving gender-affirming care, including

psychotherapy, hormone therapy, and gender-affirming surgeries. (Doc. No. 92 at 1–2). Plaintiff

continued to experience dysphoria related to her lower body. While she was in prison in the

custody of the State of North Carolina's Department of Adult Corrections ("DAC"), she began

seeking gender-affirming genital surgery from Defendants. (Id.). DAC's Division Transgender

Accommodation Committee ("DTARC"), responsible for evaluating requests for gender-

affirming surgery, confirmed Plaintiff's gender dysphoria diagnosis in 2017. (Id. at 3). DTARC

ultimately denied Plaintiff's requests for gender-affirming surgery. (Id. at 4 & n.3, 5).

Plaintiff then filed this action, seeking declaratory and injunctive relief under the Eighth

Amendment, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973.

1

Plaintiff sought a declaration that "Defendants' practices in obstructing and denying [her] . . . adequate and necessary medical treatment and accommodations for gender dysphoria" violated the Constitution, as well as a "permanent injunction[] requiring Defendants to provide Plaintiff with necessary medical care[.]" (Doc. No. 1 at 46). She also sought damages under two federal statutory claims and the North Carolina Constitution. (Id.).

After the Court denied Defendants' motion to dismiss (Doc. No. 25 at 11), extensive discovery confirmed that contracted UNC health providers and DAC providers believed that Plaintiff needed gender-affirming surgery to treat her gender dysphoria. (Doc. No. 92 at 4 & n.3). Defendants filed a Rule 35 motion seeking to have two of their expert witnesses examine Plaintiff, which Plaintiff successfully opposed in part. (Doc. No. 47 at 1).

Following the limited evaluation, Defendants' expert Sarah Boyd similarly concluded that she believed gender-affirming surgery was "necessary" to cure Plaintiff's gender dysphoria. (Doc. No. 62-1 at 166:21–26, 167:12–21). Discovery further revealed that Defendant Arthur Campbell—DAC's Chief Medical Officer responsible for evaluating requests for gender-affirming surgery—authored a "position statement" in which he asserted "that gender-affirming surgery is never medically necessary" to treat gender dysphoria. (Doc. No. 92 at 3).

After two rounds of briefing cross-motions for summary judgment and two hearings, this Court held that Plaintiff satisfied the elements of her Eighth Amendment claim. The Court held "that Defendant's denial caused Plaintiff to suffer significant injury is beyond genuine dispute," (id. at 8), and that "[n]o reasonable jury could find that Defendants lacked subjective awareness that denying[her] request carried some risk of harm," (id. at 10). Moreover, the Court found that Dr. Campbell's position statement evidenced a de facto ban on gender-affirming surgery. (Doc. No. 116 at 5–7). "[C]onsidering Dr. Campbell's authorship of the position statement, other

2

DTARC members' deference to his medical judgment, and DTARC's track record of denying dysphoric prisoners' requests for gender-affirming surgery, the Court [could not] credit Dr. Campbell's testimony" to the contrary. (Id. at 5).

The Court thus concluded that "Defendants' review of Plaintiff's accommodation request violated Plaintiff's Eighth Amendment rights insofar as Defendants denied Plaintiff the individualized medical evaluation the Eighth Amendment requires." (Id. at 6). The Court entered a permanent injunction that provided Defendants with two options: "either (1) give Plaintiff the surgery that Plaintiff's experts contend remains medically necessary; or (2) within 30 days from entry of this order form a new committee, subject to this Court's approval, to re-assess Plaintiff's accommodation request, that committee to contain at least two medical doctors with gender dysphoria expertise." (Id.).

Defendants refused to comply with the Court's order. On the eve of the Court's deadline for compliance, and less than six months from Plaintiff's projected release date, Defendants filed their notice of appeal of the Court's injunction. (Doc. No. 117). The next day, Defendants moved the Court to stay its injunction pending appeal. (Doc. No. 118). Plaintiff opposed the motion and this Court denied it, noting that "Defendants ha[d] apparently taken no steps to comply with the Court's injunction." (Doc. No. 126 at 2). Defendants renewed their stay motion with the Fourth Circuit, which Plaintiff opposed on an expedited basis. (4th Cir. Doc. Nos. 17, 18, 19-1). The Fourth Circuit denied Defendants' stay motion as well. (4th Cir. Doc. No. 20).

While briefing was underway at the Fourth Circuit, this Court received briefing and held a hearing on how Defendants would comply with the permanent injunction. (Doc. Nos. 128, 129, 131, 132, 134). In response to the injunction, Defendants selected two doctors to re-evaluate Plaintiff for surgery. (Doc. No. 128 at 2). The results of that re-evaluation were filed with the

Court on November 6, 2024. (Doc. No. 140). However, Plaintiff was released from custody on November 2, 2024. Nevertheless, Plaintiff objected to the adequacy of Defendants' "Notice of Compliance" (Doc. No. 144), and on November 22, 2024, the Court held that Defendants had failed to comply with "basic requirements" of its order and made "legally irrelevant" submissions, and the Court required Defendants to submit a complaint report within ten days. (Doc. No. 146 at 2–4).

On November 4, 2024, two days after Plaintiff's release from custody, the Fourth Circuit requested supplemental briefing regarding whether her release would render the appeal moot. (4th Cir. Doc. No. 43). Plaintiff argued that it did and moved to dismiss the appeal on November 19, 2024. (4th Cir. Doc. Nos. 44, 45). The Fourth Circuit dismissed the appeal and directed that the decision below be vacated as moot on December 2, 2024.[1] (Doc. No. 149). Thus, Plaintiff was released from prison and her Eighth Amendment claim became moot before the Court could consider Defendants' resubmitted report for compliance. Ultimately, Defendants never fully complied with the permanent injunction, having run out the clock on Plaintiff's sentence.

A jury trial on damages in this case was delayed while the parties litigated the appeal in this matter and complied with this Court's orders to engage in mediation. Settlement efforts resulted in an impasse and Plaintiff ultimately decided to dismiss her remaining claims without proceeding to trial. (Doc. Nos. 159, 162).

Plaintiff now moves for reasonable attorney's fees and expenses in the following amounts:

- $408,843.75 in attorneys' fees to the ACLU of North Carolina Legal Foundation

---

[1] Plaintiff filed a bill of costs associated with the dismissed appeal, which was granted. (Doc. No. 157).

• $4,138.94 in expenses to the ACLU of North Carolina Legal Foundation

• $117,363.75 in attorneys' fees to the American Civil Liberties Union Foundation

• $6,246.35 in expenses to the American Civil Liberties Union Foundation

Plaintiff also seeks taxable costs of $21,617.90.

## II.      Discussion

### A.      Whether Plaintiff is the Prevailing Party

Title 42 of the United States Code, Section 1988 provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). A plaintiff constitutes a "prevailing party" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Here, the Court first notes that the parties dispute whether Plaintiff is a "prevailing party" and thus entitled to an award of attorneys' fees under Section 1988. For the following reasons, the Court agrees with Plaintiff that she is the prevailing party.

Defendants argue that, even though Plaintiff won a final judgment on the merits of her Eighth Amendment claim and a permanent injunction, she is not a prevailing party because she did not obtain all the relief sought—specifically, the Court did not require Defendants to provide Plaintiff with gender-affirming surgery. Defendants also argue that Plaintiff is not a prevailing party because the permanent injunction was vacated after Plaintiff was released from prison. The Court disagrees.

The Supreme Court has held that "[i]f the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." Texas State Tchrs. Ass'n v. Garland

5

Indep. Sch. Dist., 489 U.S. 782, 791–92 (1989) (citation modified). "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." Lefemine v. Wideman, 568 U.S. 1, 4 (2012). Whatever its form, a final judgment will confer prevailing-party status if it "'affects the behavior of the defendant toward the plaintiff.'" Rhodes v. Stewart, 488 U.S. 1, 4 (1988) (quoting Hewitt v. Helms, 482 U.S. 755, 761 (1987)). This question "does not turn on the magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992).

Here, Defendants argue that because the Court did not require them to provide gender-affirming surgery, Plaintiff is not a prevailing party. (Doc. No. 166 at 8). While Plaintiff did not obtain all the relief she sought in this case, she did obtain some of it. In her complaint, Plaintiff asked the Court to declare unconstitutional "Defendants' practices in obstructing and denying [her] . . . adequate and necessary medical treatment and accommodations for gender dysphoria." (Doc. No. 1 at 46). She also sought a permanent injunction requiring adequate medical care, which would necessarily involve an individualized evaluation. See (Id.).

The Court granted both requests. The Court found that Defendants' practices amounted to an unconstitutional ban on medical care and compelled Defendants to take steps for Plaintiff's benefit: either provide her surgery or an independent evaluation for surgery by qualified doctors. (Doc. No. 116 at 6). The extent of the relief may affect her total recovery, but it does not affect whether she is a prevailing party under 42 U.S.C. § 1988.

### B. Whether the Requested Hourly Rate Amounts Are Reasonable

Here, counsels seek $262.50 for each attorney in calculating the lodestar amount. "The starting point for establishing the proper amount of an award is the number of hours reasonably expended, multiplied by a reasonable hourly rate." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994). The burden is on the fee applicant to justify the reasonableness of

6

the requested fee. See Blum v. Stenson, 465 U.S. 886, 897 (1984). Determining a reasonable attorney fee award using the lodestar method involves three steps: (1) determining a lodestar figure; (2) subtracting fees for hours spent on unsuccessful claims unrelated to successful one; and (3) evaluating the plaintiff's degree of success. Randolph v. PowerComm Constr., Inc., No. 18-1728, 2019 WL 3072555, at *4 (4th Cir. July 11, 2019) (per curiam).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d)(3), caps attorney's fees for injunctive relief claims brought under 42 U.S.C. § 1983 at 150 percent of the hourly rate authorized by the Judicial Conference under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, for paying appointed counsel. The current non-capital maximum hourly rate authorized by the CJA is $175.[2] Thus, the current PLRA maximum rate is $262.50, the hourly rate sought by counsels.[3]

"[T]he PLRA rate virtually always replaces the prevailing market rate as the presumptively reasonable rate in the court's determination of the lodestar figure because actual prevailing rates are very unlikely to be as low as the PLRA rate." Kelly v. Wengler, 822 F.3d 1085, 1103 (9th Cir. 2016). Further, the PLRA rate sought is substantially below rates that have

---

[2] See Guide to Judiciary Policy, Vol. 7, Chapter 2, § 230.16(a), https://www.uscourts.gov/administration-policies/judiciary-policies/guidelines-administering-cja-and-related-statutes-6#a230_16 (Jan. 1, 2025).

[3] Application of the current PLRA rate is appropriate to account for the delay in payment to Plaintiff's counsel while the litigation was pending. See, e.g., Missouri v. Jenkins, 491 U.S. 274, 282 (1989) ("enhancement for delay in payment" including by "basing the award on current rates" is "part of a reasonable attorney's fee"); Reaching Hearts Int'l, Inc. v. Prince George's Cnty., 478 Fed. App'x. 54 (4th Cir. 2012); Skinner v. Uphoff, 324 F. Supp. 2d 1278, 1283 (D. Wyo. 2004) (applying current PLRA rate for all work performed); Edmo v. Idaho Dept. of Corr., No. 1:17-cv-00151-BLW, 2025 WL 605467, at *1 (D. Idaho Feb. 25, 2025) (allowing fee multiplier to PLRA maximum).

been considered appropriate for attorneys with Plaintiff's counsel's experience level in North

Carolina federal courts. The Court finds that the hourly rate requested by Plaintiff's counsel is

reasonable.

**C.      Reasonableness of Fees—Application of the <u>Johnson</u> Factors**

In exercising its discretion in the application of the lodestar method, the Court is guided

by the following twelve factors, often referred to as the <u>Johnson</u>[4] factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4)
> the attorney's opportunity costs in pressing the instant litigation; (5) the
> customary fee for like work; (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the client or circumstances; (8) the
> amount in controversy and the results obtained; (9) the experience, reputation and
> ability of the attorney; (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12) attorneys' fees awards in
> similar cases.

<u>Grissom v. The Mills Corp.</u>, 549 F.3d 313, 321 (4th Cir. 2008) (quoting <u>Spell v. McDaniel</u>, 824

F.2d 1380, 1402 n.8 (4th Cir. 1987)). "Although the Court considers all of the factors, they need

not be strictly applied in every case inasmuch as all of the factors are not always

applicable." <u>Firehouse Rest. Grp., Inc. v. Scurmont LLC</u>, No. 4:09-cv-00618-RBH, 2011 WL

4943889, at \*12 (D.S.C. Oct. 17, 2011) (citing <u>EEOC v. Serv. News Co.</u>, 898 F.2d 958, 965 (4th

Cir. 1990)). The Court addresses each factor in turn.

**i.   Time and Labor Expended**

Plaintiff's counsel began investigating this case in 2019, long before the time period for

which they seek fees. The relevant portion of the litigation spanned nearly three years, and

involved significant client communication, medical record review, motions practice (including

---

[4] <u>See</u> <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717–19 (5th Cir. 1974) (setting
forth the twelve reasonableness factors).

several motions filed by Defendants against which Plaintiff had to defend), a lengthy discovery period including fifteen depositions (two of which were 30(b)(6) depositions), two rounds of summary judgment briefing and associated hearings, two stay motions, and full briefing at the Fourth Circuit. This factor weighs in favor of the fees requested being reasonable.

### ii.     Novelty and Difficulty of the Questions Raised

The Court has noted from the outset "the myriad novel legal and factual issues at play in this case." (Doc. No. 25 at 5). This case involved complex issues without significant precedent in this circuit regarding healthcare for a transgender incarcerated person, a prison system's accommodation policy, and the requirements of the Eighth Amendment. In the limited instances in which courts have considered similar issues, the courts encountering such issues have considered them "novel." See, e.g., Edmo v. Idaho Dept. of Corr., 679 F. Supp. 3d 993, 1015 (D. Idaho 2022), rev'd in part on other grounds, Edmo v. Corizon, Inc., 97 F.4th 1165 (9th Cir. 2024). This factor weighs in favor of the fees being reasonable.

### iii.     Skill Required to Properly Perform the Legal Services

As detailed in their attached declarations, Plaintiff's counsels have shown that they have significant experience with civil rights litigation, particularly on behalf of incarcerated persons and members of the LGBTQ community. (Davidson Decl. ¶¶ 5–8; Siegel Decl ¶¶ 3–6). Moreover, courts in North Carolina and across the country have acknowledged the reputation of the ACLU and ACLU-NC in civil rights cases. See, e.g., Orr v. Trump, No. 1:25-CV-10313-JEK, 2025 WL 1695941, at *7 (D. Mass. June 17, 2025) (referencing the lengthy experience of the ACLU "litigating claims pertaining to transgender individuals' civil rights and civil liberties"); Progeny v. City of Wichita, Kansas, No. 621CV01100EFMADM, 2023 WL 6597768, at *9 (D. Kan. Oct. 10, 2023) ("the ACLU ... is [a] well-known entit[y] with significant experience

9

litigating civil rights claims"); <u>M.E. v. T.J.</u>, 854 S.E.2d 74, 111 (N.C. Ct. App. 2020) ("The public interest in the resolution of Plaintiff's appeal is in part demonstrated by the fact that, on appeal, Plaintiff is represented by attorneys representing ACLU of North Carolina . . . ."); <u>Carcano v. Cooper</u>, No. 1:16CV236, 2019 WL 3302208, at *6 (M.D.N.C. July 23, 2019) ("Plaintiffs are well-represented by several major nonprofit legal organizations [including] the American Civil Liberties Union of North Carolina."). This factor weighs in favor of the requested fees being reasonable.

### iv. Opportunity Costs of Litigation

The ACLU and ACLU-NC assert that they are non-profit public interest legal organizations in high demand, but with limited resources, and must be judicious in selecting cases. Especially with respect to lead counsel, this litigation required a significant outlay of attorney time over the course of years, severely limiting counsel's ability to take on other matters litigating important civil liberties issues. (Davidson Decl. ¶ 15; Siegel Decl. ¶ 11). This factor weighs in favor of the requested fees being reasonable.

### v. Customary Fee for Similar Work

In determining the lodestar amount, the Court should use an hourly rate that reflects "the prevailing market rates in the relevant community for the type of work for which [a party] seeks an award." <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 244 (4th Cir. 2009). As such, the first step is to determine the reasonable hourly rate to apply. The relevant community is typically the "community in which the court sits[.]" <u>Rum Creek Coal Sales</u>, 31 F.3d at 179. However, the court may consider market rates beyond the immediate community when there are no local attorneys with the relevant skills. <u>Id.</u>

10

After defining the relevant community, the court determines the prevailing market rate in that community for the type of work involved. The requested hourly rate should reflect "what attorneys earn from paying clients for similar services in similar circumstances[.]" Depaoli v. Vacation Sales Assocs., L.L.C., 489 F.3d 615, 622 (4th Cir. 2007). The moving party must show "'specific evidence of the 'prevailing market rates in the relevant community' for the type of work for which he seeks an award." Spell, 824 F.2d at 1402 (quoting Blum, 465 U.S. at 895). This burden is typically met by providing "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Robinson, 560 F.3d at 245. The Court may also rely on its own knowledge and experience of the relevant market to determine a reasonable rate. See Rum Creek Coal Sales, 31 F.3d at 179.

As noted, Plaintiff seeks an hourly rate at the current PLRA rate of $262.50. Defendants take issue with Plaintiff's use of the current PLRA rate, rather than historical rates, to determine the lodestar. (Doc. No. 166 at 15–16). The Supreme Court and Fourth Circuit have made clear that compensation for work done over time may require adjustment to account for present value. See Missouri v. Jenkins, 491 U.S. 274, 282 (1989) (compensation for fees over time is made "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value"); Daly v. Hill, 790 F.2d 1071, 1081 (4th Cir. 1986) (district court erred by adopting historic rates and remanding to either "increase the hourly rates to reflect current market rates" or "increase the lodestar to counterbalance the effect of inflation and forgone interest"). Courts within the Fourth Circuit have exercised their discretion in this way. See, e.g., Scott v. Clarke, No. 3:12-CV-00036, 2020 WL 7220571, at *6 (W.D. Va. Mar. 12, 2020) (finding "reasonable and consistent with the PLRA's hourly rate cap" a rate of $220.50 for work

11

performed between January 2017 and June 2019), <u>report and recommendation adopted as modified</u>, 2020 WL 2771949 (W.D. Va. May 28, 2020).

Here, based on counsel's skill and experience, the current PLRA rate of $262.50 is still below the market rate for a case of this nature and is presumptively reasonable. (See Doc. No. 164 at 9–11(citing <u>Blum v. Stenson</u>, 465 U.S. at 895 n.11; <u>Kelly</u>, 822 F.3d at 1103).

### vi. Attorney's Expectation at Outset of Litigation

Neither party has presented an argument with respect to this factor. This factor does not weigh significantly one way or the other.

### vii. Time Limitations

An attorney is entitled to some premium when priority work takes time away from the lawyer's other legal work. <u>Virginia Acad. of Clinical Psych. v. Blue Shield of Va.</u>, 543 F. Supp. 126, 148–49 (E.D. Va. 1982). Here, as noted, Plaintiff's counsels argue that, although Plaintiff's struggle to get necessary care while incarcerated endured for many years, her prison term was fixed and therefore operated as a constant time constraint in this litigation, and obtaining a permanent injunction before Plaintiff's release was of the utmost importance. This factor weighs modestly in favor of the requested fee award.

### viii. Amount in Controversy and Results Obtained

The Supreme Court has held that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992) (quoting <u>Hensley</u>, 461 U.S. at 436). The purpose of the fee-shifting provision in Section 1988 is to encourage the bringing of civil rights lawsuits which might otherwise not be brought because of the costs of hiring counsel, and not for a financial windfall for plaintiff's attorneys. <u>Farrar</u>, 506 U.S. at 114–16; <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 578 (1986).

12

As discussed above, Plaintiff obtained (1) a declaratory judgment that DAC's process for evaluating gender-affirming surgery requests violated the Eighth Amendment and (2) a permanent injunction against Defendants requiring them to take steps to reevaluate Plaintiff's need for surgery that they would not have otherwise taken. The Court's order concluding that the Eighth Amendment requires an individualized process for transgender prisoners will serve as precedent for other transgender prisoners. See Zayre-Brown v. N.C. Dep't of Public Safety, No. 3:22-cv-191-MOC-DCK, 2024 WL 1641795 (W.D.N.C. Apr. 16, 2024). Additionally, the Court's opinions discredit Dr. Campbell as an appropriate decisionmaker and address DAC's process for anyone who may need gender-affirming care. For practical purposes, Plaintiff's suit will impact other transgender prisoners in DAC custody. This factor weighs in favor of the requested fee's reasonableness.

### ix.    Experience, Reputation, and Ability of Counsel

As noted, counsels seek $262.50 for each attorney in calculating the lodestar amount. Here, Plaintiff's counsels argue that they have considerable experience litigating civil rights claims on behalf of prisoners and the LGBTQ community, and without the PLRA's cap they would be entitled to significantly higher market rates. (Davidson Decl. ¶ 12; Siegel Decl. ¶ 7). This factor weighs in favor of the requested fee's reasonableness.

### x.    Undesirability of the Case in the Legal Community

Lawsuits that are undesirable, either because of novelty of the issue or difficulty of the litigation, are eligible for premium attorneys' fees. See Alexander v. Hill, 625 F. Supp. 567, 570 (W.D.N.C. 1985) (considering that the case in question was "frustrating and thankless and require(d) great dedication" as the basis for an upward adjustment in attorneys' fees).

13

Fee awards in civil rights cases help incentivize competent counsel to take on unpopular clients who have meritorious claims. See, e.g., Kelly, 822 F.3d at 1104 ("Improving the quality of prisoner suits requires that plaintiffs with meritorious civil rights cases be able to secure competent counsel."). This litigation involved advocacy on behalf of two politically unpopular minorities in North Carolina: incarcerated people and transgender people.

Litigation on behalf of prisoners is generally considered "undesirable" given the stigma attached to this population and the PLRA's cap on recoverable fees. (Davidson Decl. ¶ 16; Siegel Decl. ¶ 12). Furthermore, North Carolina has historically not been very sympathetic to providing benefits to transgender individuals. See Kadel v. Folwell, 100 F.4th 122 (4th Cir. 2024) (regarding North Carolina exclusions of gender-affirming care from state employees health plan); Carcaño v. McCrory, 203 F. Supp. 3d 615 (M.D.N.C. 2016) (regarding North Carolina law restricting bathroom usage based on biological sex). Cases challenging such harms face substantial challenges in the current political climate. (Davidson Decl. ¶ 16). This factor weighs in favor of finding that the requested fees are reasonable.

### xi. Nature and Length of Professional Relationship between Attorney and Client

An on-going relationship with a client who brings repeat business to a firm tends to lead to lower hourly rates. Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1300, 1305 (11th Cir. 1988). However, a first-time, one-time, and/or contingency relationship may render this factor irrelevant from the attorneys' fee analysis, and therefore inconsequential. See Bunn v. Bowen, 637 F. Supp. 464, 472 (E.D.N.C. 1986).

Plaintiff notes that ACLU-NC has maintained a relationship with Plaintiff since before her transfer to a women's prison, and current lead counsel has maintained a relationship with her

14

since starting at ACLU-NC in late 2019. (Siegel Decl. ¶ 6). Plaintiff's counsel maintained close contact with Plaintiff while she was incarcerated through letters, prison phone calls, communications with family members, and visitations, and since her release from prison through regular email and cell phone contact. (Id.). This included complaint and declaration review and witness preparation as well as regular updates and strategy discussions regarding her case and transmission of all major filings through legal mail. (Id.). This factor weighs in favor of finding that the requested fees are reasonable.

### xii. Attorneys' Fee Awards in Similar Cases

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without (of) the court's circuit." Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 719 (5th Cir. 1974). Plaintiff has shown that the costs and fees sought here are reasonable when compared with awards to other civil rights litigants. See Johnson, 488 F.2d at 719 ("The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit."). For example, in Bone v. Univ. of N.C. Health Care Sys., the plaintiffs sought relief against the UNC Health Care System to "vindicate the rights of . . . patients who suffer from a sight-related disability" under the ADA and Rehabilitation Act, among other claims. No. 1:18CV994, 2024 WL 1014164, at *24 (M.D.N.C. Mar. 8, 2024). Over four years of litigation, Plaintiffs were partially successful on cross-motions for summary judgment, achieved a permanent injunction, and ultimately declined to pursue their damages claims at trial. Id. at *3. The Middle District of North Carolina determined that a fee award of $1.1M for nearly 5,000 hours of work by attorneys and paralegals was justified in that case. Id. at **17–19, 25.

In <u>Edmo v. Idaho Dep't of Corrs.</u>, a transgender prisoner litigated for three years and ultimately succeeded on her Eighth Amendment claim resulting in a permanent injunction that provided her with gender-affirming surgery. No. 1:17-cv-00151-BLW, 2025 WL 605467, at *1 (D. Idaho Feb. 25, 2025). Claims under the Equal Protection Clause and the Affordable Care Act were either settled or abandoned, and so the court only awarded fees that were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" under the Eighth Amendment. <u>Id.</u> at **1, 8 (quoting 42 U.S.C. § 1997e(d)(1)). Though the PLRA maximum cap controlled, the court awarded plaintiff's counsel $2.4M for 5,283.4 billable hours. <u>Id.</u> at *9. Here, Plaintiff's counsels seek $526,207.50 for 2,004.6 billable hours. Given that courts have awarded attorney fees far greater than the damages awarded to plaintiffs, this factor weighs in favor of the fee award's reasonableness.

In sum, in light of the factors enumerated in <u>Johnson</u> by Plaintiff's counsel, the attorney's fee award sought is reasonable. <u>See</u> <u>Rum Creek Coal Sales</u>, 31 F.3d at 175. Furthermore, Plaintiff's counsel have shown that they used sound billing judgment in the amount of fees requested. Plaintiff's counsel note that they have already cut several timekeepers and many hours as a matter of billing judgment. Though there were several attorneys on this case, Plaintiff has not sought fees for counsel who withdrew from representation or assisted in the suit but never filed a notice of appearance (Davidson Decl. ¶ 9), or for her private pro bono counsel with Patterson Harkavy. Additionally, of the remaining five attorneys, the bulk of hours sought are for the lead counsel at ACLU-NC (Jaclyn Maffetore), with significantly fewer hours sought for supporting counsel. Further, Plaintiff's counsel have eliminated entries for largely administrative tasks and, as a result, do not seek fees for work performed by paralegals or law student interns. (Davidson Decl. ¶ 9; Siegel Decl. ¶ 9).

Because "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," <u>Hensley</u>, 461 U.S. at 434, Plaintiff's counsel have already cut a significant number of hours in review of their billing entries. (Davidson Decl. ¶ 9; Siegel Decl. ¶ 9). Plaintiff's counsel culled hours where attorney work could be perceived as vague or duplicative, restricting hours sought in many circumstances to primary authors of written work product where reasonable, or to first chairs of depositions only. (<u>Id.</u>).

Moreover, in recognition that Plaintiff voluntarily dismissed her remaining claims for damages, Plaintiff's counsels have discounted as much attorney time as could be readily identified as pertaining solely to those unsuccessful claims. (<u>Id.</u>). The self-imposed cuts by the timekeepers with records before the court amount to approximately 1,450 total hours – representing a roughly 42% overall reduction in total hours now sought before this court. (<u>Id.</u>). Given that Plaintiff's counsel has already engaged in this exercise of sound billing judgment, and in light of the <u>Johnson</u> factors, the Court will award Plaintiff's counsel the full amount of requested fees.

Plaintiff's counsel also requests their reasonable hours associated with preparing the pending motion. "Time spent defending entitlement to attorney's fees is properly compensable in a § 1988 fee award." <u>Daly</u>, 790 F.2d at 1080. ACLU-NC requests $5,853.75 for 22.3 hours spent preparing this petition. (Siegel Decl. ¶ 13 n.1). ACLU National requests $1,496.25 for 5.7 hours spent preparing this petition. (Davidson Decl. ¶ 13). This time spent is reasonable when compared to awards made by North Carolina district courts for time spent on fee petitions. <u>See, e.g.</u>, <u>Mercer v. Duke Univ.</u>, 301 F. Supp. 2d 454, 470 (M.D.N.C. 2004) (awarding $11,450).

    **D.**    **Costs**

In addition to attorney fees, Plaintiff also asks the Court for reimbursement of costs incurred. "A prevailing plaintiff in a civil rights action is entitled, under § 1988, to recover those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Spell, 852 F.2d at 771 (citation and internal quotation marks omitted). The Fourth Circuit has held that such out-of-pocket expenses may include "supplemental secretarial costs, copying, telephone costs and necessary travel." Wheeler v. Durham Bd. of Educ., 585 F.2d 618, 623 (4th Cir. 1978) (footnote omitted).

Here, Plaintiff seeks $4,138.94 to compensate ACLU-NC for reasonable travel expenses of counsel to prison visitations and hearings in this matter, as well as the cost of postage. Plaintiff seeks $6,246.35 to compensate ACLU National for travel and lodging expenses for counsel to attend hearings and to take or defend depositions in this case. (Davidson Decl. ¶ 14; Siegel Decl. ¶ 14). Plaintiff separately seeks $21,617.90 in taxable costs, through her filed bill of costs and supporting documents.

Because Plaintiff is the prevailing party in this matter, these costs will be allowed. See FED. R. CIV. P. 54(d)(1). In sum, the Court finds that the costs submitted by Plaintiff are reasonable out-of-pocket expenses incurred which are normally charged to a fee-paying client while providing legal services.

### III. Conclusion

The legal fees in this case were incurred primarily on the constitutional issue of denial of due process. Plaintiff prevailed on that issue both before this Court and the Fourth Circuit. The State of North Carolina prevailed on the medical necessity claim once an unbiased panel reviewed the claim. But because the due process issue was the cause of so much litigation and resulting costs, the Court will award the full attorney fees and costs requested.

For the foregoing reasons, the Court will grant Plaintiff's motion for attorney's fees and costs.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 163) is **GRANTED**.

Signed: June 22, 2026

Max O. Cogburn Jr
United States District Judge